**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HATIM B., *et al.*

      Plaintiffs,

       v.

KIRSTJEN NIELSEN, Secretary of
Homeland Security, *et al.*,

      Defendants.

---

Civil Action No. 1:17-cv-1976-RC

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

STATUTORY AND REGULATORY FRAMEWORK ............................................................ 4

FACTUAL BACKGROUND .................................................................................................... 9

STANDARD OF REVIEW ...................................................................................................... 11

ARGUMENT ........................................................................................................................... 12

I.     Plaintiffs Have not Demonstrated a Strong Likelihood of Success on The Merits ......... 13

  A.   This is a Habeas Challenge ................................................................................... 13

    1.   Venue is Improper Because the 8 U.S.C. § 1225(b)(1)(B)(ii) Detained Plaintiffs
         are in the Southern of District Texas ......................................................... 13

  B.   Plaintiffs Lack Standing ........................................................................................ 16

  C.   This Court Lacks Subject Matter Jurisdiction to Consider Plaintiffs' Parole Claims
       pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................... 17

  D.   Court Lacks Authority to Order Unadmitted Aliens to Be Released ............................ 22

  E.   Plaintiffs' Fifth Amendment Claim ........................................................................ 28

    1.   Plaintiffs Are Not Lawful Permanent Residents, and Cannot Claim
         Due Process Rights that Pertain to Circumstances Not Their Own ....................... 30

  F.   Plaintiffs' First Amendment Right-to-Petition Claim .................................................... 32

  G.   Plaintiffs' APA Claim ........................................................................................... 33

    1.   Not a Final Agency Action .................................................................................. 33

    2.   Defendants' Parole Determinations Are Committed to Agency Discretion by law 36

    3.   Plaintiffs Have Another Adequate Remedy Available to Them ............................ 37

    4.   Challenges to Conditions of Confinement Are Not Proper Claims
         Under the APA .................................................................................................... 39

II.    Plaintiffs Have Alleged Irreparable Harm That Is Not Specific
       To the Preliminary Injunction ............................................................................... 40

III.   The Balance of Harms Favors the Government ............................................................. 43

CONCLUSION ...................................................................................................................... 44

## TABLE OF AUTHORITIES

### Cases

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967)..................................................................................... 38
*Abdi v. Duke,*
  No. 1:17-CV-0721 EAW, 2017 WL 5599521 (W.D.N.Y. Nov. 17, 2017) ...................... 21, 32
*Ahad v. Lowe,*
  235 F. Supp. 3d 676 (M.D. Pa. 2017) ...................................................... 31
*Allina Health Servs. v. Sebelius,*
  756 F. Supp. 2d 61 (D.D.C. 2010) ........................................................... 12
*Altagracia v. Sessions,*
  No. 6:16-cv-6647, 2017 WL 908211 (W.D.N.Y. Mar. 7, 2017) .......................... 19
*Arden Wood, Inc. v. U.S. Citizenship and Immigration Servs.,*
  480 F. Supp. 2d 141 (D.D.C. 2007) ........................................................ 33
*Bark v. United States Forest Serv.,*
  37 F. Supp. 3d 41 (D.D.C. 2014)......................................................... 34, 35
*Barrera-Echavarria v. Rison,*
  44 F.3d 1441 (9th Cir. 1995) ......................................................... 3, 5, 30
*Bautista v. Sabol,*
  862 F. Supp. 2d 375 (M.D. Pa. 2012) ................................................... 30
*Bennett v. Spear,*
  520 U.S. 154 (1997)................................................................. 16, 33
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
  403 U.S. 388 (1971)...................................................................... 40
*Blackie's House of Beef, Inc. v. Castillo,*
  659 F.2d 1211 (D.C. Cir. 1981) ........................................................... 44
*Bonnell v. Lorenzo,*
  241 F.3d 800 (6th Cir. 2001) ............................................................. 42
*Boumediene v. Bush,*
  553 U.S. 723 (2008)...................................................................... 24
*Boutilier* v. INS,
  387 U.S. 118 (1967)................................................................... 4, 22
*Bowen v. Massachusetts,*
  487 U.S. 879 (1988)...................................................................... 38
*Paleteria La Michoacana, Inc., et al. v. Productos Lacteos Tocumbo S.A. de C.V.,*
  901 F. Supp. 2d 54 (D.D.C. 2012)............................................... 11, 12, 44
*Carlson v. Landon,*
  342 U.S. 524 (1952)........................................................................ 5
*Castro v. United States Dep't of Homeland Sec.,*
  835 F.3d 422 (3d Cir. 2016)........................................................ passim
*Chatman-Bey v. Thornburgh,*
  864 F.2d 804 (D.C. Cir. 1988) ........................................................... 15

iii

*CityFed Fin. Corp. v. Office of Thrift Supervision,*
   58 F.3d 738 (D.C. Cir. 1995) ............................................................... 41

*Cobell v. Kempthorne,*
   455 F.3d 301 (D.C. Cir. 2006) .............................................................. 35

*Cobell v. Norton,*
   240 F.3d 1081 (D.C. Cir. 2001) ............................................................ 36

*Davis v. U.S. Sentencing Com'n,*
   716 F.3d 660 (2013) ....................................................................... 14, 16

*\*Demore v. Kim,*
   538 U.S. 510 (2003) ....................................................................... 32, 43

*Dorfmann v. Boozer,*
   414 F.2d 1168 (D.C. Cir. 1969) ............................................................ 12

*Dugdale v. U.S. Customs and Border Protection,* N.,
   14-1175, 2015 WL 2124937 (D.D.C May 6, 2015) ............................. 19

*Evans v. Ball,*
   168 F.3d 856 (5th Cir. 1999) ............................................................... 40

*Federation Internationale De Football Ass'n v. Nike, Inc.,*
   285 F.Supp.2d 64 (D.D.C. 2003) ......................................................... 11

*Fiallo v. Bell,*
   430 U.S. 787 (1977) ............................................................................. 5

*Fong Yue Ting v. United States,*
   149 U.S. 698 (1893) ............................................................................ 23

*Garcia v. Vilsack,*
   563 F.3d 519 (D.C. Cir. 2009) .............................................................. 38

*Giammarco v. Kerlikowske,*
   665 Fed. App'x 24 (2d Cir. 2016) ......................................................... 19

*Guerra v. Meese,*
   786 F.2d 414 (D.C. Cir. 1986) .............................................................. 15

*Harisiades v. Shaughnessy,*
   342 U.S. 580 (1952) .............................................................................. 4

*In re Singh,*
   21 I. & N. Dec. 427 (BIA 1996) ........................................................... 28

*Indep. Petroleum Ass'n of Am. v. Babbitt,*
   235 F.3d 588 (D.C. Cir. 2001) .............................................................. 33

*Isaac v. Samuels,*
   132 F. Supp. 3d 56 (D.D.C. 2015) ........................................................ 40

*J.E.F.M. v. Lynch,*
   837 F.3d 1026 (9th Cir. 2016) .............................................................. 33

*Jennings v. Rodriguez,*
   136 S. Ct. 2489 ..................................................................................... 5

*Kaplan v. Tod,*
   267 U.S. 228 (1925) ......................................................................... 8, 27

*King v. Leavitt,*
   475 F. Supp. 2d 67 (D.D.C. 2007) ........................................................ 12

*Kiyemba v. Obama,
  555 F.3d 1022 (D.C. Cir. 2009) ................................................................ passim
Kleindienst v. Mandel,
  408 U.S. 753 (1972) .................................................................... 4, 22, 32
Kucana v. Holder,
  558 U.S. 233 (2010) ......................................................................... 17, 18
Landon v. Plasencia,
  459 U.S. 21 (1982) ............................................................................. 1, 22
Latif v. Obama,
  677 F.3d 1175 (D.C. Cir. 2011) ............................................................. 35
Leng May Ma v. Barber,
  357 U.S. 185 (1958) ......................................................................... 8, 27
Loa-Herrera v. Trominski,
  231 F.3d 984 (5th Cir. 2000) ...................................................... 19, 21, 22
Long Term Care Pharmacy All. v. Leavitt,
  530 F. Supp. 2d 173 (D.D.C. 2008) ....................................................... 17
Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) ......................................................................... 16, 17
Lujan v. Nat'l Wildlife Fed'n,
  497 U.S. 871 (1990) ......................................................................... 34, 36
Maldonado v. Macias,
  150 F.Supp.3d 788 (W.D. Tex. 2015) ..................................................... 30
Matter of D–J–,
  23 I. & N. Dec. 572 (2003) .................................................................... 21
Mazurek v. Armstrong,
  520 U.S. 968 (1997) .............................................................................. 11
Mdewakanton Sioux Indians of Minnesota v. Zinke,
  255 F. Supp. 3d 48 (D.D.C. 2017) .......................................................... 12
Milardo v. Kerilikowske,
  No. 3:16-MC-99, 2016 WL 1305120 (D. Conn. Apr. 1, 2016) ............... 19
Muhammad v. Close,
  540 U.S. 749 (2004) .............................................................................. 40
Munaf v. Geren,
  553 U.S. 674 (2008) ...................................................................... passim
Nat'l Ass'n of Home Builders v. Norton,
  415 F.3d 8 (D.C. Cir. 2005) ................................................................... 34
Naul v. Gonzales,
  No. 05-4627, 2007 WL 1217987 (D.N.J. Apr. 23, 2007) ....................... 19
New Motor Vehicle Bd. v. Orrin W. Fox Co.,
  434 U.S. 1345 (1977) ............................................................................ 44
Nishimura Ekiu v. United States,
  142 U.S. 651 (1892) ......................................................................... 23, 25
Nken v. Holder,
  556 U.S. 418 (2009) .............................................................................. 43

*Norton v. Southern Utah Wilderness Alliance,*
542 U.S. 55 (2004)......................................................................................... 36

*Ortiz v. Meissner,*
179 F.3d 718 (9th Cir. 1999) ......................................................................... 20

*Oryszak v. Sullivan,*
576 F.3d 522 (D.C. Cir. 2009) ....................................................................... 37

*Preiser v. Rodriguez,*
411 U.S. 475 (1973)....................................................................................... 40

*Privett Sec'y, Dep't of Homeland Sec.,*
865 F.3d 375 (6th Cir. 2017) ......................................................................... 20

*R.I.L-R v. Johnson,*
80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................... 20, 21

*Rafeedie v. I.N.S.,*
688 F. Supp. 729 (D.D.C. 1988)...................................................... 8, 9, 10, 11

*Rafeedie v. I.N.S.,*
880 F.2d 506 (D.C. Cir. 1989)....................................................................... 29

*Reliable Automatic Sprinkler v. Consumer Products Safety Comm'n,*
324 F.3d 726 (D.C. Cir. 2003) ................................................................. 33, 34

*Reno v. Flores,*
507 U.S. 292 (1993)................................................................................... 5, 39

*Rodriguez v. Robbins,*
715 F.3d 1127 (9th Cir. 2013) ................................................................. 14, 31

*Rodriguez v. Robbins,*
804 F.3d 1060 (9th Cir. 2015) ......................................................................... 5

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004)........................................................................ 13, 14, 15, 16

*Sampson v. Murray,*
415 U.S. 61 (1974)......................................................................................... 41

*Sanders v. Bennett,*
148 F.2d 19 (D.C. Cir. 1945)......................................................................... 38

*Sanusi v. Gonzales,*
445 F.3d 193 (2d Cir. 2006)........................................................................... 18

*Schweiker v. Hansen,*
450 U.S. 785 (1981)......................................................................................... 7

*\*Shaughnessy v. United States ex rel. Mezei,*
345 U.S. 206 (1953)............................................................................... passim

*Sierra Club v. Peterson,*
717 F.2d 1409 (D.C. Cir. 1983)..................................................................... 33

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
739 F.2d 1415 (9th Cir. 1984) ....................................................................... 42

*Stern v. Federal Bureau of Prisons,*
601 F.Supp.2d 303 (D.D.C. Mar. 10, 2009) ................................................. 40

*Trump v. Int'l Refugee Assistance Project,*
137 S. Ct. 2080 (2017)................................................................................... 43

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950).........................................................................................passim
*United States v. Brignoni-Ponce*,
  422 U.S. 873 (1975).............................................................................................. 44
*United States v. Bush*,
  No. CR 12-92, 2015 WL 7444640 (W.D. Pa. Nov. 23, 2015)................................ 19
*United States v. Flores-Montano*,
  541 U.S. 149 (2004)................................................................................................ 4
*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990).............................................................................................. 32
*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981).............................................................................................. 12
*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
  454 U.S. 464 (1982).............................................................................................. 16
*Vietnam Veterans of America v. Shinseki*,
  599 F.3d 654 (D.C. Cir. 2010).............................................................................. 33
*Wales v. Whitney*,
  114 U.S. 564 (1885).............................................................................................. 14
*Warth v. Seldin*,
  422 U.S. 490 (1975).............................................................................................. 17
*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977).............................................................................. 11
*Wilkinson v. Dotson*,
  544 U.S. 74 (2005).......................................................................................... 14, 16
*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).................................................................................... 15, 41, 43
*Wong Wing v. United States*,
  163 U.S. 228 (1896).................................................................................... 5, 29, 43
*Zadvydas v. Davis*,
  533 U.S. 678 (2001).......................................................................................passim

## Statutes

5 U.S.C. § 701(a)(2) ................................................................................................ 37

5 U.S.C. § 704 ............................................................................................... 34, 38

6 U.S.C. § 202(2) ................................................................................................... 4

8 U.S.C. 1225(b)(2)(A) ..................................................................................... 5, 31

8 U.S.C. § 1103(a)(5) ............................................................................................. 4

8 U.S.C. § 1182(d)(5)(A) ............................................................................... passim

8 U.S.C. § 1225(b) ......................................................................................... 31, 44

8 U.S.C. § 1226 .................................................................................................... 27

8 U.S.C. § 1226(a) ................................................................................................ 21

8 U.S.C. § 1226(e) ................................................................................................ 20

8 U.S.C. § 1231 ......................................................................................... 8, 11, 14

8 U.S.C. § 1252(a)(5) ........................................................................................... 33

8 U.S.C. §§ 1182(d)(3)(A) .................................................................................... 19

8 U.S.C. §§ 1182(d)(5) .............................................................................. 1, 9, 18, 28

8 U.S.C.1101(a)(13)(C) ........................................................................................ 32

8 U.S.C § 1231(a)(2) .............................................................................................. 8

28 U.S.C. § 2241 ....................................................................................... 8, 16, 39

28 U.S.C. § 2243 .................................................................................................. 15

42 U.S.C. § 1983 .................................................................................................. 40

Pub. L. No. 109-13 ............................................................................................... 18

## Regulations

8 C.F.R. § 212.5(a) ............................................................................................... 19

8 C.F.R. § 212.5(b) ................................................................................................. 6

8 C.F.R. § 212.5(d) ................................................................................................. 7

8 C.F.R. § 241.4 ..................................................................................................... 8

8 C.F.R. § 241.4(k)(1)(I) ......................................................................................... 8

## INTRODUCTION

Plaintiffs, three arriving aliens who have never been admitted to the United States, and one similar arriving alien subject to a final order of removal, Second Amended Complaint (SAC), ¶¶ 7-10, allege that their ongoing detention, pending resolution of their removal proceedings, violates the Due Process Clause of the Fifth Amendment, the First Amendment, and the Administrative Procedure Act (APA), 5 U.S.C. § *et seq.*, because Defendants have exercised their plenary discretion over decisions to admit or parole aliens into the United States to deny their requests for admission and parole. *See* 8 U.S.C. §§ 1182(d)(5); 1225(b); SAC ¶¶ 97-128

Plaintiffs concede, as they must, that they are arriving aliens with no right of admission or parole into the United States. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (admission); *Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009), *vacated*, 559 U.S. 131 (2010), *and judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010) (parole). They also concede, as they must, that they have no right to release from immigration custody pending adjudication of their requests for relief from removal and for asylum. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) (providing for mandatory detention pending resolution of Plaintiffs' requests for relief). They do not dispute that they are not entitled to release on bond because they are arriving aliens. Mot. 33. And they do not dispute that ICE determinations as to whether to release them on parole into the interior, pending resolution of their removal proceedings, is entirely discretionary and not subject to judicial review. *See* 8 U.S.C. §§ 1182(d)(5); 1252(a)(2)(B)(ii); *Kiyemba*, 555 F.3d at 1029 & n.14, 1031.

Now, some four months after they filed their initial complaint, Plaintiffs for the first time allege they are entitled to a preliminary injunction. Notwithstanding their threshold concessions,

nevertheless assert that their ongoing detention and parole determinations are unlawful because ICE officers in Texas, where they are detained, have, in each of their cases, applied a purported unwritten policy of giving "heavy weight to the factor of immigration deterrence," in considering whether to exercise discretion to release an alien on parole pending resolution of their removal proceedings. See Mot. at 6; SAC ¶¶ 103, 110, 119. Plaintiffs do not and cannot identify any such written policy, and for good reason, because none exists. Nevertheless, as relief in this motion, they exclusively seek an order requiring Defendants to adjudicate new "parole requests in compliance with the applicable statutes, rules, and ICE Policy Directive No. 11002 (Jan. 4, 2010)." Mot. at 3. But Plaintiffs' requests for parole have all been adjudicated pursuant to that very binding, written guidance. *See* Decl. of Deborah Achim, Exhibit A at ¶¶ 4-8.

That alone should be the beginning and the end of the inquiry on this motion. But, even before reaching the merits, Plaintiffs' motion fails at the threshold for at least three reasons. First, Plaintiffs impermissibly have labeled what is at its core a habeas claim as an APA challenge seeking injunctive relief. But, it is textbook law in this Circuit that such challenges may only be brought in the district of confinement, which is in Texas. Second, courts lack jurisdiction to review DHS's discretionary exercise of parole authority; consequently the Court is without jurisdiction to order the relief Plaintiffs seek—new parole hearings.  Third, Plaintiffs lack standing to bring any of their claims, as they have in fact received the very relief they claim they are entitled to, and therefore have not suffered cognizable injury to the extent they are entitled to request parole at all.

Even assuming jurisdiction to reach these issues, the claims fail on their merits. First, as arriving aliens who have not been admitted into the United States, Plaintiffs lack any due process rights with respect to their admission or parole determinations beyond those provided the by

Congress through statute. Plaintiffs have received all such process, and so their claim is baseless. Second, Plaintiffs First Amendment claim fails because even assuming they have First Amendment rights, notwithstanding their status as arriving aliens, they have, in fact, filed applications for asylum which are being adjudicated consistent with the INA. And there is no First Amendment right to pursue relief from removal outside of immigration detention, and so this claim too is meritless. Finally, Plaintiffs' APA claim that Defendants have instituted an unwritten policy of weighing deterrence more heavily than before as a factor in the parole determination is without merit, as no such policy exists, and Plaintiffs' parole determinations have each been adjudicated consistent with existing, publicly available, written policies and guidance. Moreover, even assuming such a policy, the APA does not permit review where alternative remedies exist, and here, just such a remedy is available: an as-applied habeas challenge in the district of confinement.

Finally, Plaintiffs fail to demonstrate, as they must, any likelihood of irreparable harm, given that detention during admission proceedings is a permissible aspect of any request for admission to the United States. *See Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc). And because the public has a strong interest in the enforcement of the immigration laws, the balance of harms also favors the Government.

In short, Plaintiffs cannot meet their extraordinary burden that a mandatory injunction altering the status quo has been met, and therefore their motion should be denied. Should Plaintiffs wish to challenge their detention, they should use the correct procedural vehicle – a petition for writ habeas corpus – in the correct venue in Texas. But they may not use the preliminary injunction device in this district to seek relief to which they are not entitled.

## STATUTORY AND REGULATORY FRAMEWORK

The Secretary of Homeland Security is responsible for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens." 6 U.S.C. § 202(2) and (3); 8 U.S.C. § 1103(a)(5). The Supreme Court has long recognized that the political branches' broad power over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004). The power to admit or exclude aliens is a sovereign prerogative vested in the political branches, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765-766 & n.6 (1972) (noting that the Supreme Court's "general reaffirmations" of the political branches' exclusive authority to admit or exclude aliens "have been legion"). Control of the Nation's borders is vested in the political branches because that authority is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations," matters "exclusively entrusted to the political branches of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952). Preserving the political branches' authority to control the border serves "the obvious necessity that the Nation speak with one voice" on such matters. *Zadvydas v. Davis*, 533 U.S. 678, 711 (2001) (Kennedy, J., dissenting).

Accordingly, the Supreme Court "without exception has sustained Congress's 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *Kleindienst*, 408 U.S. at 766 (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). The Supreme Court has consistently upheld the Executive's inherent power to administer the immigration laws, stating that it is a "fundamental sovereign

4

attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). And as the Supreme Court has long held, detention of aliens arriving at or near our borders pending a determination of whether to admit them to the United States is an integral aspect of the admissions determination itself, such that, detention during admissions proceedings is a constitutionally permissible aspect of that proceeding and does not deprive aliens "of any statutory or constitutional right." *See, e.g., Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212-15 (1953); *accord Reno v. Flores*, 507 U.S. 292, 306 (1993); *Carlson v. Landon*, 342 U.S. 524 (1952); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896); *accord Barrera-Echavarria*, 44 F.3d at 1450 (explaining that aliens at the border or deemed to be at the border "have no substantive right to be free from immigration detention" pending resolution of their admission proceedings);[1] *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 449 n.32 (3d Cir. 2016) (stating that non-admitted aliens apprehended at or near the border likely may only challenge their detention if they can show it is "indefinite, hearingless detention").

Exercising the plenary authority, Congress has repeatedly affirmed through legislation the longstanding rule that aliens who arrive at our Nation's doorstep seeking admission, but who are "not clearly and beyond a doubt entitled" to be admitted, "shall be detained" pending the outcome of proceedings before an immigration judge to determine whether the alien should be removed from the country. 8 U.S.C. 1225(b)(2)(A); *see* Immigration and Nationality Act (INA),

---

[1] *But see Rodriguez v. Robbins*, 804 F.3d 1060, 1141-42 (9th Cir. 2015) (acknowledging *Barrera-Echavarria* asapplying to the vast majority of § 1225 aliens but not applying to a small subset), cert. granted, *Jennings v. Rodriguez*, 136 S. Ct. 2489 (mem.) (2016). Plaintiffs in this case fall within the "vast majority" recognized by the Ninth Circuit as lacking any right to release during their removal proceedings.

ch. 477, Tit. II, § 235(b), 66 Stat. 199 (similar); Immigration Act of 1917 (1917 Act), ch. 29, § 16, 39 Stat. 886 (similar). More specifically, as relevant to this case, if an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). If the alien indicates an intention to apply for asylum or expresses a fear of persecution or torture, however, a DHS asylum officer determines whether the alien has a credible fear. *Id.* § 1225(b)(1)(A)(ii). If, as here, the officer determines the alien in fact has a credible fear, that alien in no uncertain terms "shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

Although detention is mandatory during Plaintiffs' removal proceedings, Congress has provided a potential avenue for release of an alien detained under 8 U.S.C. § 1225(b)(1)(B)(ii) in limited circumstances: The Secretary, "*in his discretion*" and "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit," *may* parole any alien "into the United States temporarily under such conditions as he may prescribe." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). For aliens detained under § 1225(b)(1)(B)(ii), including those lacking proper documentation, but, who have established a credible fear, regulations provide that DHS may grant parole if the alien is "neither a security risk nor a risk of absconding" and (1) has a serious medical condition; (2) is pregnant; (3) falls within certain categories of juveniles; (4) will be a witness; or (5) if continued detention is otherwise "not in the public interest." 8 C.F.R. § 212.5(b); *see also id.* § 235.3(c) (providing that aliens referred for § 240 removal proceedings, including those who have a credible fear of persecution or torture, may be paroled under 8 C.F.R. § 212.5(b) standards).

Consistent with a Policy Directive in effect since 2010, "[e]ach alien's eligibility for parole should be considered and analyzed on its own merits and based on the facts of the individual alien's case."[2]  ICE Policy No. 11002.1:  *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture* (Dec. 8, 2009) ("Morton Memo"), at ¶ 6.2.  However, generally speaking, "when an arriving alien found to have a credible fear *establishes to the satisfaction of [ICE]* his or her identity and that he or she presents neither a flight risk nor danger to the community, [ICE] *should*, absent additional factors … parole the alien on the basis that his or her continued detention is not in the public interest."  *Id.*  (emphasis added).  Although "ICE retains ultimate discretion whether it grants parole in a particular case," DHS has advised that "such authority should be exercised sparingly."  Memorandum from John Kelly, Sec'y, Dep't of Homeland Sec., *Implementing the President's Border Security and Immigration Enforcement Improvements Policies* (Feb. 20, 2017), at 9-10.

Even where DHS exercises its discretion to temporarily parole an alien into the United States pending completion of their removal proceedings, that alien is not regarded as having been "admitted" into the United States and reasonable conditions may be placed on the parole.  8 U.S.C. §§ 1182(d)(5)(A), 1101(a)(13)(B); 8 C.F.R. § 212.5(d); *see also* Morton Memo ¶ 5.3. Such aliens, for all purposes, remain as a matter of law deemed to be at the border, not having

---

[2] The Morton Memo, however, is an "internal policy statement" that is meant to provide "guidance" to ICE personnel for exercising discretion to consider parole. Morton Memo at ¶¶ 1, 10. "It is not intended to, shall not be construed to, may not be relied upon to, and does not create, any rights, privileges, or benefits, substantive or procedural, enforceable by an party against the United States . . . *Id.* at ¶10. the Morton Memo thus lacks the force of law and cannot sustain either a constitutional claim or claim based on a question of law—even if such claims were reviewable in light of section 1252(a)(2)(B)(ii)'s jurisdictional bar. *Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981) (alleged breach of agency's Claim Manual could not provide basis for legal claim because it "is not a regulation" but was meant "for internal use" by agency employees; it "has no legal force, and it does not bind the [agency]").

effect an entry. *See, e.g.*, *Zadvydas*, 533 U.S. at 693 (citing *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); *Leng May Ma v. Barber*, 357 U.S. 185, 188–190 (1958); *accord Rafeedie v. I.N.S.,* 688 F. Supp. 729, 749 n. 46 (D.D.C. 1988), *aff'd in part, rev'd in part on other grounds*, 880 F.2d 506 (D.C. Cir. 1989) ("decision to 'parole' Rafeedie . . . does not alter his status for purposes of this constitutional analysis. Plaintiff must still be treated as if he were stopped at the border.). Moreover, such discretionary parole decisions are not subject to judicial review. Notwithstanding any other provision of law, including 28 U.S.C. § 2241, "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," except for asylum determinations. 8 U.S.C. § 1252(a)(2)(B)(ii).

When an immigration judge enters an order of removal for an alien detained pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), that alien's detention is governed by 8 U.S.C. § 1231. Detention is mandatory during the initial ninety-day "removal period." 8 U.S.C § 1231(a)(2). Thereafter, ICE must conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(I). ICE may release the alien under conditions of supervision at this time if it finds, among other circumstances, that "[t]ravel documents for the alien are not available or, in the opinion of [DHS] immediate removal, while proper, is otherwise not practicable or not in the public interest." *Id.* § 241.4(e)(1); *see* § 241.13(g)(2) (providing that if ICE "determines . . . that there is a significant likelihood that the alien will be removed in the reasonably foreseeable future, [ICE headquarters] shall deny the alien's request" and continue to evaluate the propriety of detention or release under 8 C.F.R.

§ 241.4) Thus, an alien subject to § 1231 detention is not eligible to seek parole determination pursuant to 8 U.S.C. § 1182(d)(5).

## **FACTUAL BACKGROUND**

Plaintiffs are all arriving aliens who requested political asylum at a U.S. Port of Entry. SAC, ¶ 2. They were allowed to undergo a credible fear determination pursuant to 8 U.S.C. § 1225(b)(1)(A)(ii), which they passed. *Id*. As a result, they were placed in detention for further consideration of their application for asylum. *See* 8 U.S.C. §1225(b)(1)(B)(ii). Detention is mandatory during this time except in limited circumstances. *See* 8 U.S.C. § 1182(d)(5)(A). Since their arrival, one of the Plaintiffs is no longer in detention and one is no longer in §1225 detention awaiting consideration of his asylum application.

Plaintiffs Hatim B., Celinda Arcely R., Sadat I., and Mikailu J. are all arriving aliens who requested political asylum at a U.S. Port of Entry. SAC, ¶ 2. They were allowed to undergo a credible fear determination pursuant to 8 U.S.C. § 1225(b)(1)(A)(ii), which they passed. *Id*. As a result, they were placed in detention for further consideration of their application for asylum. *See* 8 U.S.C. §1225(b)(1)(B)(ii). Detention is mandatory during this time except in limited circumstances. *See* 8 U.S.C. § 1182(d)(5)(A).

Plaintiff Hatim B. arrived at a U.S. POE in February 2017 and passed his credible fear interview on March 22, 2017. SAC ¶ 65. He was detained at the Port Isabel Detention Center (PIDC) at that time and remains in detention awaiting further consideration of application for asylum. *Id*. He is scheduled for a hearing on the merits of his applications for relief on February 22, 2018. Achim Decl., ¶ 5, Ex. A. While in detention, Hatim B. requested parole on April 24, 2017 and July 14, 2017. *Id*. ICE Enforcement and Removal Operations (ERO) exercised

9

discretion and denied his parole requests. *See id*. ICE ERO did not rely on deterrence as a factor in determining Hatim B.'s parole request. *Id.*

Plaintiff Celinda Arcely R. has not been detained since January 12, 2018. SAC, ¶ 64. She was granted parole and released into the United States during the pendency of her asylum application. Ex. A, ¶ 6. Celinda Arcely R. arrived at a U.S. POE in February 2017 and passed her credible fear interview in March 2017. SAC, ¶ 64. She was detained at PIDC until her release. *Id.* While in detention, Celinda Arcely R. requested parole on June 1, 2017. *Id.* ICE Enforcement and Removal Operations (ERO) exercised discretion and denied her parole request. *See id*. ICE ERO did not rely on deterrence as a factor in determining Celinda Arcely R's parole request. *Id.*[3]

Plaintiff Mikailu J. arrived at a U.S. POE in January 2017 and passed his credible fear interview. SAC ¶ 68. He was detained at the Laredo Detention Center at that time and remains in detention awaiting further consideration of application for asylum. *Id.* An immigration judge denied Mikailu J.'s applications for relief and entered an order of removal on November 22, 2017. (Briefing Schedule and Immig. J. Dec., Ex. B.) Mikailu J. is represented by immigration counsel. *See id.* If Mikailu J. chooses to file an appeal of his removal order with the BIA, it is due on or before February 27, 2018. *See id.* While in detention, Mikailu J. requested parole on June 7, 2017, and on September 18, 2017. Ex. A, ¶ 8. Mikailu J. also requested parole one other time prior to May 4, 2017. ICE Enforcement and Removal Operations (ERO) exercised discretion and denied his parole requests on May 4, 2017, June 9, 2017, and September 21, 2017.

---

[3] An immigration judge entered an order of removal for Celinda Arcely R. on October 2, 2017, but she reserved appeal. *Id*. She filed her appeal with the Board of Immigration of Appeals ("BIA") on October 10, 2017, which is still pending. *Id*.

*See id.* ICE ERO did not rely on deterrence as a factor in determining Mikailu J.'s parole requests. *Id.*

Plaintiff Sadat I. was in post-final removal order detention at the time this action was filed. SAC ¶ 67. Sadat I. arrived at a U.S. POE in January 2016 and passed his credible fear interview in February 2016. *Id.* He was detained while awaiting further consideration of application for asylum. *Id.* An immigration judge denied Sadat I.'s applications for relief and entered an order of removal on August 10, 2016. Ex. A, ¶ 9. Sadat I. filed an appeal with the BIA and his appeal was denied in January 2017. SAC, ¶ 67. Thus, he is detained with a final order of removal pursuant to 8 U.S.C. § 1231. While in post-order detention, Sadat I. received the benefit of post-order custody reviews on April 12, 2017, August 3, 2017, and August 22, 2017. Ex. A, ¶ 9. A travel document was issued for Sadat I. on January 31, 2018. *Id.*

## **STANDARD OF REVIEW**

A preliminary injunction is "an extraordinary and drastic remedy," and "should not be granted unless the movant, by a *clear* showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis added). Generally, the movant must establish:

> (1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief, (or at least, that the granting of injunctive relief is not adverse to the public interest).

*Paleteria La Michoacana, Inc., et al. v. Productos Lacteos Tocumbo S.A. de C.V.*, 901 F. Supp. 2d 54, 56 (D.D.C. 2012) (Contreras, J.) (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) and *Federation Internationale De Football Ass'n v. Nike, Inc.*, 285 F.Supp.2d 64, 68 (D.D.C. 2003)).

11

To meet this burden, Plaintiffs must make a "clear showing" that they have met the burden of persuasion. *Mdewakanton Sioux Indians of Minnesota v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017) (Contreras, J.). This standard, however, is "somewhat higher" when the relief requested has the effect of altering rather than preserving the *status quo*. *Paleteria La Michoacana*, 901 F. Supp. 2d at 56. That is, because the purpose of temporary injunctive relief "is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), the power to issue a mandatory injunction – one that alters the status quo – "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969).[4] Thus, as this Court has explained, where, as here, movants seek to alter the *status quo*, they "face 'an additional hurdle' when proving their entitlement to relief." *Paleteria La Michoacana*, 901 F. Supp. 2d at 56-57 (quoting *King v. Leavitt*, 475 F. Supp. 2d 67, 71 (D.D.C. 2007)). In such cases, Courts "exercise extreme caution in assessing the [movant's] invitation to invoke the court's extraordinary equitable powers." *Id.* at 57.

## ARGUMENT

In this case, Plaintiffs have fallen far short of sustaining their burden to establish that they have met any of the four factors by either the "clear showing" standard, or the somewhat higher standard applicable when the injunction would alter the status quo.

---

[4] While the Court of Appeals for the District of Columbia has neither adopted nor rejected a higher standard for mandatory injunctions that alter the status quo, *see Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 69–70 n.5 (D.D.C. 2010), there is a common practice to proceed with "extreme caution" in these cases. *Paleteria La Michoacana*, 901 F. Supp. 2d at 56 n.1.

12

I.     **Plaintiffs Have not Demonstrated a Strong Likelihood of Success on The Merits**

Plaintiffs have not shown that they have a strong likelihood of success on the merits of this case. The SAC describes claims that must be brought as a petition for writ of habeas corpus, and cannot succeed in this venue. Secondly, Plaintiffs allege claims based on the Due Process Clause of the Fifth Amendment, and also the First Amendment. The claims will fail, as Defendants have followed the statutory scheme set out by Congress in the INA. Finally, Plaintiffs' APA claim cannot succeed because, among other things, the parole determinations are committed to agency discretion, and the actions alleged by Plaintiffs are not final agency actions.

A.   **This is a Habeas Challenge**

1.     **Venue is Improper Because the 8 U.S.C. § 1225(b)(1)(B)(ii) Detained Plaintiffs are in the Southern of District Texas**

At the threshold, Plaintiffs motion should be denied because it impermissibly seeks what is core habeas relief – release from confinement through renewed parole determinations, in an action filed inappropriately in a jurisdiction in which Plaintiffs are not confined and in which their immediate custodian is not subject to personal jurisdiction. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).

To start, of the three Plaintiffs who are in fact currently in detention, and therefore have any basis to complain about their ongoing detention in the first place, only two—Mikailu J. and Hatim B.—are currently detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). Plaintiff Sadat I. is in fact subject to a final order of removal and therefore detained pursuant to 8 U.S.C. § 1231 and not eligible for the parole consideration. *See supra* Factual Background at 9.

The relief Plaintiffs seek here is in all but name habeas relief. Plaintiffs argue they "are suffering unconstitutional and irreparable harm" because of their ongoing physical detention, and

13

seek relief from this detention. Mot. at 3. In other words, Plaintiffs define their relief as a request for a renewed determination as to the legality of their detention, and ultimately, release; such relief lies at "the core of habeas." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); s*ee also Davis v. U.S. Sentencing Com'n*, 716 F.3d 660, 662 (2013). The writ of habeas corpus "contemplates a proceeding against some person who has the immediate custody of the person detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Wales v. Whitney*, 114 U.S. 564, 574 (1885). "The plain language of the habeas statue thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 443.

In Plaintiffs' situation where detention is mandatory – "the alien shall be detained for further consideration of the application for asylum," 8 U.S.C. § 1225(b)(1)(B)(ii) – judicially-directed relief from detention is accomplished by a court enjoining the agency to conduct hearings. *See e.g.*, *Zadvydas*, 533 U.S. at 688 (holding that while courts do not have jurisdiction to review discretionary decisions of the Attorney General, habeas corpus proceedings remain available to review the extent of the authority); *Munaf v. Geren*, 553 U.S. 674, 702 (2008) (holding that the writ of habeas corpus applies to a U.S. citizen detained by the U.S. government overseas, but that the relief pursuant to the writ does not extend to discretionary decisions by the political branches that pertain to foreign policy issues).

The typical remedy for unlawful detention is release, and the function of the writ is to secure the release. *See id. at* 693. But habeas relief in the immigration context is not generally release, but a hearing to address the legality of ongoing detention before the appropriate immigration official or an immigration judge. *See, e.g. Rodriguez v. Robbins*, 715 F.3d 1127,

14

1138, 1146 (9th Cir. 2013) (requiring bond hearings in immigration court every six months for aliens in pre-final order detention). As such, Plaintiffs have alleged a quintessentially – and exclusively – a habeas claim. Therefore, although they style their claim otherwise, the only appropriate forum where Plaintiffs can receive *habeas* relief in the form an order requiring a hearing that may result in their release is in the district where each Plaintiff is detained – the Southern and Western Districts of Texas. Indeed, those jurisdictions would have exclusive jurisdiction over any such habeas petition. *Padilla*, 542 U.S. at 434 ("there is generally only one proper respondent to a given prisoner's habeas petition [and this] custodian, moreover, is 'the person' with the ability to produce the prisoner's body before the habeas court." (citing 28 U.S.C. § 2243)). Likewise, "[t]he law of this circuit is clear that '[a] district court may not entertain a habeas corpus action unless it has personal jurisdiction over the custodian of the prisoner.'" *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 (D.C. Cir. 1988) (citing *Guerra v. Meese*, 786 F.2d 414, 415 (D.C. Cir. 1986)). The custodian is the warden of the facility in which the detainee is held. *See id.* at 811.

  To be entitled to relief pursuant to the extraordinary remedy of a preliminary injunction, Plaintiffs must demonstrate, among other things, that they are "likely to suffer irreparable harm in the absence of preliminary relief…." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The harm identified by Plaintiffs is their ongoing, allegedly prolonged, detention. *See* Mot. at 7-8 (Defendants have subjected Plaintiffs to "prolonged detention" which violates "due process rights to be free of unjustified detention"; "[t]he right to personal liberty has long been deemed transcendent…"; "[a] person's core liberty interest is also implicated when she is confined in a prison, a mental hospital, or some other form of custodial institution, even if the conditions of confinement are liberal."; "they have been detained for close to a year now."). But

it is well-settled that a challenge to prolonged detention may only be raised through habeas, in the district of confinement. *See* 28 U.S.C. § 2241; *Padilla*, 542 U.S. at 435; *Zadvydas*, 553 at 687; *Davis*, 716 F.3d at 666 (holding that "a federal prisoner need bring his claim in habeas only if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" (quoting *Wilkinson*, 544 U.S. at 82)).

Indeed, Plaintiffs' motion itself concedes that their claim sounds in habeas. According to Plaintiffs, "they should promptly have been released in the absence of any serious concerns," Mot. at 13, but release has not happened because they are being held by "ICE agents [acting] both as *jailor* and judge." *Id.* at 25 n.24 (emphasis added). The appropriate – and exclusive – venue to challenge the *jailor*'s decision to detain is in the forum of confinement. *Padilla*, 542 U.S. at 434.

### B.   Plaintiffs Lack Standing

Plaintiffs lack Article III standing to bring their claims because they cannot establish that they have suffered any injury for which the Court can provide redress. They have in fact already received the relief they seek: a parole determination consistent with the 2009 Morton Memorandum.

"To satisfy the 'case' or 'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–472 (1982)). Plaintiffs "must show that they 'would benefit in a tangible way from the

16

court's intervention.'" *Long Term Care Pharmacy All. v. Leavitt*, 530 F. Supp. 2d 173, 184

(D.D.C. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)).

Plaintiffs lack standing because, as explained in Section III below, each of them in fact

received an individualized custody determination from ICE in which permissible discretionary

considerations were evaluated. *See* Exhibit A at ¶¶ 4-8. They have not suffered "the invasion of a

legally protected interest" as they have received parole determinations according to the criteria to

which they claim entitlement. *See Lujan*, 504 U.S. at 560. For this reason, the Court also cannot

provide Plaintiffs with any tangible benefit, as they have already received the relief sought in the

form of lawful parole determinations, and the law does not permit the Court to do more, *see* 8

U.S.C. §§ 1182(d)(5)(A), 1225(b)(1)(B)(ii); 8 C.F.R. § 1003.19(h)(1)(i)(B). *See Warth*, 422 U.S.

at 508. Therefore, the Court must dismiss their case for lack of standing.

### C.   This Court Lacks Subject Matter Jurisdiction to Consider Plaintiffs' Parole Claims pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)

Plaintiffs also cannot demonstrate success on their claims, because the Court lacks

jurisdiction to consider them. Whether Plaintiffs challenge ICE's denials of parole or ICE's

internal procedures underlying its parole decisions, the statutory bar against judicial review is

clear: both the decision to grant or deny parole and the underlying determinations made by ICE

in arriving at parole decisions are expressly committed to DHS's discretion and, thus,  beyond the

jurisdictional reach of this Court. 8 U.S.C. §§ 1182(d)(5), 1252(a)(2)(B)(ii).

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility

Act of 1996, Pub. L. No. 104–208, 110 Stat. 3009–546 (1996) ("IIRIRA"), and in doing so,

made sweeping changes to the INA.  "[M]any provisions of the IIRIRA were aimed at protecting

from court review exercises of the Executive's discretion."  *Kucana v. Holder*, 558 U.S. 233, 252

(2010). Of importance here, IIRIRA amended 8 U.S.C. § 1252(a)(2)(B)(ii), which previously

gave federal courts habeas corpus jurisdiction to review the Government's decisions concerning

detention, release on bond, or parole pending a final determination of deportability, to now read

> *Notwithstanding any other provision of law* (statutory or nonstatutory),
> *including section 2241 of Title 28*, or any other habeas corpus provision, and
> sections 1361 and 1651 of such title, and except as provided in subparagraph
> (D), and regardless of whether the judgment, decision, or action is made in
> removal proceedings, *no court shall have jurisdiction to review*—
>> …
>> (ii) *any other decision or action* of the [Government] … the authority for
>> which is *specified under this subchapter to be in the discretion of the
>> [Government]* …, other than the granting of [asylum] relief under section
>> 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added); *see also Kucana*, 558 U.S. at 238-39.[5]

"[T]his subchapter" in § 1252(a)(2)(B)(ii) encompasses § 1182. *Sanusi v. Gonzales*, 445

F.3d 193, 198 (2d Cir. 2006). As noted section 1182(d)(5)(A) provides that the Secretary of DHS

"*may … in his discretion* parole into the United States temporarily under such conditions as he

may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public

benefit any alien applying for admission to the United States." (Emphasis added). *See also* 8

C.F.R. § 212.5(a), (b).

The Supreme Court has clarified that a decision unambiguously "specified by statute 'to

be in the discretion of the [Government]'"—as in 8 U.S.C. § 1182(d)(5)(A)—is "shielded from

court oversight by § 1252(a)(2)(B)(ii)." *Kucana*, 558 U.S. at 248. No judicial review of ICE's

discretionary parole decisions that may have occurred prior to 1996, therefore, is available after

---

[5]Section 1252 was later amended by § 106 of the REAL ID Act of 2005, Pub. L. No. 109-13,
119 Stat. 231, but those amendments did not change the operative language of
§ 1252(a)(2)(B)(ii) as enacted in 1996. *Kucana*, 558 U.S. at 238 n.1.

IIRIRA's 1996 enactment of § 1252(a)(2)(B)(ii). And post-IIRIRA cases indeed recognize the non-reviewability of parole determinations in light of § 1252(a)(2)(B)(ii). *Altagracia v. Sessions*, No. 6:16-cv-6647, 2017 WL 908211, *2 (W.D.N.Y. Mar. 7, 2017) ("the [Government's] decision regarding humanitarian parole is generally non-reviewable"); *Milardo v. Kerilikowske*, No. 3:16-MC-99, 2016 WL 1305120, *6, 9 (D. Conn. Apr. 1, 2016) (ICE's discretionary parole decisions are "generally not subject to judicial review, and [are] never subject to judicial review by a district court"); *United States v. Bush*, No. CR 12-92, 2015 WL 7444640, *1 (W.D. Pa. Nov. 23, 2015) (finding that 1252(a)(2)(B)(ii) "explicitly denies courts the jurisdiction to review" parole decisions, "except insofar as those claims raise constitutional issues, then only the appropriate court of appeals shall hear the case"); *Dugdale v. U.S. Customs and Border Protection*, N. 14-1175, 2015 WL 2124937, *1 (D.D.C May 6, 2015) (citing to 8 U.S.C. §§ 1182(d)(3)(A) and 1252 (a)(2)(B)(ii) in finding that "[t]he Court lacks the power, moreover, to order [Plaintiff] to be paroled into the country as such decisions are committed to the exclusive discretion of the Attorney General.") *Naul v. Gonzales*, No. 05-4627, 2007 WL 1217987, *2 (D.N.J. Apr. 23, 2007) (parole denial pursuant to § 1182(d)(5)(A) "is a discretionary decision outside this Court's review."

Not only does § 1252(a)(2)(B)(ii) apply to ICE's ultimate decision to grant or deny of parole, but also necessarily precludes review of ICE's deliberative determinations in reaching that conclusion. *See, e.g., Giammarco v. Kerlikowske*, 665 Fed. App'x 24, 25-26 (2d Cir. 2016) (Plaintiff's indirect challenge to discretionary denial of parole was barred by § 1252(a)(2)(B)(ii)); *Loa-Herrera v. Trominski*, 231 F.3d 984, 990-91 (5th Cir. 2000) ("'the [Government's] discretionary judgment regarding the application of' parole—including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies

19

regulatory, statutory, and constitutional constraints—is 'not … subject to review,'" quoting 8 U.S.C. § 1226(e)). As the Ninth Circuit recently explained in addressing a discretionary provision in the Adam Walsh Act rendered unreviewable by section 1252(a)(2)(B)(ii)'s jurisdictional bar, "[t]he standards by which the Secretary reaches a decision within his or her "sole and unreviewable discretion"—and the methods by which the Secretary adopts those standards—are just as unreviewable as the Secretary's ultimate decisions themselves." *Gebhardt v. Nielsen*, No. 15-56072, slip op. at 13 (9th Cir. Jan. 9, 2018) (citing *Ortiz v. Meissner*, 179 F.3d 718, 722 (9th Cir. 1999) (holding that Court lacked jurisdiction to consider INS's "interpretation or application of . . . substantive eligibility criteria")). Even though the petitioner in *Gebhardt* claimed that the agency set an improperly exacting standard, as Plaintiffs here claim vis-à-vis their release on parole, "the bar is the Secretary's to set, and the Secretary enjoys 'sole and unreviewable discretion' in doing so." *Gebhardt*, slip op. at 13; *accord Privett Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 380–81 (6th Cir. 2017) ("*Privett* merely contests how the Secretary exercises his 'sole and unreviewable discretion.' Setting a standard for the discretionary exception that is low or high is within the Secretary's discretion, and thus review of the standard selected by USCIS is beyond our jurisdiction.). As the Fifth, Sixth, and Ninth Circuits have thus recognized, section 1252(a)(2)(B)(ii) bars review not only over the ultimate determination specified by statute to be in the agency's discretion, such as section 1182(d)(5)(A) parole is, but also the subsidiary determinations and standard applied to reach that conclusion. 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 176 (D.D.C. 2015), which preliminarily enjoined DHS from relying on a policy of mass migration deterrence in denying release on parole, does not indicate otherwise. In the scenario presented in *R.I.L.-R*, the Government "state[d] that ICE

20

officials are *required* to follow the binding precedent contained in *Matter of D–J–,* 23 I. & N.

Dec. 572 (2003), in which then-Attorney General John Ashcroft held that deterrence of mass

migration should be considered in making custody determinations under 8 U.S.C. § 1226(a)." 80

F. Supp. 3d at 175. That is, the Government was not making a discretionary determination, but

had specifically cabined its discretion based on an exterior standard which the Court examined

and rejected on its independent merits. *See R.I.L-R*, 80 F. Supp. 3d at 189 (explaining that

Matter of D–J–, 23 I. & N. Dec. at 572) "implicates 'national security interests,'" but "[t]he

simple fact that increased immigration takes up government resources cannot necessarily make

its deterrence a matter of national security"). Here, by contrast, ICE has provided discretionary

determinations; the Government has not stated, nor is there any evidence, of a specific policy

requiring consideration of deterrence; and the procedures have been conducted according to

Plaintiffs' own request—in accordance with the 2009 Morton Memorandum. *See* Exhibit A at

¶¶ 4-8.

    *Abdi v. Duke*, No. 1:17-CV-0721 EAW, 2017 WL 5599521, at *5 (W.D.N.Y. Nov. 17,

2017), also should not guide this Court's reasoning. Petitioners in *Abdi* were arriving aliens

detained in New York. Plaintiffs here are detained in Texas, and the Court of Appeals for Fifth

Circuit—the jurisdiction whose law should govern their challenges to their detention—has

rejected court review over discretionary parole determinations. *See Loa-Herrera*, 231 F.3d at

990-91. Additionally, *Abdi* is distinguishable, because in *Abdi*, regarding the parole claim, the

Government "did not ... ultimately contend that they are adhering to the dictates of the ICE

Directive," i.e., the 2009 Morton Memorandum addressing parole determinations, but rather

argued that the "the ICE Directive is not legally enforceable." *Abdi*, 2017 WL 5599521, at *3. In

contrast, here ICE is adhering to the Morton Memorandum, undermining any basis for comparing the denials of parole at issue in *Abdi* and here. *Loa-Herrera*, 231 F.3d at 990-91.

Consequently, with jurisdiction lacking, Plaintiffs are unlikely to prevail on their parole claims.

### D.   Court Lacks Authority to Order Unadmitted Aliens to Be Released

To the extent Plaintiffs are seeking *release* or a hearing before an immigration judge that will functionally result in release, Plaintiffs lack standing to seek such relief. As noted above, the power to admit or exclude aliens is a sovereign prerogative vested in the political branches, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *Knauff*, 338 U.S. at 543); *accord Kleindienst*, 408 U.S. at 765-766 & n.6.

For these reasons, the Supreme Court "without exception has sustained Congress's 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *See Kleindienst*, 408 U.S. at 766 (quoting *Boutilier*, 387 U.S. at 123). Accordingly, the authority of the political branches is particularly strong—and countervailing constitutional interests are particularly faint—with respect to control of the Nation's borders as to aliens who stand "on the threshold of initial entry," *Mezei*, 345 U.S. at 212, and for aliens like Plaintiffs whose apprehension shortly after "surreptitious entry" renders them similarly on the threshold of entry seeking admission at the border for constitutional purposes. *See Castro*, 835 at F.3d 445-46. For such aliens, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212 (cited with approval in *Castro*, 835 F.3d at 449); *see Landon*, 459 U.S. at 32 ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application."). This follows from longstanding Supreme Court precedent, cited

extensively by the Third Circuit in *Castro*.  For example, as the Supreme Court held in *Knauff*, as

stated by *Castro*,

> [T]he decision to admit or to exclude an alien may be lawfully placed with the President, who may in turn delegate the carrying out of this function to a responsible executive officer of the sovereign, such as the Attorney General. The action of the executive officer under such authority is final and conclusive. Whatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien. . . . Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.

835 F.3d at 442-43 (quoting *Knauff*, 338 U.S. at 543-44). And 60 years before *Knauff*, the

Supreme Court similarly held in unequivocal terms that

> It is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law, shall be permitted to enter, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government. As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by [C]ongress, are due process of law.

*Castro*, 835 F.3d at 440 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892));

*accord Fong Yue Ting v. United States*, 149 U.S. 698, 731 (1893) (also quoted in *Castro*, holding

that "[t]he question whether, and upon what conditions, these aliens shall be permitted to remain

within the United States being one to be determined by the political departments of the

government, the judicial department cannot properly express an opinion upon the wisdom, the

policy, or the justice of the measures enacted by congress in the exercise of the powers confided

to it by the constitution over this subject.").

   A judicial order that the Executive release a non-admitted alien, who has been determined

inadmissible and denied entry under the procedure established by Congress, into the United

States would contravene the constitutional recognition of the political branches' plenary power

over the admission of aliens. *See, e.g.*, *Knauff*, 338 U.S. at 543-44. The District of Columbia Circuit Court of Appeals came to this conclusion in the different, but in many ways parallel, context of foreign nationals detained as suspected enemy combatants seeking release from detention at the Guantanamo Bay Naval Base in Cuba into the United States. *See Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009), *vacated*, 559 U.S. 131 (2010), *and judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010). After they were determined not to be enemy combatants, and the district court determined their continuing detention to thus be unlawful, the Chinese aliens at issue there sought release into the United States through habeas petitions. Although the district court "acknowledged that historically the authority to admit aliens into this country rested exclusively with the political branches," it held that "the exceptional circumstances of this case and the need to safeguard an individual's liberty from unbridled executive fiat" justified such relief. .*Id.* at 1024 (internal quotation marks omitted).

The Court of Appeals for the District of Columbia Circuit reversed, finding the district court had no legal basis for ignoring the plenary power doctrine and setting aside the Executive's determination that the aliens may not enter by ordering their release into the United States. *Id.* at 1026. The Court of Appeals explained it could not be that because the court had habeas jurisdiction, *see Boumediene v. Bush*, 553 U.S. 723 (2008), it could fashion the sort of remedy Plaintiffs desired. The courts in *Knauff* and in *Mezei* also had habeas jurisdiction, yet in both cases the Supreme Court held that the decision whether to allow an alien to enter the country was for the political departments, not the Judiciary. Plaintiffs and the amici

> supporting them invoke the tradition of the Great Writ as a protection of liberty. As
> part of that tradition, they say, a court with habeas jurisdiction has always had the
> power to order the prisoner's release if he was being held unlawfully. But as in
> *Munaf v. Geren*, [553 U.S. 674 (2008)], Plaintiffs are not seeking "simple
> release." Far from it. They asked for, and received, a court order compelling the

24

Executive to release them into the United States outside the framework of the immigration laws. Whatever may be the content of common law habeas corpus, we are certain that no habeas court since the time of Edward I ever ordered such an extraordinary remedy.

*Kiyemba*, 555 F.3d at 1028.

In *Knauff*, the government denied admission to the wife of a naturalized U.S. citizen and war veteran "on the ground that her admission would be prejudicial to the interests of the United States." 338 U.S. at 539–40. The Court rejected her habeas claim seeking admission into the United States on the grounds that she was unlawfully denied a hearing before the Executive determined her excludable, holding that the government acted within its authority and, moreover, "[w]hatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within province of any court . . . to review the determination of the political branch . . . to exclude a given alien." *Id.* at 543 (quoting *Nishimura Ekiu*, 142 U.S. at 659-660).

In *Mezei*, the government had detained a returning lawful permanent resident, found inadmissible to the United States but without a country willing to accept him at Ellis Island for at least 19 months. 345 U.S. at 207-09. As *Kiyemba* noted, the Supreme Court held that the denial of habeas relief was not a constitutional violation, *id.* at 215, and "[i]n so ruling the Court necessarily rejected the proposition that because no other country would take *Mezei*, the prospect of indefinite detention entitled him to a court order requiring the Attorney General to release him into the United States." *Kiyemba*, 555 F.3d at 1027.

Here, Plaintiffs do not simply seek release from detention, the traditional remedy under habeas when detention is found to be unlawful, and which would potentially render their putative injuries redressable for Article III purposes. See *Munaf*, 553 U.S. at 693-94 (The "typical remedy

for such detention is, of course, release"). As in *Kiyemba* and *Munaf*, "the last thing Plaintiffs want is simple release," which would return them to their native countries and why they have not requested. *Id*. at 693-94. Rather, they seek to challenge their detention in order to prevent release to their homelands, and force the Executive to release them into the interior of the United States outside the framework established by Congress, and "expressly authorized by law." *See Castro*, 835 F.3d at 450 11 (Hardiman, J., concurring) ("Plaintiffs here seek to alter their status in the United States in the hope of avoiding release to their homelands"). But that relief cannot be ordered by any Article III court absent any actual remedy permitting such relief "authorized by Congress." *Knauff,* 338 U.S. at 543-44; *Kiyemba*, 555 F.3d at 1028-29.

Likewise, in this case, Plaintiffs seek a court order compelling the Executive to release them into the United States or conduct so-called parole reviews before immigration courts, outside the framework of the immigration laws which have conclusively determined them inadmissible and declined to permit them to be at liberty within the United States. The prospect that Plaintiffs might otherwise be detained until their immigration proceedings have concluded and they may be removed as a result does not, under Supreme Court precedent, "entitle [them] to a court order requiring the Attorney General to release [them] into the United States." *Kiyemba*, 555 F.3d at 1027 (citing *Mezei*, 345 U.S. at 215). Even should the Court decide that Plaintiffs' detention is unlawful—a finding for which there is no basis, as explained *supra*—that a right has been violated does not mean the Court has a remedy within its power. *See id.* at 1027. "Not every violation of a right yields a remedy, even when the right is constitutional," such as in cases where application of the sovereign immunity or political question doctrines prevent a court from providing relief. *Id.* Whatever the force of this maxim," that every wrong demands a remedy, "it cannot overcome established law that an 'alien who seeks admission to this country may not do

so under any claim of right. . . . Such a privilege is granted to an alien only upon such terms as the United States shall prescribe." *Id.* (quoting *Knauff*, 338 U.S. at 542). The political branches have determined that Plaintiffs are not eligible to enter the United States; courts lack authority to countermand this determination and order their release into the United States. *See, e.g.*, *Knauff*, 338 U.S. at 542.

While it is true that courts may order the release from immigration detention of deportable aliens detained pursuant to 8 U.S.C. § 1226 where such detention has become unreasonably prolonged, such aliens differ in material respects from the excludable, non-admitted aliens detained under section 1225(b)(1)(B)(ii). First, the latter by definition have never been admitted and legally are deemed to be held at the border where they were apprehended. *See Leng May Ma*, 357 U.S. at 188; *Kaplan*, 267 U.S. at 229-30.The former typically were admitted or entered without inspection and were present in the United States for a sufficient period of time that they no longer qualify for expedited removal. Thus, an order to release the latter from immigration detention does not represent an order to permit them to initially enter the United States, as it does with aliens subject to section 1225(b)(1)(B)(ii).

Moreover, unlike aliens subject to detention under section 1226, Plaintiffs, like all other aliens detained pursuant to section 1225(b)(1)(B)(ii) have no right, constitutionally or statutorily, to a hearing before an immigration judge. *See Mezei*, 345 U.S. at 215; 8 C.F.R. § 1003.19(h)(2)(i)(B) (an immigration judge "may not" conduct a bond hearing to determine whether an arriving alien should be released into the United States during removal proceedings). Rather, as noted, the sole means of release available to arriving aliens like Plaintiffs is through the parole mechanism, which is statutorily assigned to the Secretary of Homeland Security, to exercise in her sole and unreviewable discretion. *See* 8 U.S.C. §§ 1182(d)(5), 1252(a)(2)(B)(ii).

27

Immigration courts do not share in this authority to parole aliens. *See, e.g.*, *In re Singh*, 21 I. & N. Dec. 427, 434 (BIA 1996) ("[N]either the [IJ] nor th[e BIA] has jurisdiction to exercise parole power."). Thus, the INA does not contemplate any means for review of parole determinations before an immigration judge. Plaintiffs therefore lack standing to seek review of their parole determinations by immigration courts as the law permits no such remedy, rendering their request non-redressable under Article III. *See Kiyemba*, 555 F.3d at 1026, 1028 (finding that there was "no statute" permitting district court to order aliens' release into the United States once political branches had determined not to allow them to enter and that the court lacked authority to order them released "outside the framework" of the INA).

### E.    Plaintiffs' Fifth Amendment Claim

Plaintiffs' Motion cites to *Zadvydas* for the point that Plaintiffs' personal liberty – as unadmitted and non-resident aliens – is at the heart of the Due Process Clause of the United States Constitution. *See* Mot. at 7. But, the Supreme Court in *Zadvydas* explicitly distinguished Plaintiffs' situation from the one it was considering: "We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question." *Zadvydas*, 533 U.S. at 682). Later, the Court emphasized this point again: "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. Moreover, the *Zadvydas* opinion recognized the continuing applicability of *Shaughnessy v. United States ex rel. Mezei*, a case Plaintiffs asks this Court to ignore. *See* Mot. at 19 n.20. The "entry fiction" of *Mezei* that is ratified in *Zadvydas* is the standard framework for understanding rights of aliens under the Constitution.

*Zadvydas* dealt with the specific circumstance of when the purpose for detaining the alien—removal—was no longer reasonably foreseeable, and only in *that* circumstance was continued detention deemed unreasonable. 553 U.S. at 699-700. This problem does not present for Plaintiffs' situation, where aliens are seeking admission and there is no reason to think removal will not be possible once the agency adjudicates the claim. Rather than honoring the rationale for the rule established by Congress, as the holding did in *Zadvydas*, 533 U.S. at 699, (citing 1 E. Coke, Institutes 70b), Plaintiffs' suggestion to eliminate continued detention under 8 U.S.C. § 1225(b)(1)(B)(ii) would frustrate Congress' purpose. "Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character and while arrangements were being made for their deportation." *Wing Wong*, 163 U.S. at 235. Plaintiffs are now in such proceedings, waiting in detention deemed an essential option available to the government in *Wing Wong,* and have no basis in law to deprive the executive branch of this practice.

Plaintiffs also allege that their ongoing detention violates the Fifth Amendment because their parole determinations have allegedly been premised on ICE's failure to follow its own internal policy memoranda by overweighting deterrence as a factor in parole decisions. *See* SAC at ¶ 111; Mot. at 18. That claim is devoid of merit for the simple reason Defendants have, in fact, conducted parole determinations consistent with the Morton Memorandum, ICE Policy Directive 11002.1. *See supra* Factual Background at 9; Exhibit A at ¶¶ 4-8.

Because Plaintiffs are applicants for admission, that is the beginning and the end of the inquiry for Fifth Amendment purposes. To start, as the Court of Appeals for the District of Columbia Circuit has repeatedly held, "an applicant for initial entry has no constitutionally cognizable liberty interest in being permitted to enter the United States." *Rafeedie v. I.N.S.*, 880

F.2d 506, 520 (D.C. Cir. 1989). "[T]he due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." *Kiyemba*, 555 F.3d at 1026-27 (D.C. Cir. 2009) (citing multiple cases dating back to 1950). Thus for Plaintiffs, "[w]hatever the procedure authorized by Congress is, it is due process . . . ." *Knauff*, 338 U.S. at 543. The parole review they have received before DHS is precisely the procedure authorized by Congress.

### 1.    Plaintiffs Are Not Lawful Permanent Residents, and Cannot Claim Due Process Rights that Pertain to Circumstances Not Their Own

Because Plaintiffs received the process they were entitled to under the INA, the implementing regulations, and the internal policy guidance that may be binding, they cannot allege their due process rights have been violated. Nevertheless, they cite to a number of distinguishable and irrelevant cases suggesting they do in fact have due process rights above and beyond those provided for by Congress in the context of their requests for admission to the United States and parole determinations.

Indeed, case after case supports the view that unless detention has become indefinite, arriving aliens who have had a parole determination, even where it is denied, lack any due process right to seek further review or release pending completion of their removal proceedings. *See Castro*, 835 F.3d at 449 n.32 (detention pending removal lawful unless indefinite or without a hearing); *Barrera-Echavarria*, 44 F.3d at 1449 (aliens subject to expedited removal orders do not have "a constitutional right to be free from detention, even for an extended time."). Cases cited in Plaintiffs' Motion where petitioners were detained under 8 U.S.C. § 1225(b)(2)(A) do not apply to Plaintiffs request for relief because they are detained under section 1225(b)(1)(B)(ii). *See Maldonado v. Macias*, 150 F.Supp.3d 788, 798, 811 (W.D. Tex. 2015) (detention pursuant to 8 U.S.C. § 1225(b)(2)(A)); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 377

(M.D. Pa. 2012) (petitioner previously admitted as a lawful permanent resident detained pursuant to 8 U.S.C. § 1225(b)(2)(A)); *Ahad v. Lowe*, 235 F. Supp. 3d 676, 681, 686, 688 (M.D. Pa. 2017) (detention pursuant to 8 U.S.C. § 1225(b)(2)(A)).

Plaintiffs also rely on cases suggesting that section 1225(b) as a whole must be read to include an implicit time limitation on the duration of detention. But even if those cases have any application here – which they do not – the fact remains that Plaintiffs are not seeking a bond hearing as in those cases, nor could they. 8 U.S.C. § 1225(b). Rather, they ask for a new *parole* determination applying what they believe is the correct legal standard. This, in effect, means they seek review of DHS's exercise of discretion in denying them parole, and then an order requiring the exercise of discretion in a different manner. As explained above, the court lacks jurisdiction over such claims or to issue such relief.

Even if Plaintiffs claim could be construed as requesting bond hearings, and even if it was appropriate to assess these core habeas claims in this venue rather than in their jurisdiction of confinement, the cases Plaintiffs cite are distinguishable on their face or wrongly decided. *Rodriguez* is distinguishable because it addressed detention under 8 U.S.C. § 1225(b)(2)(A) incident to removal proceedings under section 1229a, 715 F.3d at 1132, and did not purport to address detention of aliens subject to expedited removal proceedings or section 1225(b)(1)(B)(ii). Moreover, the basis for requiring bond hearings for aliens in section 1225(b)(2) detention in *Rodriguez* was that lawful permanent residents may in some circumstances be classified as arriving aliens and detained under section 1225(b)(2) if they have committed any acts that render them applicants for admission under 8 U.S.C.1101(a)(13)(C) (noting limited exception to rule that lawful permanent residents are not "applicants for admission"). *See id*. at 1142-43. However, Petitioners do not claim to be lawful permanent

31

residents, but non-admitted aliens seeking initial entry. *See* SAC at ¶2. As such, they have no

constitutional rights with respect to their admission, unlike lawful permanent residents. *See*

*Castro*, 835 F.3d at 443-46. In *Abdi v. Duke*, the court incorrectly applied *Rodriguez* to U.S.C.

§ 1225(b)(1)(B)(ii) based on the incorrect assumption that lawful permanent residents could

hypothetically be subject to that provision. 2017 WL 5599521, at *28 (concluding non-lawful

permanent residents acquire an "implicit right to a bond hearing under 1225(b)…."). This

approach does not apply to detainees under 8 U.S.C. § 1225(b)(1)(B)(ii), however, because the

screening process required by the INA makes it so that this category does not include lawful-

permanent-resident aliens. 8 U.S.C. § 1225(b)(1)(A)(i).

Any reliance on these cases to establish due process rights as Plaintiffs is misplaced.

### F.    Plaintiffs' First Amendment Right-to-Petition Claim

Plaintiffs also assert a claim premised in the First Amendment—a right to petition the

United States government for asylum—alleging that their ongoing detention somehow impedes

their ability to apply for asylum, which they presently are doing in their removal proceedings.

*See* Mot. at 30. However, detention is a valid component of removal proceedings, *see Demore v.*

*Kim*, 538 U.S. 510, 528 (2003), and there is no constitutional right to release.[6]

Plaintiffs are, in fact, pursuing asylum relief. This is evidenced by their applications, and

by their detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). For inadmissible aliens outside the

---

[6] Whether the First Amendment puts limitations upon detention of non-admitted aliens in
removal proceedings is unclear. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265
(1990) (concluding that the "the people" within the First, Second, Fourth, and Ninth
Amendments "refers to a class of persons who are part of a national community or who have
otherwise developed sufficient connection with this country to be considered part of that
community."); *Kleindienst*, 408 U.S. at 770 (control of immigration at the borders is a facially
legitimate and bona fide exercise of a Congress' delegated power, Courts are not to balance this
interest against an individual's First Amendment Right).

territory of the United States, no court has recognized a right to asylum that does not implicate this provision.

Finally, to the extent Plaintiffs allege unfairness in the unfolding of the removal proceedings, those are intrinsic to that proceeding and must be raised in the proceedings themselves, and afterwards in courts of appeals. *See* 8 U.S.C. § 1252(a)(5), (b)(9); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1033 (9th Cir. 2016) (concluding that right-to-counsel claims—like every other claim relating to removal proceedings—must be raised in a petition for review).

### G.   Plaintiffs' APA Claim

Plaintiffs' are not likely to succeed on the merits of their APA claim because there is no cognizable final agency action, the parole determinations are committed to agency discretion, there is another adequate remedy available to Plaintiffs, and challenges to conditions of confinement are not proper claims under the APA.

#### 1.   Not a Final Agency Action

Plaintiffs' allegations fail the test for finality[7] under *Bennett.* 520 U.S. at 178 ("First, the action must mark the consummation of the agency's decisionmaking process . . . second, the

---

[7] The case law in this circuit is split on the issue of whether the requirement of a final agency action under the APA is jurisdictional. Some panels have held that the lack of a final agency action precludes the district court from reaching the merits because the court lacks jurisdiction over non-final actions. *See Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001).  Other panels have concluded that the issue of whether an agency action is final under the APA is not jurisdictional. *See Vietnam Veterans of America v. Shinseki*, 599 F.3d 654, 661 (D.C. Cir. 2010). Notwithstanding this unresolved issue, the reasoning of *Sierra Club v. Peterson*, 717 F.2d 1409 (D.C. Cir. 1983) and *Arden Wood, Inc. v. U.S. Citizenship and Immigration Servs.*, 480 F. Supp. 2d 141 (D.D.C. 2007), and their bases for dismissing plaintiffs' suits in those cases, is sound in this circuit, as plaintiffs must challenge a final agency action in order to state a claim under the APA. *See Reliable Automatic Sprinkler v. Consumer Products Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("We need not dwell on this issue, for it raises a question of no significance in this case. If there was no final agency action here, there is

action must be one by which rights or obligations have been determined, or from which legal consequences will flow…." (citations and internal quotations omitted)).

As an initial matter, Plaintiffs cannot invoke the APA as a basis to challenge their ongoing detention because they do not allege any cognizable final agency action promulgating or effecting their alleged deterrence policy that is reviewable under the APA. The APA provides that both agency action which is made reviewable by statute, and final agency action "for which there is no adequate remedy in a court" may be subject to judicial review. 5 U.S.C. § 704. When the agency action at issue is not made reviewable by statute, or when there is no final agency action, the complaint fails to state a cause of action under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"); *see also Reliable Automatic Sprinkler Co.*, 324 F.3d at 731 (D.C. Cir. 2006); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005).

The discretionary determinations by Defendants that Plaintiffs allege in the Second Amended Complaint do not constitute a "final agency action" that may be reviewed under the APA. As an initial matter, Plaintiffs have pointed to no regulation, letter, memorandum, or other form of written material that comprises this policy that they allege is being applied by Defendants. This failure alone is fatal to Plaintiffs' claims. *See Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (Contreras, J.) ("Plaintiffs point to no written rules,

---

no doubt that appellant would lack a cause of action under the APA. Therefore, even though there was no basis for dismissal under Rule 12(b)(1), we may properly affirm the District Court's judgment pursuant to Rule 12(b)(6)").

orders, or even guidance documents of the Forest Service that set forth the supposed policies

challenged here. Instead, Plaintiffs appear to have attached a 'policy' label to their own

amorphous description of the Forest Service's practices. But a final agency action requires

more."). Plaintiffs have taken it upon themselves to observe various ICE custody determinations

that were made on a case-by-case basis, and assemble them as one might stars into a

constellation, calling them a de facto policy. *See* SAC at ¶¶ 48-56. But there is no actual

evidence of a deterrence policy.

Rather than complaining of any discrete agency action or decision, Plaintiffs in fact

complain generally that Defendants—particularly those located far away from Plaintiffs—are

doing things that establish a "de facto" policy, which has the effect of influencing the officials

who are making the actual parole determinations they are subject to. *See* SAC at ¶ 56-58.

Defendants, however, state that the written official policies are in effect. *See* Exhibit A at ¶¶ 4-8.

These allegations do not satisfy the requirement for a final agency action under the APA.

Moreover, the presumption of regularity applies, where, as here, there is no clear evidence to the

contrary. *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011) ("The presumption of regularity

supports the official acts of public officers and, in the absence of clear evidence to the contrary,

courts presume that they have properly discharged their official duties.").

Ultimately, Plaintiffs' claims constitute a generalized complaint that the agency is not

properly exercising its discretion in making its custody determinations, but a complaint about the

agency's purported unwritten general policy with regard to the factors to be considered by ICE

agents exercising the agency's discretion in each individual case is a "'generalized complaint

about agency behavior' that gives rise to no cause of action." *Bark*, 37 F. Supp. 3d at 50 (quoting

*Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006)). "While a single step or measure is

35

reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA." *See Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (citing *Lujan*, 497 U.S. at 890). Plaintiffs cannot bring programmatic challenges under the APA, and the limitation to "discrete" agency action, precludes this sort of a "broad programmatic attack." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004); *see also Lujan*, 497 U.S. at 891 ("But respondent cannot seek wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm."). The purported de facto policy about which Plaintiffs complain is, in fact, a consideration of permissible discretionary factors in an ongoing decision-making process by ICE. Plaintiffs, therefore, have identified no final agency action that may be reviewed under the APA.

### 2. Defendants' Parole Determinations Are Committed to Agency Discretion by law

Plaintiffs claims also fail because the parole determinations challenged here are committed to agency discretion. Judicial review under the APA is unavailable in situations where the agency action complained of "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Plaintiffs' amended complaint seeks to challenge the custody determinations made by ICE for Plaintiffs and other similarly situated individuals under 8 U.S.C. §§ 1252(a)(2)(B)(ii), 1182(d)(5)(A). As noted, that section clearly commits the determination of whether to parole the alien to the agency's discretion. *See* 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public

benefit any alien applying for admission to the United States…"). Thus the parole determinations have been committed to the agency's discretion by the clear terms of the statute itself, and APA review is precluded.

Moreover, limiting APA review in the context of 8 U.S.C. § 1252(a)(2)(B)(ii) makes sense in light of the nature of the discretionary decision at issue. For example, in *Oryszak v. Sullivan*, 576 F.3d 522, 525-26 (D.C. Cir. 2009), the D.C. Circuit found that the decision to grant or deny a security clearance is a discretionary action shielded from APA review. In so finding, the Court noted the sensitive nature of the decision at issue, and concluded that "because the authority to issue a security clearance is a discretionary function of the Executive Branch, actions based upon denial of security clearance are committed to agency discretion by law . . . ." *Id.* at 526. Here, Plaintiffs seek to challenge ICE's discretionary decisions to parole certain aliens. Such decisions implicate broader issues of immigration policy that are clearly designated by Congress to the discretion of the executive branch. *See Knauff*, 338 U.S. at 542 (explaining that "executive power to control the foreign affairs of the nation" is additional source of authority in immigration matters).  Thus there is good reason to find that APA review of these determinations is precluded by the discretionary terms of 8 U.S.C. § 1182(d)(5)(A).

### 3.    Plaintiffs Have Another Adequate Remedy Available to Them

Even if Plaintiffs could establish that ICE had a de facto policy that superseded official policy, and that this policy constituted a final agency action that was not otherwise committed to agency discretion by law, they fail to state a claim under the APA because there is another adequate remedy available to them. *See* 5 U.S.C. § 704. The Supreme Court, in considering this provision, explained that "[w]hen Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of

37

jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). According to the Supreme Court, plaintiffs have "adequate remedies" when statutes creating administrative agencies defined specific procedures for reviewing that particular agency's actions. *Id.* Here, Plaintiffs cannot state a claim under the APA because the INA provides clear evidence that Congress did not intend for judicial review of ICE's discretionary determinations, and at the same time the regulations implementing the INA provide an adequate remedy for an alien wishing to challenge ICE's custody determinations.  *See Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)) ("In evaluating the availability and adequacy of alternative remedies . . . the court must give the APA 'a hospitable interpretation' such that 'only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.'")

As discussed above, 8 U.S.C. § 1252(a)(2)(B)(ii) provides clear and convincing evidence that Congress did not intend for judicial review in the district court of ICE's discretionary parole determinations. Further, and as discussed above, if an individual Plaintiff wanted to bring a constitutional claim related to her or his ongoing, detention, the Supreme Court has already carved out a narrow exception which would allow the individual to petition for *habeas* relief under 28 U.S.C. § 2241 in appropriate circumstances, but Plaintiffs (who vigorously deny that they are seeking *habeas* relief) cannot bring such a claim in this forum. *See Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945) (Noting that while federal prisoners are committed to the custody of the Attorney General, he "is not the person directly responsible for the operation of our federal penitentiaries. He is a supervising official rather than a jailer. For that reason, the proper person to be served in the ordinary case is the warden of the penitentiary in which the

prisoner is confined rather than an official in Washington, D.C., who supervises the warden. An interpretation which would permit resort to the courts in the District of Columbia for writs of habeas corpus by prisoners in federal institutions all over the United States is without justification either in convenience or logic.") Thus, because a *habeas* claim could provide Plaintiffs the relief requested, another adequate remedy exists, precluding Plaintiffs' APA claims.

Moreover, Plaintiffs' suggestion that immigration court review is not adequate ignores the vast history of case law reviewing issues related to immigration detention. Even where courts have held that an individual's detention is unlawful, the remedy for any finding of unlawful detention for those in removal proceedings is that the individual may be afforded a bond hearing before an immigration judge. *See, e.g., Reno*, 507 U.S. at 309 (holding that due process was satisfied where detained juveniles had the right to a hearing before an immigration judge). For all of these reasons, Plaintiffs have other adequate remedies available to them and have not stated a claim under the APA.

### 4. Challenges to Conditions of Confinement Are Not Proper Claims Under the APA

In addition to challenging the length of their detention, Plaintiffs appear to challenge the conditions of their confinement. Plaintiffs argue, "[m]ost importantly, it is the cruel and shocking reality of the detention conditions endured by the Plaintiffs themselves. . . that make a finding of irreparable harm irrefutable." Mot. at 8. Thus, Plaintiffs seek to challenge the condition of their confinement under the APA.

A civil rights complaint under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971)[8] is the proper vehicle for detainees to challenge conditions of their confinement, assuming they otherwise satisfy the requirement of making a *Bivens* claim. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004); *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973). "In *Bivens*, the Supreme Court recognized a private right of action for damages against federal officials alleged to have violated a citizen's constitutional rights." *Isaac v. Samuels*, 132 F. Supp. 3d 56, 59 (D.D.C. 2015) (internal citations omitted).

In addition, certain conditions of confinement claims may be brought in a petition for writ of habeas corpus. C*f. See Stern v. Federal Bureau of Prisons*, 601 F.Supp.2d 303, 305 (D.D.C. Mar. 10, 2009) ("[P]laintiff, in turn, may not bring his [conditions of confinement] challenge under the APA because the habeas corpus proceedings provide an adequate remedy in court."). Nevertheless, conditions of confinement claims are improper under the APA.

Here, the Court need not determine whether these claims should be brought in a habeas or civil rights complaint because either one would preclude judicial review under the APA. Moreover, even though Plaintiffs are challenging the fact of their detention and seek relief from detention, *see supra*, Plaintiffs specifically chose not to file this action pursuant to the habeas corpus statute. *See* Mot. at 33.

## II.    Plaintiffs Have Alleged Irreparable Harm That Is Not Specific To the Preliminary Injunction

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minnesota*, 255 F. Supp. 3d

---

[8] "A *Bivens* action is analogous to an action under 42 U.S.C. § 1983 – the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials." *Evans v. Ball*, 168 F.3d 856, 863 & n.10 (5th Cir. 1999).

51 (footnote omitted). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Significantly, the harm must be likely, and the question is whether it would occur "in the absence of preliminary relief…." *Winter*, 555 U.S. at 20. Plaintiffs cannot make this showing.

First, Plaintiffs seek an injunction that would require Defendants to provide the very same relief that Plaintiffs are seeking through their SAC, simply on an expedited basis. *See* Mot. at 3 ("They seek a preliminary injunction requiring Defendants to hold immediate hearings before an Immigration Judge to reconsider the Plaintiffs' parole requests in compliance with the applicable statutes, rules, and ICE Policy Directive No. 11002 (Jan. 4, 2010)"); SAC at Prayer for Relief ¶ 5.). A comparison of the SAC Prayer for Relief and the Motion for Preliminary Injunction Proposed Order shows the two are indistinguishable, except as to order of presentation, and the choice of a positive or negative injunction:

| Second Amended Complaint Prayer for Relief | Preliminary Injunction Proposed Order |
| --- | --- |
| 5. Grant an injunction requiring… | that Defendants are ENJOINED from: |
| …that Plaintiffs' requests for parole be heard and determined by an **Immigration Judge**, … | 3. Denying Plaintiffs an immediate custody review hearing before an **Immigration Judge**. |
| …in full compliance with the Executive **Policy Directive [No. 11002.1]** of 2010, and … | 2. Violating ICE **Policy Directive 11002.1** in evaluating the Plaintiffs Requests for Parole, and; |
| … without any consideration of **immigration deterrence** or punishment. | 1. Considering **the deterrence of immigration** in evaluating the Plaintiffs' Requests for Parole; |

41

| | |
|---|---|
| Unless the preponderance of the Defendants' evidence indicates a concrete danger to the public, P.O.E. asylum seekers should be **released**. | |

SAC at Prayer for Relief ¶5; Proposed Order (ECF No. 54-23).

Preliminary injunctions are improper procedural devices for the relief sought in the Motion because they are not intended to serve as "a preliminary adjudication on the merits but rather [as] a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *see, e.g., Guy v. Tanner*, 2014 U.S. Dist. LEXIS 85730, * 7-8 (E.D. La. June 19, 2014) ("Guy's motion is no more than a veiled attempt to expedite the resolution of his habeas petition. This is not a proper basis for issuing an injunction"); *Guthrie v. Niak*, 2013 U.S. Dist. LEXIS 139984, *17-18 (S.D. Tex. Sep. 27, 2013) ("Moreover, it appears Plaintiff is merely trying to expedite the relief sought in his Complaint").

Second, Plaintiffs waited months before filing for relief from detention. If the conditions of detention are the problem, these claims are not the proper vehicle. If, on the other hand, the loss of liberty is the alleged harm, this was present on the first day of detention. *See, e.g., Taylor v. Biglari*, 2013971 F.Supp.2d 847, 854 (S.D. Ind. 2013) (collecting cases) ("plaintiff [who] has already been subjected to the putative harm…cannot credibly argue that pressing hardship requires injunctive relief in the interim before the underlying matter is resolved.")

Third, there is no presumption of harm where, as here, that is the ultimate question to be decided on the merits. *See e.g. Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). Finally, as discussed above, there is not likelihood of success on the merits. Therefore, there is no ongoing

harm. What Plaintiffs complain of—detention—is necessarily a component of immigration

enforcement by political branches of government. *See Demore*, 538 U.S. at 528; *Wing Wong*,

163 U.S. at 235; *Castro*, 835 F.3d at 449 n.32 (detention in connection with removal is

permissible, so long as not indefinite).

### III.    The Balance of Harms Favors the Government

The purpose of a preliminary injunction "is not to conclusively determine the rights of the

parties, but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee

Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citations omitted).  Therefore, even if

preliminary relief is warranted, "a court 'need not grant the total relief sought by the applicant

but may mold its decree to meet the exigencies of the particular case.'" *Id.* (citation omitted).

The balance of equities and consideration of the public interest factors are also "pertinent

in assessing the propriety of any injunctive relief" and the Court must weigh them with "serious

consideration." *Winter*, 555 U.S. at 27, 32.  When the Government is a party, these last two

factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of hardships and public

interest weigh in favor of Defendants. In this case, Plaintiffs seek an injunction from this Court

enjoining the Defendants from exercising its discretionary authority in making parole

determinations. Moreover, Plaintiffs seek to circumvent the ordinary course of litigation by filing

for injunctive relief in this jurisdiction, even though a motion for transfer of venue to a more

appropriate venue—where the Plaintiffs are in immigration detention—is pending. (ECF No. 38).

Granting the preliminary injunctive relief  Plaintiffs seek would alter, rather than preserve, the

status quo.  Interference with the manner in  which ICE exercises its discretionary authority, 8

U.S.C. § 1182(d)(5)(A), and carries out its  statutory mandates, 8 U.S.C. § 1225(b), on a

preliminary basis significantly harms the Government and cannot truly be said to be in the public interest.

It is well-settled that the public's interest in enforcement of U.S. immigration laws is paramount, and even more so where, as here, Congress has exercised its plenary legislative authority and control over the Nation's border. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878-79 (1975); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1220-21 (D.C. Cir. 1981). Here, Plaintiffs ask this Court to intervene in an area where the actions about which they complain are plainly outside this Court's jurisdiction, 8 U.S.C. § 1252(a)(2)(B)(ii); clearly delegated to ICE's unreviewable discretion, 8 U.S.C. § 1182(d)(5)(A); or mandated by unambiguous statutory provisions, 8 U.S.C. § 1225(b). It cannot be in the public's interest to disregard these statutory mandates. Moreover, Plaintiffs have not met the higher standard necessary when seeking to alter the status quo when seeking a preliminary injunction. *See Paleteria La Michoacana, Inc.*, 901 F.Supp.2d at 56.

## CONCLUSION

For the aforementioned reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

////

44

Dated: February 9, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

EREZ REUVENI
Assistant Director

*/s/ Sheetul S. Wall*_____
SHEETUL S. WALL
Trial Attorney

WILLIAM M. MARTIN
Trial Attorney

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-2377
Facsimile: (202) 305-7000
William.Martin3@usdoj.gov
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2018, I electronically filed the foregoing *Defendants'*

*Opposition to Plaintiffs' Motion for Preliminary Injunction* with the Clerk of the Court by using

the CM/ECF system, which will provide electronic notice and an electronic link to this document

to all attorneys of record.

DATED:  February 9, 2018

*/s/ Sheetul S. Wall*_____
SHEETUL S. WALL
Trial Attorney
United States Department of Justice
Civil Division

46