**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HATIM B., *et al.*

     *Plaintiffs*,

     v.

KIRSTJEN NIELSEN, Secretary of
Homeland Security, *et al.*,

     *Defendants*.

Civil Action No. 1:17-cv-1976-RC

---

### PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

Plaintiffs Hatim B., Sadat I., Mikailu J., and Aracely R. are entitled to a preliminary injunction on their claims under the Fifth and First Amendments to the United States Constitution and under the Administrative Procedure Act ("APA"). Defendants mischaracterize Plaintiffs' claims in their response to Plaintiff's application for a preliminary injunction. As this reply makes clear, Plaintiffs have come forward with clear evidence of a discrete and unlawful policy that has resulted in their unconstitutional prolonged detention.

### I. Existence and Significance of Defendants' Policy

Plaintiffs allege that the Defendants have an unconstitutional policy of heavily weighting immigration deterrence in evaluating the parole requests of POE Asylum Seekers. Defendants insist that no deterrence policy exists. Dkt. 63 at 2. Clearly the evidence produced with Plaintiffs' application for preliminary injunction consisting of statistics, human rights reports, statements made by offcials, and expert witness declarations show that it does. *See* Dkts. 54-1 at 14-18.

The definition of a policy in the constitutional and APA contexts differ somewhat, as set forth below, but they lead to the same results.

"Policy" is a term of art in constitutional cases. If a municipal or agency policy does exist, then the resulting harms are caused by the high level decision-makers who promulgate and impose it. Injunctive relief will lie against the agency, municipality, or other governmental entity itself, not due to any *respondeat* superior claim, but because the leadership has in fact inflicted the harms, while the local subordinates merely carry out the orders. A policy may be established (1) by an express official policy or rule, (2) by a direct command from a policy-making officer, or (3) through a custom, practice and pattern of similar events. *See Monell v. Department of Social Services of the City of New York,* 436 U. S. 658, 690-691 (1978); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988). Certain policies, especially unlawful ones, will often be unwritten, but are still official and reviewable. *Praprotnik,* 485 U.S. at 127. The harm need not be inflicted every time an opportunity arises. For example, claims of a policy of excessive force by officers in a certain police department need not be supported by evidence that each and every suspect has always been improperly battered. A Plaintiff need only show a widespread pattern of similar actions. *Monell*, 436 U.S. at 690. There is no need for numerous incidents, if such incidents are egregious, or a substantial number are in evidence. *See Carter v. District of Columbia*, 795 F. 2d 116, 123-24 (1986); *see also Cox v District of Columbia,* 821 F. Supp. 2d 1, 11 (D.D.C. 1993); *see also Warren v. District of Columbia,* 353 F.3d 36, 38 (D.C. Cir. 2004).

The significance of such a policy in this case is substantial. First, it shows that the local subordinates never really exercised their full and fair discretion in Plaintiffs' cases, but rather followed their orders to deny parole *despite* Plaintiffs' full eligibility. The policy also indicates a systemic violation of the 2010 Morton Policy Directive. Moreover, Plaintiffs cannot obtain

complete relief and protection unless the injunction reaches the high level officials themselves. The unconstitutional policy itself must be addressed or Plaintiffs remain in danger. Indeed, even if a named local Defendant were now to grant parole, the Plaintiff could be re-detained at any later time and subjected to the same unconstitutional policy being carried out by a different subordinate.

Under the APA, the courts evaluate whether or not the practice of deterring immigration through the denial of parole is in fact a final agency action. If not, there is no review. As set forth in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), an agency action is "final" if it is the consummation of agency action, and if legal consequences flow from such action. The policy need not be written. *Venetian Casino Resort, LLC v. E.E.O.C.,* 530 F. 3d 925, 931 (D.C. Cir. 2008); *see also Appalachian Power CO. v. EPA, 208 F. 3d 1015*, 1022 (D.C.Cir. 2000) (holding that where the action represents a settled position of the agency, and is binding on its officers, then it is final and reviewable). Accordingly, Plaintiffs may challenge the Defendants' policy as unconstitutional, as well as arbitrary, irrational and capricious because it requires systemic violations of the agency's own binding regulations and policies.[1] Because the policy adds substantive elements to the statute and regulations, as opposed to merely providing clarifications, it is also void for failure to comply with the notice and comment requirements of the Act.

Defendants may not simply announce that they have no policy. Plaintiffs have provided substantial evidence, including human rights studies, a history of Defendants' many deterrence efforts, official declarations, statements by local officers, declarations by expert witnesses, and

---

[1] The 2010 Morton Policy Directive is binding because it affects Plaintiffs' legal rights. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).

statistics indicating a shocking drop in grants of parole to POE Asylum Seekers. Dkt. 54-1 at 7-12, 14-18.[2] The policy is established.

The policy is also concrete and well defined. Plaintiffs do not complain of a poorly functioning agency in general, or of a few bad apples. Rather, they complain of a specific and systemic policy of deterring immigration which has caused them to be subjected to long term and unjustified detention, despite their full eligibility for parole. *see R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 184 (D.D.C. 2015).

## II. Plaintiffs' Fifth Amendment Claims

Defendants stress the broad powers of the Legislative Branch in the field of immigration. Dkt. 63 at 22-28. Certainly Congress does have broad plenary powers to determine and control immigration affairs. However, in our system of checks and balances, that power is not unlimited. As the Supreme Court has noted, even Congress is bound by the constitution. *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001):

> "The Government also looks for support to cases holding that Congress has 'plenary power' to create immigration law, and that the Judicial Branch must defer to Executive and Legislative Branch decisionmaking in that area. Brief for Respondents in No. 99–7791, at 17, 20 (citing *Harisiades v. Shaughnessy,* 342

_____

[2] Defendants are not entitled to a presumption of regularity in this case. The presumption does not apply where an agency deviates from its established procedure. *Wilson v. Hodel*, 758 F.2d 1369, 1372 (10th Cir. 1985); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1107, 1117 (D.C. Cir. 2007) (presumption does not apply where there is clear evidence to the contrary). Plainitffs provide ample evidence to rebut any presumption of regularity. Research from Human Rights First indicates widespread failures to follow the 2010 Morton Policy Directive and concludes that drastically reduced parole grants. Dkt. 54-14 at 4-7. Plaintiffs also detail deviation from Defendants' regular parole practices. For example, Plaintiff Sadat I. was told by ICE agents that his detention would continue because he should not have come to the United States and later that his parole would be denied because of "the election." Dkt. 54-1 at 17-18 n.19. Plaintiff Mikailu J. was told that no Africans would be released. *Id*. Araceli R. was initially found eligible for parole and a draft letter was prepared, but then abruptly cancelled and she was sent a rejection letter instead. *Id*. In light of this evidence, Defendants cannot rest on the single conclusory declaration from a Deputy Field Office Director that Defendants do not consider deterrence when considering parole evaluation requests to claim the presumption. Dkt. 63-1.

U.S. 580, 588–589 (1952)). But that power is subject to important constitutional limitations. *See INS v. Chadha,* 462 U.S. 919, 941–942 (1983) (Congress must choose "a constitutionally permissible means of implementing" that power); *The Chinese Exclusion Case,* 130 U.S. 581, 604 (1889) (congressional authority limited "by the Constitution itself and considerations of public policy and justice which control, more or less, the conduct of all civilized nations"). In these cases, we focus upon those limitations."

It is precisely those constitutional boundaries that Plaintiffs challenge here, as well as the failure of the Defendants to comply with the requirements of the APA. They are not limited to whatever protections Congress provides unless Congress is in compliance with the constitution.

Defendants next urge that because the Plaintiffs have not yet been admitted into the United States, that the "entry fiction" applies, and that they have no constitutional rights at all. Dkt. 63 at 29-30. This has never been the case. It may be that persons like the Plaintiffs receive lesser procedural due process than do other immigrants who have lived within the U.S., albeit illegally, for a longer period of time. Certainly the procedures set forth in 8 U.S.C. §1225 are minimal. However, it has never been the case that arriving applicants have no due process rights at all. Plaintiffs note that the courts have always provided them with *substantive* due process protections. Substantive due process prohibits government actions so egregious that they are impermissible no matter how correct the notice and hearing provided. Unjustified and prolonged detention is one of those egregious actions.

Thus in *Jean v. Nelson*, 472 U.S. 846, 874-875 (1985), the dissenting Justice Powell wrote that excludable persons certainly have such fundamental due process rights. (The main opinion had avoided the constitutional question). Such persons obviously cannot be subjected to beatings or starvation or any similar abuse, for example. The Fifth Circuit reached the same conclusion in *Lynch v. Canatella*, 810 F.2d. 1363, 1373-1374 (5th Cir. 1987) a case involving the physical abuse of a group of stowaways. *See also Rosales-Garcia v. Holland*, 322 F.3d 386,

409-10 (6th Cir. 2003); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 799-800 (W.D. Tex. 2015). Both *Ahad v. Lowe*, 235 F. Supp. 3d 676, 686 (M.D. PA. 2017) and *Chi Thon Ngo v. INS*, 192 F. 3d 390, 396 (3rd Cir. 1999) have directly ruled that excludable immigrants are "persons" under the due process clause.

While a short period of detention may be permissible for persons like the Plaintiffs, in order to permit proper screening by the Defendants, prolonged detention crosses the line into a *substantive* due process violation. As discussed in Plaintiffs' memorandum in support of their application for preliminary injunction, personal liberty is one of the most fundamental rights protected by the due process clause. Dkt. 54-1 at 7-8; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Foucha v. Louisiana*, 504 US 71, 80 (1992). Any such deprivation requires very strong proof by the government that the person presents a risk to public safety. Thus an accused criminal has a right to bail, and can only be denied prior to conviction if a showing of serious danger is presented. Even then, he or she is protected by the Speedy Trial act. *United States v. Salerno*, 481 U.S. 739, 748-751 (1987). The same is true in civil commitment cases; such as *Addington v. Texas,* 441 U.S. 418, 431-433 (1979). Moreover, in civil commitments, the nature of the commitment must bear a reasonable relation to the purpose of the commitment. *Seling v. Young*, 531 U.S. 250, 265 (2001)

Clearly, persons like the Plaintiffs who have committed no crimes at all, and are the intended beneficiaries of domestic laws providing for political asylum and non-*refoulement*, cannot be subjected to prolonged detention in such harsh and prison like conditions.

Once detention becomes prolonged, the deprivation of liberty becomes a substantive due process violation unless the United States comes forward to prove its justifications. *Zadvydas v. Davis*, 533 U.S. 678, 693-95 (2001). This principle has been expressly recognized for Port of

Entry asylum seekers, despite the entry fiction. *Ahad v. Lowe,* 235 F. Supp. 3d 676, 688 (M.D. Pa. 2017); *Abdi v. Duke*, 2017 WL 5599521 at *28 (W.D.N.Y. 2017); *Macias v. Maldonado,* 150 F. Supp. 3d 788 (W.D. Tex. 2015). Because the Plaintiffs have been detained for one to two years, they are certainly suffering irreparable harms and constitutional violations. A parole decision by ICE alone, as the situation at bar indicates, is inadequate. Indeed, even enemy combatants held in Guantanamo have a right to challenge the government's justification for their detention to an independent judge. *Boumedienne v. Bush,* 553 U.S. 723 (2008*).*

Should the statutory denial of a bond hearing be struck down as unconstitutional,[3] the resulting provision of such a hearing would amply protect the Defendants' interests. The government may bring forth any concerns it has as to security or other relevant issues at the bond hearing itself, just as it would in a criminal trial or civil commitment hearing in this country. There is no undue burden.

Finally, Plaintiffs note the Defendants' claim that Plaintiffs' cited cases are all distinguishable and hence not on point. This is clearly inaccurate. Plaintiffs cite three identical cases involving Port of Entry asylum seekers above: *Abdi, Ahad, and Macias, supra.* They also cite a number of similar cases which discussed the due process rights of such asylum seekers, such as *Jean and  Canatella and Rosales-Garcia*, *supra*.  Moreover, *R.I.L-R v. Johnson*, *supra*, discusses and evaluates the constitutionality of an immigration deterrence policy. 80 F.Supp.3d 164, 188-90. Many other cases discuss the rights of inadmissible or "excludable" immigrants, which is directly relevant here and the fundamental substantive due process concerns raised by

---

[3] Plaintiffs are concurrently filing a motion for a twenty day period in which to make any necessary adjustments or amendments to their pleadings and prayer for relief in light of the new Supreme Court ruling in *Jennings v. Rodriguez*, --- S.Ct. ---, 2018 WL 1054878 (2018).The Court in *Jennings v. Rodriguez* held that the immigration statutes at issue authorize prolonged detention but remanded to the Ninth Circuit Court of Appeals to consider the constitutional arguments on their merits. *Rodriguez*, 2018 WL 1054878 at *19.

the prolonged detention of any person in this country without a very strong showing of government security concerns before an independent judge. Defendants' response presents distinctions without a difference.

### III. Plaintiff's APA Claims

####    a.    Plaintiffs challenge a final agency action.

Plaintiffs are challenging Defendants' use of an impermissible factor when evaluating requests for parole from POE Asylum Seekers. This is a discrete agency action subject to APA review. *See R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 184 (D.D.C. 2015) (describing agency's consideration of deterrence when making custody determinations under 8 U.S.C. § 1226(a) as "particularized" and subject to APA review). The consideration of deterrence has profound legal consequences for Plaintiffs and other POE Asylum Seekers as it results in their immediate and prolonged detention. *Id.* ("DHS's policy of considering deterrence has profound and immediate consequences for Central American asylum seekers detained as a result.").

Defendants compare the final agency action in this case with that challenged in *Bark v. United States Forest Serv.*, 37 F.Supp.3d 41 (D.D.C. 2014) (J. Contreras), but the action complained of here is significantly more particularized. The plaintiffs in *Bark* complained of the United States Forest Service's program of issuing special use permits to concessioners who then charged a fee to people entering the park. *Bark*, 37 F.Supp.3d at 49-51. This Court analogized plaintiffs' challenge to the broad programmatic attack at issue in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) and dismissed the *Bark* plaintiffs' claims as a similarly "generalized complaint about agency behavior." *Id.* at 51. Plaintiffs in this case have identified a specific and constitutionally impermissible criterion considered by Defendants when evaluating requests for parole from a narrow subset of asylum seekers. Dkt. 56 at 9-15; Dkt. 54-1 at 14-18.

Plaintiffs challenge a particularized final agency action unlike the broad attacks brought in *Bark* and *Lujan* and properly seek review under the APA. *See San Juan Audubon Society v. Veneman*, 153 F.Supp.2d 1, 5-6 (D.D.C. 2001) (plaintiffs identified a final agency action where they challenged the Department of Agriculture's use of sodium cyanide capsules in certain environments without use of statutorily required maps, as opposed to entire program authorizing the use of such capsules).

      **b.  Parole decisions are not committed to agency discretion such that Defendants' actions are unreviewable even for compliance with the U.S. Constitution.**

The final agency action challenged in this case is not committed to agency discretion by law. As noted in Plaintiff's application for a preliminary injunction, this exception to APA applies only in the "rare instances" when the statute is written in such broad terms that there is "no law to apply." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971). Congress has not drawn the statute so broadly in this case. 8 U.S.C. § 1185(d)(5)(A) provides that the Secretary must evaluate parole requests on a case-by-case basis and conscribes the Secretary's discretion to cases in which "urgent humanitarian reasons" or "significant public benefit" justify the grant of parole. While Defendants may enjoy additional authority in immigration matters, *see* Dkt. 63 at 37, they never have the discretion to violate the constitution. *See WWHT, Inc. v. F.C.C.*, 656 F.2d 807, 815 n.15 (D.C.Cir.1981) ("In no event would a finding of non-reviewability on the ground that an action is committed to agency discretion preclude judicial review when constitutional violations have been alleged.").

      **c.  There is no other adequate remedy in court available to Plaintiffs.**

Defendants misconstrue the adequate alternative remedy requirement for APA claims when they argue that the INA provides clear and convincing evidence of Congressional intent to

bar APA claims. 8 U.S.C. § 1252 does not bar Plaintiffs' claims regarding the constitutional requirements, *see* Sec. IV.b *infra*, and moreover does not provide the clear and convincing evidence of congressional intent to create a special statutory procedure for review of agency procedures regarding custody determinations. *See* 8 U.S.C. § 1252(b) (providing requirements for review only of removal orders); *see also Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (relief offered by proposed alternative remedy must be of the same genre as that available under the APA). As argued in both Plaintiffs application for a preliminary injunction, Dkt. 54-1 at 33-34, and below, Sec. IV.a. *infra*, habeas corpus is not an adequate alternative remedy.

None of Defendants arguments regarding Plaintiffs' APA claims prevent this Court setting aside Defendants' action under 5 U.S.C. § 706.

## IV. None of the threshold issues raised by Defendants prevent the Court from granting Plaintiff's application for a preliminary injunction.

Defendants incorrectly argue that Plaintiffs are not even able to reach the merits of their constitutional and APA claims for three threshold reasons, each addressed below.

### a. Plaintiffs are not required to rely exclusively on habeas corpus claims.

Defendants repeatedly mischaracterize Plaintiffs' claims as "at the core" of habeas corpus and therefore required to be brought in Texas. Dkt. 61 at 2; Dkt. 63 at 13-14. Simply put, Plaintiffs do not seek relief that necessarily invalidates or shortens their confinement. They do not seek "core" habeas relief and are therefore not required to rely exclusively on habeas corpus claims.

Plaintiffs are only required to bring habeas corpus claims "if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Levine v. Federal Bureau of Prisons*, 245 F.Supp.3d 149, 152 (D.D.C. 2017) (citing *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013)) (federal prisoner was not required to bring APA

claim as a habeas corpus claim because success on the APA claim would only get the prisoner a hearing in a district court). Plaintiffs seek an injunction against the consideration of deterrence in evaluating their requests for parole, violations of the 2010 Morton Policy Directive, and against the denial of custody review hearings before an Immigration Judge. *See* Dkt. 54-23. Just as in *Wilkinson v. Dotson*, success for the Plaintiffs in this case will not necessarily mean immediate release from detention or a shorter stay in detention. *Dotson*, 544 U.S. 74, 82 (2005) ("Success for Dotson…means at most new eligibility review, which at most will speed consideration of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.") (emphasis in original). Instead, if Plaintiffs obtain their requested relief, the Defendants may present any concrete evidence in their possession that the Plaintiffs are a threat to public safety at a hearing before an Immigration Judge. Plaintiffs' requested relief is not at the "core" of habeas, as Defendants suggest, because it does not address the duration of confinement. *See Ray v. Smoot*, 168 F.Supp.3d 111, 112-13 (D.D.C. 2016) (prisoner seeking parole hearing was not required to bring 1983 claim as a habeas corpus claim because "parole rehearing would not necessarily shorten his confinement…."); *see also Aruanno v. New Jersey*, 215 Fed.Appx. 157, 158 (3rd Cir. 2007) (detainee was not required to bring habeas corpus claim because his 1983 claim "would render the state's procedures in civil commitment hearings invalid," not result in immediate release from civil commitment).

Defendants contend that "habeas relief in the immigration context is not generally release, but a hearing to address the legality of ongoing detention…" and therefore that Plaintiffs are really requesting habeas relief. Dkt. 63 at 14-15 (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1138 (9th Cir. 2013)). Defendants' argument expands the "core" of habeas corpus in a manner

that a majority of the Supreme Court explicitly rejected in *Dotson*. 544 U.S. at 81 (detainees must bring habeas claims when they "request present or future release," but not when their claims merely "relate to" the duration of confinement). Plaintiffs' claims focus on Defendants' policy of using an impermissible criterion when evaluating requests for parole, not on the core habeas relief of immediate or future release from detention. To the extent that there is any overlap between Plaintiffs' claims and habeas claims, APA claims and habeas claims can coexist. *See R.I.L.-R v. Johnson*, 80 F.Supp.3d 164, 185-86 (D.D.C. 2015) (plaintiffs were permitted to bring APA claims challenging DHS policy regarding release of immigrant detainees despite contention that habeas provided appropriate avenue for relief).

Plaintiffs' constitutional and APA claims do not necessarily imply the invalidity of their confinement and will not necessarily shorten the duration of their confinement. They are not required to bring their claims under 28 U.S.C. § 2241.

### b. The Court has jurisdiction over Plaintiffs' claims.

Defendants argue that a jurisdiction-stripping provision of the INA, 8 U.S.C. § 1252(a)(2)(B)(ii), bars judicial review of both Plaintiffs' constitutional and APA claims. Dkt. 63 at 17-22. Plaintiffs do not ask the Court to interfere with the ultimate parole determination in each of their cases.[4] Rather, Plaintiffs challenge Defendants' failure to follow procedures set out in the 2010 Morton Policy Directive and their unlawful consideration of deterrence as a heavily weighted criterion when evaluating requests for parole. "It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the

---

[4] Defendants cite several cases in which individuals brought suit regarding the individualized parole determination in their cases. Dkt. 63 at 19. These cases are easily distinguishable from the instant case because the plaintiffs merely challenged Defendants' discretionary conduct in denial of individual requests for parole. As explained in Sec. IV.b., courts maintain a crucial distinction between the non-discretionary procedures utilized to arrive at a discretionary decision when determining whether Section 1252(a)(2)(B)(ii) bars a plaintiff's claims.

required procedures of decisionmaking." *Bennett v. Spear*, 520 U.S. 154, 172 (1997). Plaintiffs'

constitutional and APA claims challenging Defendants' procedural failures are not barred by

Section 1252(a)(2)(B)(ii) or any other provision of the INA because they are not a matter of

discretion from Defendants. *See Abdi v. Duke*, No. 1:17-CV-0721 EAW, 2017 WL 5599521, at

*6 (W.D.N.Y. Nov. 17, 2017) (where petitioners did not challenge individual parole

determination Section 1252(a)(2)(B)(ii) posed no jurisdictional bar) (citing *Zadvydas*, 533 U.S.

678 (2001); *see also Jafarzdeh v. Duke*, 270 F. Supp. 3d 296, 305–07 (D.D.C. 2017) (Section

1252(a)(2)(B)(i) posed no jurisdictional bar where Plaintiff brought APA claims challenging

USCIS's *procedure* for adjudicating adjustment of status application).[5]

Defendants do not completely ignore the important distinction between discretionary

parole determinations and the non-discretionary procedures used to make those determinations.

They erroneously rely on *Giammarco v. Kerlikowske*, 665 Fed.App'x 24, 25-26 (2d Cir. 2016)

for the proposition that Defendants' "deliberative determinations" in reaching the ultimate

decision to grant or deny parole are not subject to judicial review. Dkt. 63 at 19.  In *Giammarco*

the petitioner sought habeas corpus *ad testificandum* to comply with a legislative subpoena, not

to challenge the respondent's non-discretionary conduct in denying him an immigration benefit.

665 Fed.App'x at 25. The case simply does not insulate the non-discretionary procedures utilized

to arrive at a discretionary decision from review. Similarly, *Gebhardt v. Nielsen* does not stand

for the proposition that the methods by which the Secretary adopts standards for reaching a

---

[5] Defendants attempt to distinguish *Abdi* by arguing that the Government's position in this case
is that the 2009 Morton Memorandum is being followed while in *Abdi* they argued that the same
memo was not binding. Dkt. 63 at 21. Defendants have not identified a meaningful distinction
between Plaintiffs' and the *Abdi* petitioners for the purposes of jurisdiction. Like Plaintiffs, the
*Abdi* petitioners challenged DHS's non-discretionary procedures for administering parole. *See
Abdi*, 2017 WL 5599521, at *5. The fact that the Government raises different arguments in
defense of their conduct does not deprive this Court of jurisdiction.

substantive decision are entirely unreviewable, as Defendants suggest. Dkt. 63 at 20. The Ninth

Circuit in *Gebhardt* actually found that colorable constitutional claims are reviewable despite the

jurisdictional bar of Section 1252(a)(2)(B)(ii). *Gebhardt,* 879 F.3d 980, 987–88 (9th Cir. 2018)

(noting that the Supreme Court cautions against the "extraordinary step" or barring review of

constitutional claims) (citing *Califano v. Sanders*, 430 U.S. 99, 109 (1977)). Plaintiffs do not

merely challenge the discretionary decision to place a high bar to parole, Plaintiffs challenge the

unconstitutional consideration of deterrence as a heavily weighted factor for denying parole.

Defendants do not have discretion to violate the constitution. *See Doe v. Casey,* 796

F.2d 1508. 1517–18 n. 33 (D.C. Cir. 1986). Plaintiffs' claims are not barred by Section

1252(a)(2)(B)(ii).[6]

### c. Plaintiffs have standing.

Rather than attempt to refute the evidence put forward by Plaintiffs in support of their

application for a preliminary injunction, Defendants have submitted one conclusory declaration

from a Deputy Field Office Director in San Antonio, Texas, and argue based on statements made

therein that Plaintiffs' lack standing. Dkt. 63 at 16-17. Plaintiffs have provided ample evidence

to establish the existence of Defendant's unlawful policy as well as the injury they have suffered

as a result of this policy. *See* Sec. I *supra*; Dkt. 54-1 at 14-18. Plaintiffs have standing for both

their constitutional and APA claims.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

/S/ Jennifer K. Harbury
Jennifer K. Harbury

---

[6] Defendants also cite to *Loa-Herrera v. Trominski*, 231 F.3d 984 (5th Cir. 2000) as supporting
their contention that the procedures as well as the substantive decision to grant parole are barred
by Section 1252(a)(2)(B)(ii), but that case dealt with an entirely different jurisdiction-stripping
provision of the INA, 8 U.S.C. § 1226(e), and is moreover not binding in the D.C. Circuit.

Attorney in Charge
D.D.C. Bar No. TX0022
Texas Bar No. 08946500
**TEXAS RIO GRANDE LEGAL AID, INC.**
301 S. Texas Ave.
Mercedes, Texas 78750
Telephone: (956) 447-4800
Email: JHarbury@trla.org

Catherine Norris
Staff Attorney
N.Y. Bar No. 4914818
**TEXAS RIO GRANDE LEGAL AID, INC.**
1111 N. Main Ave.
San Antonio, TX 78212
Telephone: (210) 212-3715
Email: CNorris@trla.org
*Pro hac vice pending*

Peter McGraw
Texas Bar No. 24081036
**TEXAS RIOGRANDE LEGAL AID, INC.**
1206 East Van Buren St.
Brownsville, Texas 78520
Phone: (956) 982-5543
Fax: (956) 541-1410
Email: pmcgraw@trla.org
*Pro hac vice pending*

## CERTIFICATE OF SERVICE

I hereby certify that on, March 1, 2018, I electronically filed the foregoing Plaintiffs'

Reply with the Clerk of Court by using the CM/ECF system, which will provide electronic notice

and an electronic link to this document to all attorneys of record.

DATED: March 1, 2018.

By:    /S/ Jennifer Harbury
       Jennifer Harbury
       TEXAS RIO GRANDE LEGAL AID, INC.