# Exhibit 6

# Declaration of Dr. Marsha Griffin

**The University of Texas**
**Rio Grande Valley**
School of Medicine

**January 12, 2018**

To Whom It May Concern:

Re: Celinda Aracely Rodriguez Lemus

DOB: 12/04/1986

    A. No. 212904201

I am a Pediatrician practicing in Brownsville, Texas, and a Professor of Pediatrics in the Department of Pediatrics at the University of Texas Rio Grande Valley School of Medicine. I am also Co-Chair of the American Academy of Pediatrics Immigrant Health Special Interest Group, a group which advocates for immigrant children and families. I was asked by Jennifer Harbury to review Ms. Rodriguez Lemus's medical records. The following is my medical opinion after reviewing her medical history, chart and affidavit.

**Her most recent diagnosis includes cellulitis, nonunion fracture and chronic osteomyelitis. Now with recent onset fever and chills.**

**HPI:** Celinda Aracely Rodriguez Lemus is 31year old female born in Guatemala, who fled her country following domestic violence, sexual abuse and gang threats. She left with her 8yo daughter, Almari, in August of 2016. On her way north, she and her daughter were involved in a MVA rollover with ejection from the vehicle. Her daughter was killed in the accident. Ms. Rodriguez Lemus injuries included a broken pelvis and L femur, fracture of her arm and multiple lacerations. She was treated in a hospital in Reynosa, Mexico, with surgery, which included open reduction and internal fixation of left hip and femur and subsequent placement of intermedullary rod and screws to Left femur. She was hospitalized for approximately one month; was discharged in good condition with walker and stayed in an immigrant shelter in Reynosa. She developed an abscess at the incision site, while staying at the shelter, and per patient, the abscess was treated and resolved.

In December of 2016, she crossed the international bridge between Reynosa and McAllen, Texas, with the assistance of a walker, and asked for asylum and expressed fear for her life, if returned to Guatemala. She was denied entry on that date and turned away. While returning to the immigrant shelter that same day, she was kidnapped by a drug cartel gang. Her family was eventually able to pay the ransom and she was returned to the shelter. Once again in February of 2017, she sought asylum at the international bridge, this time accompanied by human rights and immigration attorneys. She was allowed to enter, but placed in adult detention in Port Isabel, Texas, where she has been ever since.

For the first five months approximately of her detention, she remained in the Infirmary, because the ICE agents would not allow a walker or cane in the main dormitory. She received outpatient physical therapy for approximately six weeks during that time, advanced well, able to ambulate well without the use of walker or cane, except on rare occasions. Venous Doppler of Left Lower Extremity negative for possible blood clot causing pain, 4/6/2017. (my interpretation, the notes simply read negative)

She was allowed to be housed in the dormitory along with approximately 75 other women, and did well. In September 2017, she injured her L leg while doing Zumba (per medical note) and then again while cleaning,

**Department of Pediatrics**

HCEBL 2.136
2102 Treasure Hills Blvd.
Harlingen, Texas 78550-9998
(956) 296-1469

utrgv.edu

requiring a brief stay in the Infirmary for pain medication and the use of cane or walker. In late September, she noted erythema and tenderness to the surgical incision site, reported it to the medical clinic and was treated for superficial skin infection. She failed oral Keflex, Bactrim, Augmentin, Ciprofloxacin, Moxifloxacin and IM Ceftriaxone with a progressively worsening abscess/cellulitis. She had Incision & Drainage of abscess/cellulitis at the Infirmary with packing and was told she needed to change the dressing twice a day. However, dressing changes were only done once a day in the Infirmary/Clinic and not on the weekends. She received no supplies except gauze, nor medication or gloves to accomplish this in her dormitory. She could only change the sheets once a week and had no disposable chucks (disposable bed pads) to place on her bedding. She resorted to washing the infected site with soap and water and using Kotex as bandages.

In December, she was taken to a wound clinic where she received aggressive debridement of the site, had imaging and was diagnosed her with cellulitis, (previously +Klebsiella and Enterococcus faecalis, new culture Enterococcus faecalis and Staph Aureus; nonunion fracture with chronic osteomyelitis requiring major surgery to remove rod and pin. She was referred to Orthopedist with surgery scheduled possibly first week of February.

Her immigration/human rights attorney was able to visit her in the Infirmary on January 12th at 6:30 and reported that she had fever and chills the previous day. Per patient, she was receiving injections for pain and medication, but we did not have the latest medical record stating medications.

**PMH:**

CIN Grade III, s/p LEEP: Cervical Cancer in Situ, Grade III status post Loop Electrosurgical Procedure
Hyperprolactinemia, MRI negative for pituitary tumor, on Bromocriptine
Hypothyroidism, on Levothyroxine 75mcg once a day
Depression on Bupropion 300mg tab every morning.

**A/PLAN:** Given her steadily worsening condition over the last 5 months and possible new onset fever and chills, I advised attorneys to attempt to get Ms. Rodriguez Lemus released immediately from detention and to transport her to Oakland, California where she has family. Advised to take to hospital emergency room immediately upon arrival for full evaluation and standard of care.

**January 23, 2018**

A more medically written version of the above note was written on 1/12/2018 and given to Jennifer Harbury to carry with her to California to give to the ER physicians and staff upon her arrival at the hospital in Oakland to facilitate better medical care.

The following is my addendum today (01/23/2018) to this note with my opinion as a primary care physician. I am board certified in pediatrics, which is considered a primary care specialty, and have been attending children from birth to 21 years of age for almost twelve years. I am also a Clinical Professor of Pediatrics.

In my opinion, Ms. Rodriguez Lemus received substandard medical care during her incarceration at the Port Isabel Detention Center. Despite the fact that for over two months, (since early October, 2017) she had an open draining wound on her Left Lower Extremity near the incision site from her previous surgery in Reynosa, Mexico, which failed all oral antibiotics, there is nothing in her medical chart that indicated that the medical team ever suspected or included osteomyelitis in a differential diagnosis regarding her case.

In every note, it documents clearly that she had a history of surgery of rods and screws placed in her L hip and femur following a motor vehicle accident in Mexico. Despite the fact that she has a very large incisional scar near the site of the non-healing wound on her Left Hip, that they were packing, it was not until November 29, 2017, that a progress note written by Josue Sanchez, Family Nurse Practitioner, indicated that he spoke with Dr.

Cantu, the presumed medical director, regarding obtaining imaging of her leg and hip. She was sent to obtain the x-ray on 11/30/2017. The note of 12/6/2017 written by Josue Sanchez, FNP, states that the radiologist diagnosed chronic osteomyelitis. She was then referred to an Orthopedic Surgeon for consultation. Two months had passed since she first presented with cellulitis at the site. There are no notes from the radiologist in her medical chart. Nor are there full notes from the Wound Clinic, where she was finally sent in mid-December.

In my opinion, any primary care physician with a patient with non-responsive worsening cellulitis near a joint site, would have been concerned for a possible osteomyelitis early on in her care and sent her for imaging that would include x-rays and other imaging to evaluate the extent of infection and would have hospitalized the patient for prolonged IV antibiotics with an immediate Orthopedic consultation. This was not done. Any primary care physician would not have given her two months of changing oral antibiotics, which failed in every case, and not considered consulting an Infectious Disease specialist. The care she received in the Port Isabel Detention Center does not meet standard of care for the management of cellulitis near a joint site, nor suspected osteomyelitis.

The serious complications of untreated osteomyelitis are taught in every medical school. Ignoring this possible diagnosis led to chronic osteomyelitis and the destruction of her bone. It could have resulted in the loss of her leg. If the infection had spread to her blood system and brain, she could have lost her life or suffered a devastating disability.

I can only speak from a primary care physician's perspective. I defer to my Orthopedic colleague for his opinion on the management of this now seriously complicated case.

*I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct.*

Marsha R. Griffin, MD FAAP                                               DATE: 01/23/2018