**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| HATIM B., *et al.* |
| Plaintiffs, |
| v. |
| KIRSTJEN NIELSEN, Secretary of Homeland Security, *et al.*, |
| Defendants. |

Civil Action No. 1:17-cv-1976-RC

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

LEGAL FRAMEWORK ........................................................................................................ 4

FACTUAL BACKGROUND ................................................................................................. 7

ARGUMENT ......................................................................................................................... 8

   I.    Plaintiffs Lack Standing ........................................................................................... 8

        A.    Plaintiffs' Claims Are Moot.......................................................................... 8
        B.    Standing Requires More than Allegations of Harm............................................ 9
        C.    Plaintiffs' Alleged Harms are Not an Invasion of a
            Legally Protected Interest ............................................................................. 10

            1.    *SUWA* Requires that an Agency Must Give a Clear Indication
                 of Commitment to Create an APA Cause of Action ................................... 11
            2.    Applying the *Accardi* Doctrine Requires Consideration of
                 Agency Intentions........................................................................................ 12
            3.    The *Accardi* Doctrine Must Yield to Limits on Jurisdiction...................... 14
            4.    Constitutional Duties Owed to Plaintiffs are Limited to what
                 is Required by Statute.................................................................................. 15
            5.    Plaintiffs' Single Source for Defining an Injury-in-Fact Is the
                 Morton Memo................................................................................................ 18

        D.    Plaintiffs' Alleged Injuries are Not Redressable By This
            Litigation........................................................................................................ 19

   II.    The Third Amended Complaint Fails to State a
       Claim Upon Which Relief Can Be Granted .................................................................. 19

        A.    The Decision Has Been Committed to the Discretion of
            the Agency ..................................................................................................... 19
        B.    No Process is Due Beyond what Congress Provided........................................ 20
        C.    As an Alien Outside the United States, Plaintiff Mikailu
            J. is Only Entitled to Parole as a Means for Release Into
            the United States ............................................................................................ 20
        D.    The Complaint Contains Only Conclusory Factual
            Allegations that Fail to Support a Reasonable Inference
            that the Conduct Occurred ............................................................................. 22
        E.    Plaintiffs' APA Claim Fails Allege a Required Agency
            Action............................................................................................................. 24

   III.    Venue is Improper Because Plaintiffs' Claims
       Sound in Habeas.......................................................................................................... 25

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

Cases

*Ahuja v. Detica Inc.*,
  742 F. Supp. 2d 96 (D.D.C. 2010) ......................................................................... 22

*Alabama Power Co. v. Ickes*,
  302 U.S. 464 (1938) ............................................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 22

*Boumediene v. Bush*,
  553 U.S. 723 (2008) ............................................................................................... 18

*Boutilier v. INS*,
  387 U.S. 118 (1967) ............................................................................................... 5

*Chiron Corp. & PerSeptive Biosystems v. Nat'l Transp. Safety Bd.*,
  198 F.3d 935 (D.C. Cir. 1999) ................................................................. 11, 12, 13

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ............................................................................................... 8

*Claybrook v. Slater*,
  111 F.3d 904 (D.C. Cir. 1997) ............................................................................. 10

*Commonwealth of Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ............................................................................................... 9

*Doe v. Hampton*,
  566 F.2d 265 (D.C. Cir. 1977) ........................................................................ 11, 12

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ............................................................................. 22

*Galvan v. Press*,
  347 U.S. 522 (1954) ............................................................................................... 16

*Gutierrez–Chavez v. INS*,
  298 F.3d 824 (9th Cir.2002) ................................................................................. 25

*Hall v. Beals*,
  396 U.S. 45 (1969) ............................................................................................. 2, 8

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ............................................................................... 25

*Ibrahim v. Dep't of Homeland Sec.*,
  669 F.3d 983 (9th Cir. 2012) ............................................................................... 17

*INS v. Yang*,
  519 U.S. 26 (1996) ........................................................................................... 13, 14

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) .................................................................................... 3, 5, 15

*Kaplan v. Tod*,
  267 U.S. 228 (1925) ............................................................................................... 20

*Kentucky Dep't of Corr. v. Thompson*,
  490 U.S. 454 (1989) ............................................................................................... 17

*Kiyemba v. Obama,*
  555 F.3d 1022 (D.C. Cir. 2009) ............................................................... 21

*Kleindienst v. Mandel,*
  408 U.S. 753 (1972) .......................................................................... 5, 16

*Landon* v. *Plasencia,*
  459 U.S. 21 (1982) ........................................................................ 16, 21

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................. 2, 3, 10, 24

*Morton v. Ruiz,*
  415 U.S. 199 (1974) ........................................................................ 11, 12

*\*Norton v. Southern Utah Wilderness Alliance (SUWA),*
  542 U.S. 55 (2004) ........................................................... 10, 12, 14, 24

*Piccone v. United States,*
  407 F.2d 866 (Ct. Cl. 1969) ...................................................................... 13

*R.I.L-R. v. Johnson,*
  80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................... 23

*Rasul v. Myers,*
  563 F.3d 527 (D.C. Cir. 2009) ............................................................... 17

*Ry. Labor Executives Ass'n v. Dole,*
  760 F.2d 1021 (9th Cir. 1985) ............................................................... 19

*Sec'y of Labor v. Twentymile Coal Co.,*
  456 F.3d 151 (D.C. Cir. 2006) ............................................................... 20

*Seeger v. United States Department of Defense,*
  306 F. Supp. 3d 265 (2018) ..................................................................... 10

*\*Shaughnessy v. United States ex rel. Mezei,*
  345 U.S. 206 (1953) .......................................................................... 3, 16

*Sierra Club v. Jackson,*
  648 F.3d 848 (D.C. Cir. 2011) ............................................................... 19

*Singh v. Holder,*
  638 F.3d 1196 (9th Cir. 2011) ............................................................... 25

*\*Spencer Enterprises, Inc. v. U.S.,*
  345 F.3d 683 (2003) ...................................................................... 14, 15

*Spencer v. Kemna,*
  523 U.S. 1 (1998) ................................................................................. 8

*Spirit of the Sage Council v. Norton,*
  411 F.3d 225 (D.C. Cir. 2005) ................................................................. 8

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ...................................................................... 4, 9, 19

*Summers v. Earth Island Institute,*
  555 U.S. 488 (2009) .............................................................................. 4

*United States ex rel. Accardi v. Shaughnessy,*
  347 U.S. 260 (1954) .............................................................................. 11

*\*United States v. Verdugo-Urquidez,*
  494 U.S. 259 (1990) ........................................................................ 16, 17

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,*
  454 U.S. 464 (1982) ...................................................................... 8, 19

*W. Org. of Res. Councils v. Zinke*,
   892 F.3d 1234 (D.C. Cir. 2018) .......................................................................... 10
*Zadvydas* v. *Davis*,
   533 U.S. 678 (2001) .............................................................................. 16, 20

## Constitution

U.S. CONST., art. III ........................................................................................... 4
U.S. CONST., Amdt. 1 ........................................................................................ 17

## Statutes

5 U.S.C. § 701(a) .............................................................................................. 19
5 U.S.C. § 702 ............................................................................................. 7, 14
5 U.S.C. § 706 .......................................................................................... 7, 10, 11
8 U.S.C. § 1182(d) .......................................................................... 3, 5, 13, 15, 17
8 U.S.C. § 1225(b) ..................................................................................... 1, 3, 7
8 U.S.C. § 1226(e) ............................................................................................ 23
28 U.S.C. § 2241 .............................................................................................. 23

## Rules

Federal Rule of Civil Procedure 8 ...................................................................... 20
Federal Rule of Civil Procedure 12 ........................................................ 1, 4, 19, 20

## Regulations

8 C.F.R. § 212.5(b) ............................................................................................ 6
8 C.F.R. § 1003.19(h) ....................................................................................... 18

## INTRODUCTION

Plaintiffs filed the Third Amended Complaint for Injunctive and Declaratory Relief on March 22, 2018 (ECF No. 73, "Third Amended Complaint" or "TAC"), alleging Constitutional violations and claims pursuant to the Administrative Procedure Act ("APA"). Count One alleges violations of the Fifth Amendment, claiming that liberty interests, property rights, and procedural protections were violated when Defendants denied Plaintiffs' requests for discretionary parole under 8 U.S.C. § 1225(b)(1). *See* TAC at ¶ 111-15. Count Two alleges violations of the First and Fifth Amendments, claiming a right to petition the United States government for political asylum and withholding of removal, and a right to be free of penalties, deterrence, or chilling effects in connection with seeking asylum at a port-of-entry. *See* TAC at ¶ 121-23. Count Three alleges violations of the APA, claiming that Defendants' discretionary decision to not parole Plaintiffs into the United States violates an internal guidance memorandum that requires such determinations to be individualized. *See* TAC at ¶ 137.

Defendants respectfully request that the Court dismiss the Third Amended Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(3), and (b)(6).

Dismissal pursuant to Rule 12(b)(1) is appropriate because Plaintiffs lack Article III standing for three reasons. First, the unique posture of this case renders their claims moot. The only possible relief that could be provided based upon this complaint – a redetermination of parole for Plaintiff Mikailu J. – has already been provided to Plaintiffs. *See* Joint Status Report (ECF No. 94). Because Plaintiffs have no right to a review of the substantive basis for the denial of parole, there is no question raised by this complaint that remains for this court to resolve. Moreover any future harm is speculative. "The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48 (1969). Similarly, because Sadat I.

1

has been released on parole and Aracely R. is a fugitive, any claims in the Third Amended Complaint related to them are now moot. *See* Joint Status Report (ECF No. 94).

Second, Plaintiffs lack standing because they cannot satisfy injury-in-fact requirement of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). While they allege many putative harms, they do not allege legally cognizable injuries. This tort law concept of *damnum absque injuria* – loss without injury – is the essence of Article III standing.

Because they cannot point to a legally protected interest to establish injury-in-fact, Plaintiffs fail to raise a case or controversy. Plaintiffs rely heavily on an ICE internal policy memorandum – the Morton Memo[1] – to allege a legal standard by which "all Plaintiffs should have been promptly released on parole as a matter of public interest." TAC at ¶ 41. While this document limits and guides employees who are making the discretionary parole determinations, the Morton Memo cannot be the basis for standing because it does not define a legal injury; that is, it does not create a cause of action. The Morton Memo explicitly states that it does not create any rights or any cause of action, yet the Third Amended Complaint rests entirely on the notion that this internal policy statement creates rights for Plaintiffs. Because standing must be established in a source of law, and the Third Amended Complaint does not properly allege a violation of any law, the complaint should be dismissed.

Additionally, the fact that the Third Amended Complaint posits the existence of an unwritten and unofficial "deterrence" policy does not cure the standing problem. For, if the Morton Memo does not create an enforceable right for Plaintiffs, alleging a counter-policy that ignores the Morton Memo – even if that allegation is credited as true for purposes of this

---

[1] ICE Policy No. 11002.1: *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture* (Dec. 8, 2009) ("Morton Memo").

motion – does not bring before this Court a case or controversy to resolve.

It is revealing that the Third Amended Complaint does not allege a cause of action permissible under the INA. This is because Congress has specified by statute that arriving aliens lacking valid documents, such as Plaintiffs, who request asylum *shall* be detained while the asylum claim is adjudicated. 8 U.S.C. § 1225(b)(1)(B)(ii). The exception to this requirement is parole pursuant to 8 U.S.C. § 1182(d)(5)(A). The Supreme Court recognized this reading of the statute in *Jennings v. Rodriguez*, observing that, read most naturally, 8 U.S.C. § 1225(b)(1) "mandate[s] detention of applicants for admission until certain proceedings have concluded." 138 S. Ct. 830, 842 (2018). Because this decision whether to grant parole is a discretionary decision given to the agency, there can be no cause of action under the APA. Therefore, there is no statutory basis for standing.

Nor is Article III standing satisfied by the Constitutional violations alleged in the Third Amended Complaint. The First Amendment does not provide a basis for arriving aliens standing at the border to initiate litigation against the United States. As for the Fifth Amendment, to the extent it requires process for arriving aliens, the Supreme Court has recognized that those requirements are defined by the laws enacted by Congress. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). No more, no less.

Third, under *Lujan*, Article III standing also requires a showing of redressability, which Plaintiffs cannot demonstrate. 504 U.S. at 560-61. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Therefore, the Third Amended Complaint, at best, alleges a procedural right found in the Morton Memo without any judicially cognizable legal injury. "But deprivation of a procedural

right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*— is insufficient to create Article III standing." *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009).

Dismissal pursuant to Rule 12(b)(6) is appropriate because the Third Amended Complaint also fails to state a claim upon which relief can be granted. The narrative presented does not support the reasonable inference that the case-by-case decisions denying parole to Plaintiffs were actually part of a centrally planned unofficial policy. Yet a reasonable inference is necessary to meet the pleading requirements of the Federal Rules of Civil Procedure, specifically Rules 8 and 12(b)(6). As such, the Third Amended Complaint does not contain sufficient non-conclusory factual allegations to support a reasonable inference that the conduct occurred.

Finally, dismissal pursuant to Rule 12(b)(3) is appropriate. Defendants continue to maintain that venue is improper in this District because the gravamen of the Third Amended Complaint is a claim that sounds in habeas, yet Plaintiffs did not file in the district where the custodian is located.

## **LEGAL FRAMEWORK**

### I.      **United States Constitution**

Article III, Section 2 of the United States Constitution provides, in relevant part:

> The judicial power shall extend to all cases, in law and equity, arising under
> this Constitution, the laws of the United States…to controversies to which the
> United States shall be a party….

U.S. CONST. art. III, § 2.

### II.      **Immigration and Nationality Act**

Without exception, the Supreme Court "has sustained Congress's 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which

Congress has forbidden.'" *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (quoting *Boutilier v.*

*INS*, 387 U.S. 118, 123 (1967)). Plaintiff Mikailu J.'s circumstances are generally governed by

INA provisions that specify certain required procedures:

> (1)  Section 1225(b)(1)(A)(i) provides that when an arriving alien lacks valid
> documents or is inadmissible due to fraud, the immigration officer "*shall* order
> the alien removed from the United States without further hearing or review." 8
> U.S.C. § 1225(b)(1)(A)(i) (emphasis added).

> (2)  Section 1225(b)(1)(A)(ii) provides that when the arriving alien indicates an
> intention to apply for asylum or expresses a fear of persecution, the officer
> "*shall* refer the alien for an interview by an asylum officer…." 8 U.S.C.
> § 1225(b)(1)(A)(ii) (emphasis added).

> (3)  Section 1225(b)(1)(B)(ii) provides that if the asylum officer concludes
> there is a credible fear of persecution, the arriving alien "*shall* be detained for
> further consideration of the application for asylum." 8 U.S.C. §
> 1225(b)(1)(B)(ii) (emphasis added).

The Supreme Court has recently re-affirmed this reading of the statute. *Jennings,* 138 S. Ct. at

842.

In addition to specifying what *shall* occur, Congress gave discretion to the agency as to

outcomes that *may* occur. Plaintiff Mikailu J. requested parole, and Congress provided for this,

stating that the Department of Homeland Security Secretary *may*:

> in his discretion parole into the United States temporarily under such
> conditions as he may prescribe only on a case-by-case basis for urgent
> humanitarian reasons or significant public benefit any alien applying for
> admission to the United States….

8 U.S.C. § 1182(d)(5)(A).

For an alien such as Plaintiff Mikailu J., detained under 8 U.S.C. § 1225(b)(1)(B)(ii), who

has established a credible fear, the regulations provide that DHS may grant parole if the alien is

"neither a security risk nor a risk of absconding" and:

> (1) has a serious medical condition;
> (2) is pregnant;
> (3) falls within certain categories of juveniles;

(4) will be a witness; or

(5) if continued detention is otherwise "not in the public interest."

8 C.F.R. § 212.5(b).

Since 2010, DHS has provided internal guidance to officers making parole

determinations that:

> Each alien's eligibility for parole should be considered and analyzed on its own merits and based on the facts of the individual alien's case.

ICE Policy No. 11002.1: *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture* (Dec. 8, 2009) ("Morton Memo"), at ¶ 6.2.

The Morton Memo further provides:

> when an arriving alien found to have a credible fear *establishes to the satisfaction of [ICE]* his or her identity and that he or she presents neither a flight risk nor danger to the community, [ICE] *should*, absent additional factors … parole the alien on the basis that his or her continued detention is not in the public interest.

*Id.* (emphasis added).

Finally, the Morton Memo states:

> **NO PRIVATE RIGHTS CREATED.** This directive is an internal policy statement of ICE. It is not intended to, shall not be construed to, may not be relied upon to, and does not create, any rights, privileges, or benefits, substantive or procedural, enforceable by any party against the United States, its departments, agencies, or other entities, its officers or employees, or any other person.

*Id*. at ¶ 10.

## III.    Administrative Procedure Act

Count Three of the Third Amended Complaint seeks injunctive relief pursuant to the

APA section 702. *See* TAC at ¶ 140. Section 702 provides in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. … Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any

action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

Section 706 provides in relevant part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1)  compel agency action unlawfully withheld or unreasonably delayed; and

(2)  hold unlawful and set aside agency action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

5 U.S.C. § 706.

## FACTUAL BACKGROUND

Plaintiff Mikailu J. is an arriving alien who has requested asylum. *See* TAC at ¶ 80C. He is detained in the Southern District of Texas. *Id.* at ¶ 80D. None of the other Plaintiffs are detained pursuant to 8 U.S.C. § 1225(b). *See* Joint Status Report (ECF No. 94).

On July 10, 2018, in compliance with this Court's Order of July 3, 2018, Defendants re-evaluated whether Plaintiff Mikailu J. met the conditions for parole. *Id.* Defendants informed Plaintiff and counsel that his request for parole was denied because he "failed to sufficiently establish [his] identity and [he] failed to demonstrate that [he is] not a flight risk." *Id.*

Plaintiff Sadat I. has been granted parole. *Id.*

Plaintiff Aracely R. was released on parole, but once her asylum claim was denied, she stopped reporting to ICE. *Id.*

## ARGUMENT

### I.   Plaintiffs Lack Standing

#### A.  Plaintiffs' Claims Are Moot

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citations omitted). There are three Plaintiffs remaining in this action. All three received discretionary parole redeterminations. Of the three redeterminations, one resulted in a denial (Mikailu J.) and two resulted in the grant of parole. *See* Joint Status Report (ECF No. 94).

Because Plaintiffs do not allege to be suffering from any *live* violation of the law, and because they have no right to a review of the substantive basis for the denial of parole, there is no longer a case or controversy for this court to resolve. Any consequences from parole redeterminations in the future, based on future requests by Plaintiff Mikailu J., are necessarily speculative.[2] "The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Hall*, 396 U.S. at 48.

As for Plaintiff Sadat I., the agency granted his parole request, and he has no live claim that this Court can resolve.

---

[2] The capable-of-repetition-yet-evading-review exception to the mootness doctrine is inapplicable here. This exception only applies in "exceptional situations," where both "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations in original) (citations and internal quotation marks omitted). To be capable of repetition, "there must be a reasonable expectation or demonstrated probability that the same controversy will recur involving the same complaining party." *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005). Plaintiffs cannot demonstrate such, and any suggestion otherwise is too speculative to invoke this exception. The transitory-duration-exception is not applicable here because the issue were litigated.

Any claim by Plaintiff Aracely R. is mooted by the fact that she is statutorily ineligible

for parole.

### B.  Standing Requires More than Allegations of Harm

"The term 'standing' subsumes a blend of constitutional requirements and prudential

considerations...." *Valley Forge Christian College v. Americans United for Separation of Church*

*and State, Inc.*, 454 U.S. 464, 471 (1982). According to the Supreme Court:

> We have no power per se to review and annul acts of Congress on the ground
> that they are unconstitutional. That question may be considered only when the
> justification for some *direct injury* suffered or threatened, presenting a
> justiciable issue, is made to rest upon such an act.

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (emphasis added). The

Court elaborated on this principle in a later case:

> The term 'direct injury' is there used in its legal sense, as meaning a wrong
> which directly results in the violation of a legal right. 'An injury, legally
> speaking, consists of a wrong done to a person, or, in other words, a violation
> of his right. It is an ancient maxim, that a damage to one, without an injury in
> this sense (*damnum absque injuria*), does not lay the foundation of an action;
> because, *if the act complained of does not violate any of his legal rights, it is
> obvious, that he has no cause to complain.*

*Alabama Power Co. v. Ickes*, 302 U.S. 464, 479 (1938) (emphasis added).

Courts now uniformly recognize that the constitutional minimum for standing contains

three elements:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical ….

> (2) there must be a causal connection between the injury and the conduct
> complained of—the injury has to be fairly traceable to the challenged
> action of the defendant, and not the result of the independent action of
> some third party not before the court.

> (3) it must be likely, as opposed to merely speculative, that the injury will be
> redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations, quotations, and bracketing omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence," specifically to include these requirements for standing. *Steel Co.*, 523 U.S. at 104. The Third Amended Complaint fails to satisfy the first and third requirements.

### C.  Plaintiffs' Alleged Harms are Not an Invasion of a Legally Protected Interest

Where a "plaintiff's claim has no foundation in law, he has no legally protected interest and thus no standing to sue." *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997). "A plaintiff must also establish a "legal wrong" in order to bring a claim under the APA for a non-statutory violation." *Seeger v. United States Department of Defense*, 306 F. Supp. 3d 265, 279 (2018). "[T]he only action a court may compel an agency to take under § 706(1) is discrete action that the agency **has a duty to perform**." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) (emphasis added) (citing *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55 (2004)). The Court in *SUWA* noted that regardless of which provision of section 706 is used to judge an agency action, the action must be evaluated with respect to what is demanded by law. *SUWA*, 542 U.S. at 64-65; 5 U.S.C. §§ 706(1) ("unlawfully withheld") and 706(2) ("not in accordance with law"). Like the limitation to agency action "not in accordance with the law" in section 706(2), "[t]he limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Id.* at 65.

Therefore, the question under *SUWA* became how to identify agency commitments that could establish such a duty.

1. *SUWA* **Requires that an Agency Must Give a Clear Indication of Commitment to Create an APA Cause of Action**

In *SUWA*, the Supreme Court considered whether land use plans promulgated by the Bureau of Land Management created such a legal duty. *SUWA*, 542 U.S. at 69. These plans included statements that an area would be "monitored and closed if warranted." *Id.* The Supreme Court held that had the case been about a statutory directive requiring the Bureau to conform to a land use plan, then "such actions [could] be set aside as contrary to law pursuant to 5 U.S.C. § 706(2)." *SUWA*, 542 U.S. at 69. But, in *SUWA*, the question was whether a statement in the land use plan that the agency would take or not take a particular action was a commitment that could be the basis for a cause of action under § 706(1). *Id.* The Court concluded that without a clear indication of such commitment in the terms of the plan, it could not. *Id.*

In determining whether agency pronouncements can be the basis for standing, the intent of the agency itself is the "general test." *Chiron Corp. & PerSeptive Biosystems v. Nat'l Transp. Safety Bd.*, 198 F.3d 935, 944 (D.C. Cir. 1999). Moreover, that intent is "ascertained by an examination of the provision's language, its context, and any available extrinsic evidence." *Doe v. Hampton*, 566 F.2d 265, 281 (D.C. Cir. 1977).

In the present case, the agency issued the Morton Memo to "ensure transparent, consistent, and considered ICE parole determinations" and specified that it is not intended to "create any rights, privileges, or benefits…enforceable by any party against the United States…." Morton Memo at ¶¶ 1, 10. Despite this stated intent, some courts have concluded that the *Accardi* doctrine, originating with the Supreme Court decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), provides the legal duty for an APA action. However, the *Accardi* doctrine does not aid Plaintiffs in overcoming the standing requirements.

### 2.   Applying the *Accardi* Doctrine Requires Consideration of Agency Intentions

The Supreme Court decision in *United States ex rel. Accardi v. Shaughnessy*, does not conflict with nor eliminate the standing requirements discussed in *SUWA*. In *Accardi*, the Supreme Court recognized that regulations "with the force and effect of law supplement" the statute and may bind agency officers in the exercise of discretion. *Accardi*, 347 U.S. at 266-68 (footnotes omitted). The subsequent decision in *Morton v. Ruiz*, 415 U.S. 199 (1974), maintains the same emphasis – if agency rules are to govern how statutory rights are implemented and operate as an exercise of the agency's legislative power, then they must be promulgated such that they are valid. *Id*. at 231. The Court noted that "the BIA itself has recognized the necessity of formally publishing its substantive policies and has placed itself under the structure of the APA procedures." *Id*. at 233. The Court of Appeals for the District of Columbia Circuit emphasized this same distinction in *Doe v. Hampton.* 566 F.2d at 280 ("We must thus address the question whether the above-quoted provision in the Manual is a regulation or something less which does not give employees enforceable substantive rights."). The Court noted that while a great deal of content in the manual was not mandatory, some unpublished provisions might be if the Commission intended it to be so. *Id*. at 281. To determine the effect of a provision, the court determined the intent of the Commission as author, by an examining the provision's "language, its context, and any available extrinsic evidence." *Id*. at 281.

The same Court's decision in *Chiron Corp.* is instructive for the present case. 198 F.3d at 944. In *Chiron*, the plaintiff sued the National Transportation Safety Board ("NTSB") to obtain information which the agency had acquired during a crash investigation. *Id.* The Court noted that no such right can be found in the statute or regulations, or a "Guidance" document given out by the NTSB: "Nothing in the regulations speaks to the rights petitioners seek to enforce, and the

Guidance is not a source of law enforceable against NTSB. Petitioners point to a handful of regulations that they argue create a right to information, but they are grabbing at straws." *Id.* at 943. The Court reached this conclusion despite the fact that the Guidance document says that "[a]ll factual information and developments of the investigation that are made known to the [Investigator in Charge] will be passed to each party spokesman." *Id.* Despite these commitments, the Court concluded the Guidance did not establish a legal norm, noting that not every "piece of paper emanating from a Department or Independent Agency is a regulation." *Id.* (quoting *Piccone v. United States*, 407 F.2d 866, 877 (Ct. Cl. 1969) (Nichols, J., concurring).

The Morton Memo operates similarly to the Guidance provided by the NTSB. Much like the information given to interested parties connected to a crash investigation, the Morton Memo communicates to interested parties information about how the agency will proceed, guiding expectations. The policy directive states as its purpose:

> The purpose of this ICE policy directive is to ensure transparent, consistent, and considered ICE parole determinations for arriving aliens seeking asylum in the United States.

Morton Memo at ¶ 1.

In creating the policy directive, ICE was implementing a statutory mandate for decisions to make parole determinations pursuant to 8 U.S.C. § 1182(d)(5)(A), including the related mandate that these decisions are not reviewable by any court. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). In the same way that the NTSB would be impaired in performing crash investigations if interested parties could bring suit to enforce pronouncements the agency made at the outset, ignoring the intention of ICE regarding the creation of legal duties via the Morton Memo hampers the agency in pursuing the statutory mandates relating to parole.

### 3.   The *Accardi* Doctrine Must Yield to Limits on Jurisdiction

The appropriate overlap of the *Accardi* doctrine with the standing requirement described in *SUWA*, is suggested by a footnote in *INS v. Yang*, 519 U.S. 26 (1996). In *Yang*, the Supreme Court considered what effect a "settled policy" would have on the Attorney General's exercise of "unfettered discretion" afforded by a statute. *Id*. at 30-32. In the course of the opinion, the Court made the following statement, which summarizes the *Accardi* doctrine:

> Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious, [or] an abuse of discretion" within the meaning of the Administrative Procedure Act.

*Id*. at 32. At the outset of the opinion, the Court noted the following in a footnote: "Our jurisdiction over this matter is not in question. 5 U.S.C. § 702." *Yang*, 519 U.S. at 29 n.1. The court then quoted a jurisdiction-stripping provision from within the recently-enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRA") that applied to any "decision or action of the Attorney General the authority for which is specified…to be in the discretion of the Attorney General." *Id*. The Court stated that provision did not apply because it would not take effect until the following year. *Id*. The question raised by this footnote is whether *Accardi*-doctrine-based APA claims can co-exist with a jurisdiction-stripping clause.

The Court of Appeals for the Ninth Circuit considered this very question in *Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 690-91 (2003). The Court considered the effects of APA section 701(a)(2) (excluding from review agency action committed to agency discretion) intersecting with the jurisdiction-stripping provision found at 8 U.S.C. § 1252(a)(2)(B)(ii) (excluding certain decisions from review where the authority for such is placed in the discretion of the Attorney general). *Id*. Without specifically naming the *Accardi* doctrine, the Court

nonetheless concluded that the doctrine (emphasized in the quotation) was greatly curtailed by 8

U.S.C. § 1252(a)(2)(B)(ii):

> We find that the two provisions are not identical, however, because
> § 1252(a)(2)(B)(ii) withdraws jurisdiction wherever discretionary authority is
> "specified" by statute. **As noted above, under the APA, even a decision that
> is wholly discretionary by statute may be reviewed if regulations or
> agency practice provide standards by which an agency's conduct may be
> judged.** Under § 1252(a)(2)(B)(ii), such standards must be found in the
> statutes; if the statute specifies that the decision is wholly discretionary,
> regulations or agency practice will not make the decision reviewable.

*Spencer Enterprises, Inc.*, 345 F.3d at 691 (emphasis added).

Section 1252(a)(2)(B)(ii) of Title 8 limits the jurisdiction of courts to review agency

parole decisions pursuant to 8 U.S.C. § 1182(d)(5)(A). Section 1252(a)(2)(B)(ii) provides:

> **(B) Denials of discretionary relief**
> Notwithstanding any other provision of law (statutory or nonstatutory) … no
> court shall have jurisdiction to review—
>> (ii)   any other decision or action of the Attorney General or the
>> Secretary of Homeland Security the authority for which is specified
>> under this subchapter [sections 1151 to 1381] to be in the discretion of
>> the Attorney General or the Secretary of Homeland Security, other than
>> the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Applying the reasoning in *Spencer Enterprises*, this Court should conclude that the

Morton Memo cannot operate as a source of law to establish a duty under the APA. Absent a

duty, there is no judicially cognizable legal injury. As a result, Plaintiffs are without standing to

bring Count Three of the Third Amended Complaint.

### 4.   Constitutional Duties Owed to Plaintiffs are Limited to what is Required by Statute

If the Morton Memo does not establish a legal duty for the agency, Article III standing in

the Third Amended Complaint disappears altogether. The complaint does not allege a legal

injury defined by the INA. After all, the presumption under the statute is that arriving aliens who

lack valid documents and request asylum shall be detained while their asylum claim is adjudicated. 8 U.S.C. § 1225(b)(1)(B)(ii). Parole is an exception to this presumption, and the decision to grant parole is a discretionary decision given to the agency. 8 U.S.C. § 1182(d)(5)(A). *See also, Jennings*, 138 S. Ct. at 842. Moreover, as the next section describes, the constitutional duty which Defendants owe to Plaintiffs is simply to follow the rules laid out by Congress.

The Third Amended Complaint alleges violations of the First and Fifth Amendments. These amendments, however do not establish standards for the agency to follow with regard to arriving aliens beyond what Congress has provided by statute.

Under the Fifth Amendment, Plaintiffs, as arriving aliens, may claim only the process guaranteed to them by statute. "[A]n alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212 (internal quotation marks omitted).

The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon* v. *Plasencia*, 459 U.S. 21, 32 (1982). The Court's "general reaffirmations of this principle have been legion." *Mandel*, 408 U.S. at 765-766; *see Zadvydas* v. *Davis*, 533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."); *Mandel*, 408 U.S. at 767 ("[T]hat the formulation of these policies is entrusted exclusively to Congress has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government.") (quoting *Galvan* v. *Press*, 347 U.S. 522, 531 (1954)).

By definition, an alien seeking initial entry lacks any constitutionally cognizable interest in being released into the United States while doubts about his status are resolved. In the view of the law, that alien is outside the United States. *Cf. United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country.").

And Congress did not confer any protected liberty interest supporting an arriving alien's release. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) ("[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it."). To the contrary, Congress provided that an arriving alien found to have a credible fear "*shall* be detained for further consideration" of his asylum claim, 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), and may be released only through the Secretary of Homeland Security's discretionary parole authority under 8 U.S.C. 1182(d)(5).

Under the Fifth Amendment Plaintiffs are entitled only to what is guaranteed to them by statute. Neither section 1225, section 1182, nor any implementing or interpretive regulations provide Plaintiffs a custody hearing before a neutral decision-maker to determine if detention is necessary. Therefore, Plaintiffs cannot identify a legal right to or judicially cognizable interest that will establish standing.

Similarly, Plaintiffs cannot articulate a legal injury based on the prohibitions found in the First Amendment. The First Amendment provides that "Congress shall make no law … abridging … the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST., Amdt. 1. The language used suggests the rights described belong "to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

17

*Verdugo-Urquidez*, 494 U.S. at 265; *see also Rasul v. Myers*, 563 F.3d 527, 529 (D.C. Cir. 2009) (noting that the holding in *Boumediene v. Bush*, 553 U.S. 723 (2008), that the Suspension Clause extended to Guantanamo detainees, did not disturb existing law such as *Verdugo-Urquidez*, regarding what substantive law applies extraterritorially); *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 996–97 (9th Cir. 2012) (applying test from *Verdugo–Urquidez* to determine whether a noncitizen had established a significant voluntary connection with the United States such that she could invoke the First and Fifth Amendments).

### 5. Plaintiffs' Single Source for Defining an Injury-in-Fact Is the Morton Memo

Perhaps the simplest demonstration of the shortcomings of the Third Amended Complaint in terms of standing is the fact that Plaintiffs ask the Court to strike down agency regulations that prohibit "review of the Plaintiffs' parole requests by an Immigration Judge" because they are "unconstitutional." TAC Prayer for Relief at ¶ 3, 4; *see* 8 C.F.R. § 1003.19(h)(2)(i)(B) ("an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens: …Arriving aliens in removal proceedings….").

In light of *Mezei*, the analysis would be to ask whether those regulations are contradicted by a statute, namely 8 U.S.C. § 1225(b)(1)(B)(ii). Section 1225(b)(1) *requires* that Plaintiffs be detained, unless the agency, in its discretion, grants parole. Clearly these regulations are not in conflict with the INA.

The Third Amended Complaint describes no violation of 8 U.S.C. § 1225(b)(1)(B)(ii), nor any violation of a regulations that has the force and effect of law. Plaintiffs try to fill the gap in their complaint with the Morton Memo, but their exclusive and extensive reliance on this internal guidance memorandum as *the* source of law demonstrates that there is no actual case or

controversy presented by this complaint. Therefore, the Third Amended Complaint should be dismissed.

### D. Plaintiffs' Alleged Injuries are Not Redressable By This Litigation

The third requirement of Article III standing is that a plaintiff allege an injury-in-fact that is redressable by the court. *Valley Forge Christian College*, 454 U.S. at 472. "Redressability … requires the court to examine whether the court has the power to right or to prevent the claimed injury." *Ry. Labor Executives Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir. 1985) (internal quotation omitted). The plaintiff must show "a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S. at 103, 107 ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.").

The Third Amended Complaint attributes every alleged harm to denial of parole. This Court does not have the power to fix the alleged harms if it is true that this discretionary decision given to the agency is the root cause. 8 U.S.C. § 1252(a)(2)(B)(ii) ("Notwithstanding any other provision of law … no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.").

### II. The Third Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted

Plaintiffs' constitutional due process claim should also be dismissed under Rule 12(b)(6).

### A. The Decision Has Been Committed to the Discretion of the Agency

Agency actions that are "committed to agency discretion by law" are explicitly excluded

from judicial review those under the APA. 5 U.S.C. § 701(a); *Sierra Club v. Jackson*, 648 F.3d

848, 855 (D.C. Cir. 2011). Courts are to "consider both the nature of the administrative action at

issue and the language and structure of the statute that supplies the applicable legal standards for

reviewing that action." *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir.

2006) (citation omitted). Here, Congress has placed the decision regarding parole of arriving

aliens squarely within the discretion of the agency.

### B.  No Process is Due Beyond what Congress Provided

As argued above, any claim based upon procedural requirements of the Fifth Amendment

must articulate a legal injury in terms of statutory provisions. Counts One and Two of the Third

Amended Complaint therefore fail to state a claim for which relief can be granted. Because

Plaintiffs have failed to state either a statutory or a constitutional claim, the Court should dismiss

these Counts under Rule 12(b)(6).

### C.  As an Alien Outside the United States, Plaintiff Mikailu J. is Only Entitled to Parole as a Means for Release Into the United States

It has been settled law for nearly 100 years that detaining arriving aliens in the United

States, or otherwise permitting them to remain pending resolution of their proceedings or

execution of their removal orders, cannot alter their legal status. Such aliens remain 'at the

border' under the entry fiction. *See Zadvydas*, 533 U.S. at 693 (relying on *Kaplan v. Tod*, 267

U.S. 228, 230 (1925)). "It is true that Zadvydas spoke of an alien's due process rights, but the

Court was careful to restrict its statement to aliens who had already entered the United States."

*Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009), vacated, 559 U.S. 131 (2010), *and*

*judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010). For those detained pursuant to

section 1225(b), Congress has provided parole pursuant to 8 U.S.C. § 1182(d)(5)(A) at the

discretion of the Attorney General "for urgent humanitarian reasons or significant public benefit" as the exclusive vehicle for release. *See Jennings*, 138 S. Ct. at 844.

Plaintiff Mikailu J. is an arriving alien with no right of admission into the United States, *see Plasencia*, 459 U.S. at 32, nor a right to parole. *Kiyemba*, 555 F.3d at 1028. Plaintiffs ask this Court to enjoin application of 8 C.F.R. § 1003.19(h)(2)(i)(B). That section, 8 C.F.R. § 1003.19, operates within the authority granted to the Attorney General at 8 U.S.C. § 1226(c)(2). The challenged provision, 8 C.F.R. § 1003.19(h)(2)(i)(B), simply explains those classes of aliens not included in the grant of authority in 8 U.S.C. § 1226(c)(2) and 8 C.F.R. § 1236.1. The regulation makes clear that while section 1226 detainees may have their conditions of custody determined before an immigration judge, *arriving aliens detained pursuant to section 1225 may not*. *See* 8 C.F.R. § 1236.1(c)(11) ("An immigration judge may not exercise the authority provided in this statute, and the review procedures described in paragraph (d) of this section shall not apply, with respect to any alien beyond the custody jurisdiction of the immigration judge as provided in 8 C.F.R. § 1003.19(h) of this chapter."). The authority for section 1226 custody determinations does not spill over to detention pursuant to 8 U.S.C. § 1225 or parole determinations pursuant to 8 U.S.C. § 1182(d)(5). The Court should dismiss Plaintiffs' claims seeking relief from these regulations.

In the Third Amended Complaint, Plaintiffs also ask this Court to find that prolonged detention is unconstitutional without a bond hearing. *See* TAC at 38, ¶2. The Supreme Court has rejected the argument that the courts should read an implicit time limitation into 8 U.S.C. § 1225(b). *Jennings*, 138 S. Ct. at 842; Memorandum Opinion at 45 (ECF No. 93). As relevant here, the Supreme Court held that 8 U.S.C. § 1225(b) unambiguously mandates detention through the pendency and conclusion of removal proceedings, regardless of their duration, and

that the statute authorizes release only through DHS's discretionary parole authority. *Id*. at 843-45. Accordingly, 8 U.S.C. § 1225(b) does not permit Plaintiff Mikailu J. to obtain a bond hearing before an immigration judge. *Id*. at 844. The Court should dismiss these claims as well.

### D.  The Complaint Contains Only Conclusory Factual Allegations that Fail to Support a Reasonable Inference that the Conduct Occurred

"In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading standard of Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Plaintiffs must offer "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* A complaint "that offers 'labels and conclusions . . . will not do.'" *Id.* When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Ahuja v. Detica Inc.*, 742 F. Supp. 2d 96, 102 (D.D.C. 2010).

The Third Amended Complaint and the accompanying exhibits describe a decline in discretionary grants of parole that began to show up in reports and news accounts shortly after the Morton Memo was issued. Since the statute, and regulations require immigration officers to make a case-by-case determinations based on the individual circumstances of the applicant, the

process is bottom-up. Long term trends, such as the decline alleged in the Third Amended Complaint, are entirely consistent with this type of iterative process. Plaintiffs, however, alleged the existence of a top-down instruction that operated as a countermand[3] to agency policy. Nothing in the narrative is consistent with this view.

Moreover, Plaintiffs allege that the unwritten policy came about because of surges of immigration in 2014 and 2016, stating that "[i]n response, Defendants and/or their predecessors began to formulate and adopt various practices and policies aimed at deterring immigration." TAC at ¶ 43. This narrative is implausible because it does not explain the logical sequence. A causal event does not occur midway through the effect.

Finally, Plaintiffs allege that the *official* policy promulgated by the Board of Immigration Appeals that was at issue in *R.I.L-R. v. Johnson,* 80 F. Supp. 3d 164 (D.D.C. 2015), is somehow indicative of the existence of an *unofficial* policy. TAC at ¶ 44. This allegation is unfounded in fact or logic. To the contrary, if one were to accept Plaintiff's logic, it stands to reason that if there were a policy of immigration deterrence in this case, it would not be an "unofficial" or "unwritten" policy as Plaintiffs allege, but rather, a written, official policy. Plaintiffs cannot have it both ways. There is no evidence there is any policy, official or unofficial, that immigration deterrence was a factor in the individualized parole determinations of any of the plaintiffs in this case.  Therefore, The Third Amended Complaint does not state a claim that is plausible on its face.

---

[3] If, however, the Third Amended Complaint is understood to allege something less than an unofficial policy that *countermands* agency policy, it fails to state claim. Alleging that the agency merely gave further interpretive guidance on implementing its own rule in the face of a "surge" in immigration is akin to what the Supreme Court rejected in *Yang*. 519 U.S. at 353-54. There the Court noted that where the rule is of the agency's own creation "INS is entitled, within reason to define, that exception as it pleases." *Id*.

### E.  Plaintiffs' APA Claim Fails Allege a Required Agency Action

A claim under the APA must allege that the agency somehow did not comply with the law – there must be some agency action "that it is required to take." *SUWA*, 542 U.S. at 65. Explaining *Lujan*, where the APA complaint failed to state a claim because the broad programmatic attack was not directed at a discrete agency action, the *SUWA* Court made explicitly clear that the problem in *Lujan* was not a matter of broad versus discrete, but instead it was simply that the agency action – however characterized – was not required. *Id.* The Court wrote:

> The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law).

*SUWA*, 542 U.S. at 65.

The Court explained the basis for this limitation:

> The principal purpose of the APA limitations we have discussed—and of the traditional limitations upon mandamus from which they were derived—**is to protect agencies from undue judicial interference with their lawful discretion**, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve. If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, **to work out compliance with the broad statutory mandate**, injecting the judge into day-to-day agency management.

*SUWA*, 542 U.S. at 66–67 (emphasis added). The Court summarized that, "The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA." *Id.*

Here, Plaintiffs do not even identify a broad congressional mandate that aligns with their claim, for the clear congressional instruction is to do exactly what Defendants say they have been doing – making case-by-case determinations on exceptions to detention. Moreover, Congress

gave the agency the mandate that these determinations were not to be brought into federal courtrooms. Rather than identify a statutory mandate that is somehow inconsistent with the agency's actions, Plaintiffs have fashioned out of whole cloth a standard that matches their own expectations of how immigration policy should be implemented. In the Third Amended Complaint, Plaintiffs are attempting to inject the courts into day-to-day management of the agency, and because that is not the purpose of the APA, the claims should be dismissed.

## III.    Venue is Improper Because Plaintiffs' Claims Sound in Habeas

The Court of Appeals for the Ninth Circuit has recognized that Congress has foreclosed custody determinations with 8 U.S.C. § 1226(e), and discretionary parole decisions via 8 U.S.C. § 1252(a)(2)(B)(ii). *See Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017). Nonetheless, that Court has held that "although the Attorney General's 'discretionary judgment ... shall not be subject to review,' claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez–Chavez v. INS*, 298 F.3d 824, 829 (9th Cir.2002)).

Plaintiffs' claims sound in habeas, and 28 U.S.C. § 2241 limits venue to the district where Plaintiffs' custodian is located. Therefore, venue in this district is improper.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Third Amended Complaint in its entirety.

\

\

Dated: August 10, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

EREZ REUVENI
Assistant Director

SHEETUL S. WALL
Trial Attorney

By: */S/ William M. Martin*
WILLIAM M. MARTIN
Trial Attorney
Pennsylvania Bar No. 84612

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-2377
Facsimile: (202) 305-7000
William.Martin3@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018, I electronically filed the foregoing document

with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice

and an electronic link to this document to all attorneys of record.

DATED:  August 10, 2018

By: */S/ William M. Martin*
WILLIAM M. MARTIN
Trial Attorney
United States Department of Justice
Civil Division