**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SADAT I.., et al.

Plaintiffs,

     v.

KIRSTJEN NIELSEN, Secretary of
Homeland Security, et al.,

    Defendants.

Civil Action No. 1:17-cv-1976-RC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

TABLE OF CONTENTS

I.  Factual Update……………………………………………………………….....6

II.  This Court Has Jurisdiction Over Plaintiffs' Claims………………………………………9

    a.  Plaintiffs Sadat I.'s and Mikailu J.'s Claims are Not Moot………………….....9

        1.  Plaintiffs' Challenge of Defendants' Policy of Deterrence
           Survives…………………………………………………………………..10

        2.  Plaintiffs' Claims are Not Moot Because of the
           Voluntary Cessation Exception………………………………………13

        3.  Plaintiffs' Claims Are Not Moot Due to the
           Capable-of-Repetition Yet Evading Review Exception………………15

    b.  Plaintiffs Have a Legally Cognizable Interest in this Case………………….....18

        1.  Plaintiffs Have a Legally Cognizable Interest in Parole Determinations
           that Comply with the Morton Directive………………………………19

        2.  Plaintiffs Have a Legally Cognizable Interest in Parole Determinations
           that Comply with the INA and its Implementing
           Regulations……………………………………………………………….22

        3.  8 U.S.C. § 1252(a)(2)(B)(II) Does not Apply in this Case…………..23

        4.  Plaintiffs have Due Process Rights………………………………….25

    c.  Plaintiffs' Claims are Redressable………………………………………….29

III. Plaintiffs Adequately Plead APA and Constitutional Claims……………………………29

    a.  Defendants' Policy of Deterrence is not Committed to Agency Discretion…….29

    b.  Plaintiffs' Allegations are Fully Supported……………………………………..30

IV. Venue is Proper in the District of Columbia…………………………………………...33

## Cases

*Abdi v. Duke*, 280 F. Supp. 3d 373, 395 (W.D.N.Y. 2017), *order clarified sub nom. Abdi v. Nielsen*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018) .................................................... 14

*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) .................................... 13

*Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359 (1998) ........................... 19

*Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1098 (9th Cir. 2004) ................................. 27

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 31

*Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) ............. 31

*Boumedienne v. Bush,* 553 U.S. 723 (2008) .................................................................. 28

*Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) ............................................ 11

*Capital Ass'n v. Duke*, 2017 WL 5990122, at *1 (D.D.C. Dec. 1, 2017) ......................... 23

*Cause of Action Inst. v. Pompeo*, No. 1:16-CV-02145 (TNM), 2018 WL 3520433, at *3 (D.D.C. July 20, 2018) ......................................................................................... 10

*Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ................................................................. 11

*Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 396-98 (3d Cir. 1999), *amended* (Dec. 30, 1999) ........... 28

*Chiron Corp. and PerSeptive Biosystems, Inc. v. NTSB*, 198 F.3d 935 (D.C. Cir. 1999) ........... 22

*Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. D.C.*, 972 F.2d 365, 369 (D.C. Cir. 1992) ......................................................................................................... 16

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) ..................... 30

*Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) ....................................................... 14

*Damus v. Nielsen*, 18-578 (JEB), --- F.Supp.3d ---, 2018 WL 3232515, at *12 (D.D.C. July 2, 2018) ......................................................................................................... 21

*Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970) ..................... 20

*Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013) ........................... 33

*Demore v. Kim*, 538 U.S. 510 (2003) ........................................................................... 28

*Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority*, 239 F.R.D. 9, 17 (D.D.C. 2006) .............................................................. 20

*DL v. D.C.,* 187 F. Supp. 3d 1, 16 (D.D.C. 2016) ........................................................ 14

*Doe v. Sullivan,* 938 F.2d 1370, 1378–79 (D.C.Cir.1991) ............................................. 17

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ................................................................. 31

*First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 774 (1978) ................................... 17

*Fogo De Chao (Holdings) Inc. v. U.S. Dept. of Homeland Sec.*, 769 F.3d 1127, 1138 (D.C. Cir. 2014) ......................................................................................................... 25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ......... 10

*Hardaway v. District of Columbia Housing Authority*, 843 F.3d 973, 977 (D.C. Cir. 2016) ......... 20

*Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015) ........................... 30

*Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) ..................................... 31

*Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) ....... 16

*Information Handling Services, Inc. v. Defense Automated Printing Services*, 338 F.3d 1024, 1030 (D.C. Cir. 2003) ....................................................................................... 21

*Jafarzadeh v. Duke*, 270 F.Supp.3d 296, 304-05 (D.D.C. 2017) ..................................... 13

*Jean v. Nelson*, 472 U.S. 846, 857 (1985) ................................................................... 23

*Judulang v. Holder*, 565 U.S. 42, 55 (2011) ................................................................. 19

*Kansas v. Crane*, 534 U.S. 407 (2002) .................................................................. 23, 29

*Kansas v. Hendricks*, 521 U.S. 346 (1997) ................................................................... 29

*Kwai Fun Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004) ............................... 27

*Larsen v. U.S. Navy,* 887 F. Supp. 2d 247, 252 (D.D.C. 2012) ............................................. 10, 11

*Levine v. Federal Bureau of Prisons*, 245 F.Supp.3d 149, 152 (D.D.C. 2017) ........................... 33

*Lynch v. Canatella*, 810 F.2d 1363, 1373-1374 (5th Cir.1987) ................................................. 27

*Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992) ..................................................... 23, 26

*Michigan v. E.P.A.*, 135 S.Ct. 2699, 2706 (2015) ...................................................................... 19

*Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ................................................................................... 21

*Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) ............................ 10

*National Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008) ............................. 23

*Natural Resources Defense Council, Inc. v. Securities and Exchange Commission*, 606 F.2d
    1031, 1043 (D.C. Cir. 1979) ................................................................................................... 30

*Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 57 (2004) ........................ 18

*Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) ............................................................... 30

*Qassim v. Bush*, 466 F.3d 1073, 1075–76 (D.C. Cir. 2006) ....................................................... 12

*R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 189 (D.D.C. 2015) ......................................................... 24

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 321 (D.C. Cir. 2014) ................. 16

*Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985) ............................................................... 30

*Rosales-Garcia v. Holland*, 322 F. 3d 386, (6th Cir.  2003) ...................................................... 27

*S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911) ..................... 9

*Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 865 (D.C. Cir. 1970) ......................................... 19

*Seeger v. United States Department of Defense*, 396 F.Supp.3d 265, 276 (D.D.C. 2018) ........... 19

*Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 691 (9th Cir. 2003) ......................................... 25

*Spencer v. Kemna*, 523 U.S. 1, 17 (1998) ................................................................................... 18

*Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005) ................................. 18

*Steenhold v. F.A.A.*, 314 F.3d 633, 639 (D.C. Cir. 2003) ........................................................... 21

*Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002) ............. 29

*Turner v. Rogers*, 564 U.S. 431, 440 (2011) ............................................................................... 16

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980 ...................................................... 10

*Ukrainian–American Bar Association v. Baker*, 893 F.2d 1374 (D.C.Cir.1990) ......................... 12

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ............................................. 9

*United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952) ................................. 14

*W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) ................................. 18

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ............................................................................ 26

**Statutes**

5 U.S.C. § 701(a)(2) ................................................................................................................... 30

5 U.S.C. § 706(1) ........................................................................................................................ 18

5 U.S.C. § 706(2) ........................................................................................................................ 19

8 U.S.C. § 1182(d)(5)(A) ...................................................................................................... 22, 23

8 U.S.C. § 1225 ............................................................................................................................. 8

8 U.S.C. § 1225(b)(1) ................................................................................................................. 17

8 U.S.C. § 1225(b)(1)(B)(ii) ...................................................................................................... 23

8 U.S.C. § 1226(c) ...................................................................................................................... 28

8 U.S.C. § 1231 ............................................................................................................................. 8

8 U.S.C. § 1231 (note) ................................................................................................................ 26

8 U.S.C. § 1252(a)(2)(B)(ii) ....................................................................................................... 24

**Rules**

FED. R. CIV. P. 12(b)(1) ................................................................................................................. 6

4

FED. R. CIV. P. 12(b)(3)..................................................................................................6

Fed. R. Civ. P. 12(b)(6)..................................................................................................6

**Regulations**

8 C.F.R. § 212.5........................................................................................................23, 30

Defendants ask this Court to dismiss Plaintiffs' claims for three reasons. They argue: (1) that the Court lacks jurisdiction, FED. R. CIV. P. 12(b)(1); (2) that Plaintiffs failed to adequately plead their claims, Fed. R. Civ. P. 12(b)(6); and (3) that venue is improper. FED. R. CIV. P. 12(b)(3). Plaintiffs respond to each of their arguments in detail below.

Defendants' arguments all fail for the reasons set forth in detail by this Court in its Opinion of July 3, 2018. ECF Dkt. 93.  Plaintiffs, moreover, accompany this Response with their motion to joint parties and amend their Third Amended Complaint ("TAC") in order to include all recent events. Despite this Court's Preliminary Injunction, Defendants have not changed their illegal policy of heavily weighting immigration deterrence in determining parole requests for lawful asylum seekers. Instead, Defendants continue to rely on considerations of immigration deterrence when denying parole to fully eligible persons such as the Plaintiffs. Defendants' twin and unlawful objectives remain the same: the constructive *refoulement* of the victims of repression, and the deterrence of continuing immigration through the unjust punishment of the Plaintiffs and other asylum seekers. As most of the Defendants' arguments are based on questions of fact, Plaintiffs are entitled to full discovery and trial on the merits.

## I.   Factual Update

A.  Plaintiff Sadat I. has been released on parole, after two and a half years of unjustified incarceration. The Bureau of Immigration Affairs ("BIA") ordered his case reopened. However, as this Court has already recognized, Sadat I. can be called back and re-detained by the Defendants at any time and will once again be at risk of unlawful detention under harsh and prison- like conditions.[1] As discussed below, the

---

[1] Sadat I. was released only after this court issued a preliminary injunction and only after posting bond in the amount of several thousand dollars. He had already presented three sets of eligible sponsors, as well as substantial identification. He had never committed a crime. Mere hours

Defendants have not corrected their policy of deterrence at all. Accordingly, Sadat I.'s claim is in no way moot. He remains at risk of grave and irreparable harm by the Defendants. His status is protected from the mootness challenge by both the voluntary cessation jurisprudence and the capable of repetition yet evading review standards set forth below.

B. Plaintiff Mikailu J. remains in detention at this time. Despite this Court's specific instructions to re-evaluate Plaintiff Mikailu J. for parole "in strict compliance with the Morton Directive," ECF Dkt. 93, at 67, Mikailu J. states that he has never received, throughout his 20 months in detention, an interview in compliance with the Morton Directive. Moreover, despite his proffer of three independent sets of sponsors, his thorough presentation of identification, and the fact that he has never committed a crime, Defendants once again have denied him parole.

ICE officials initially explained to his immigration attorney that African detainees must now present passports, a requirement in conflict with the Morton Directive (the Directive expressly states that government issued documents supporting identification to be sufficient).[2] This requirement deprives Plaintiff Mikailu J. of the individualized consideration required by law as well as by this Court.

---

before his promised release on parole, ICE officers asked him with which sponsor he planned to stay. When he responded that he wished to stay with his San Antonio sponsors, he was told that his release was based on the New York sponsors, and might therefore be cancelled. Only after a series of strenuous objections, was he finally released.

[2] These standards take into account the fact that most refugees will be forced to flee their homelands on short notice, without any time to apply for or even locate, official paperwork such as passports. Moreover, it may be unsafe for them to even make contact with their government.

In short, Defendants still have not truly exercised their discretion with regards to Mikailu J.'s request for parole. He is still being harmed by the Defendants' policy of denying parole on the basis of immigration deterrence. Defendants have thus provided him with exactly the same legally inadequate consideration that he received before. Defendants cannot simply assert that the decision was made properly this time. Plaintiffs have the right to full discovery and a hearing on the merits.

In addition, Plaintiff Mikailu J.'s appeal to the BIA was denied in August 2018, and his attorneys are currently preparing their appeal to the Fifth Circuit. They consider remand of his case to be quite probable. Until then the Morton Directive release standards give way to the standards of 8 U.S.C. § 1231. Plaintiffs have alleged in their complaint that the parole provisions under that section have also been contaminated by the Defendants' deterrence policy. *See* ECF Dkt. 73, at 3, n.1. Moreover, on remand Mikailu J. will again be subjected to the Defendants' policy of deterrence under 8 U.S.C. § 1225 and the Morton Directive.

In short, Mikailu J. has already suffered, and continues to suffer the irreparable injury of long term detention as the result of the Defendants' continuing illegal policy. He is also at risk of suffering future violations of the Morton Directive standards, as soon as his appeal is granted. Mikailu J.'s status thus falls precisely within the traditional "capable of repetition yet avoiding review" test of *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911).

C.  As noted above, Plaintiffs are concurrently filing their Motion to Join Parties and Amend Complaint. Counsel for the Plaintiffs are currently receiving and evaluating a number of requests for assistance from asylum seekers who entered at U.S. Ports of

Entry and who have been and are being harmed by the Defendants' policy of heavily weighting deterrence of immigration in determining parole requests. At this time, Plaintiffs seek to join three new such Plaintiffs, all of whom are suffering long term detention. Although fully eligible for parole, they have all been denied release as a result of Defendants' deterrence policy and failure to comply with the Morton Directive giving rise to claims under the APA and Constitution. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The grim facts underlying the new Plaintiffs' claims[3] are set forth in the current motion and proposed Fourth Amended Complaint. Their stories strongly confirm the ongoing policy of unlawful denials by the Defendants.

## II. This Court Has Jurisdiction Over Plaintiffs' Claims

Defendants argue that the Court lacks jurisdiction because there is no "live" controversy, because Plaintiffs have no legally cognizable interest, and because Plaintiffs' claims are not redressable. ECF Dkt. 96-1 at 1-4, 8-19. Plaintiffs address each of these arguments in turn.

### a. Plaintiffs Sadat I.'s and Mikailu J.'s Claims are Not Moot[4]

Defendants claim they have provided the only relief possible to Plaintiffs, namely "a redetermination of parole for Plaintiff Mikailu J." ECF Dkt. 96-1, at 1. This so-called relief satisfies neither this Court's Order of July 3, 2018 to "re-evaluate Plaintiff Mikailu J. for parole

---

[3] One such proposed Plaintiff lived for years in the United States with Temporary Protected Status. Though he never broke the law, he was denied renewal and removed to Honduras, where he suffered severe threats and assaults by cartel members. When he fled north across Mexico he fell under a train and lost an arm and leg. He lawfully presented himself at a U.S. Port of Entry and asked for asylum. He has now been detained By Defendants for nearly a year and has been deprived of his prosthetics arm and leg for over four months.

[4] Aracely R. has been finally denied asylum and her claims are therefore moot.

in strict compliance with the Morton Directive," ECF No. 93 at 67, nor Plaintiffs' claims for

relief. As discussed above, Plaintiffs all continue to suffer the harms of the Defendants' ongoing

deterrence policy, and will continue to suffer in the future. Plaintiffs, moreover, have the right to

full and complete discovery in order to prove their case and to properly contest Defendants' self-

serving factual assertions that all problems have been resolved.[5]

As this Court has repeatedly held, "[t]he burden of establishing mootness rests on the

party that raises the issue," and "[i]t is a heavy burden." *Motor & Equip. Mfrs. Ass'n v. Nichols*,

142 F.3d 449, 459 (D.C. Cir. 1998); *see also Cause of Action Inst. v. Pompeo*, No. 1:16-CV-

02145 (TNM), 2018 WL 3520433, at *3 (D.D.C. July 20, 2018); *Larsen v. U.S. Navy,* 887 F.

Supp. 2d 247, 252 (D.D.C. 2012); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The 'heavy burden of persua[ding]' the court that the

challenged conduct cannot reasonably be expected to start up again lies with the party asserting

mootness."). Indeed, the Supreme Court has stressed that the doctrine of mootness is more

flexible than other strands of the justiciability doctrine. *See U.S. Parole Comm'n v. Geraghty*,

445 U.S. 388, 400 (1980) (stressing the "flexible character of the Art. III mootness doctrine[.]").

Defendants fail to meet their heavy burden. First, Defendants ignore essential claims

enumerated in Plaintiffs' TAC, including Plaintiffs' challenge to Defendants' unlawful

deterrence policy. Second, Defendants fail to account for several justiciability exceptions

applicable in this case.

### 1. Plaintiffs' Challenge of Defendants' Policy of Deterrence Survives

In their Motion to Dismiss, Defendants attempt to reduce Plaintiffs' complaint to an

---

[5] Key discovery would include, for example, the updated release statistics as well as ongoing
statements made by the Defendants in this regard.

individual request for a parole redetermination. This mischaracterization ignores essential claims in Plaintiffs' complaint. As the D.C. Circuit has stressed, "the wrong at issue for mootness purposes is . . . defined by the plaintiffs' theory set forth in the complaint," which should be read with a 'focus[ ] on identifying the factors that were 'essential to plaintiffs' original theory of their claim. . .'" *Larsen v. U.S. Navy,* 887 F. Supp. 2d 247, 252 (D.D.C. 2012) (internal citations omitted). And, as this Court stressed in its Order of July 3, 2018, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 32 (citing *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Critically, Plaintiffs' TAC is focused on Defendants' unlawful policy and practice of deterring immigration through denial of parole for them, and other POE asylum seekers like them. Specifically, Plaintiffs state that Defendants unlawfully and heavily weight the consideration of immigration detention in determining requests for parole. TAC at 15, ¶ 63 (Defendants' policy of deterrence "unjustly punishes persons like the Plaintiffs, who have committed no crimes, for their status as POE asylum seekers"); 16, ¶ 71 ("Defendants have no valid justification for their policy of denying parole and similar relief to otherwise eligible POE asylum seekers"); 36, ¶ 137 ("Defendants have violated the Administrative Procedures Act by as follows: . . . Defendants' policy and practice of denying parole to numerous eligible POE asylum seekers and instead subjecting them to long-term detention . . ."). Indeed, Plaintiffs' first prayer for relief seeks a declaratory judgment that "Defendants' policy of considering deterrence in deciding parole requests from POE asylum seekers, such as Plaintiffs' violates the Administrative Procedures Act, the First Amendment, and the Fifth Amendment of the United States." *Id.* at 37.

Plaintiffs' challenge to Defendants' *policy*, rather than to their own parole determinations, places this case solidly within this Circuit's precedent affirming justiciability. *See Qassim v. Bush*, 466 F.3d 1073, 1075–76 (D.C. Cir. 2006); *Ukrainian–American Bar Association v. Baker,* 893 F.2d 1374 (D.C.Cir.1990). In *Baker*, a Ukrainian merchant seeking asylum jumped off his ship while it was docked on the Mississippi River. After a failed attempt to enjoin the merchant's deportation, the Ukrainian Bar Association amended its complaint to allege that it was the government's policy to deny the asylum seeker and others like him access to counsel. *Baker,* 893 F.2d at 1376–77. In upholding the district court's rejection of the government's mootness argument that, because the merchant was no longer in the U.S., there was no live case or controversy, the D.C. Circuit stressed that "the complaint challenges the Government's *policy*, not merely the Government's handling of the Medvid incident." *Id.* at 1377 (emphasis added).

The D.C. Circuit Court reaffirmed this distinction more recently in *Qassim v. Bush*, 466 F.3d 1073, 1075–76 (D.C. Cir. 2006). In upholding the district court's dismissal of the case on grounds of mootness after the plaintiffs were released from U.S. custody, the D.C. Circuit distinguished *Qassim* from *Baker*, noting that, unlike the plaintiffs in *Baker*, who challenged a government policy, the plaintiffs in *Qassim* sought "no relief on behalf of anyone other than the named – now-released – [plaintiffs]." *Id.* at 1076; *see also id.* ("In contrast to the *Baker* amended complaint, which sought relief for individuals similarly situated to Medvid and challenged the State Department policy of denying those individuals access to Ukrainian lawyers who could assist them in seeking asylum, the [Qassim plaintiffs']  prayer for relief requests relief solely as to themselves.").

Here, as in *Baker*, Plaintiffs have expressly and repeatedly challenged the government's "unwritten practice and policy of deterring immigration through denial of parole", TAC ¶ 55, and that question is still live and capable of resolution. *See Jafarzadeh v. Duke*, 270 F.Supp.3d 296, 304-05 (D.D.C. 2017) (Constitutional and APA claims seeking declaratory and injunctive relief against an agency policy were not mooted by action on individual applications for immigration benefits). Indeed, a finding of mootness based merely on the government's purported compliance with the Court's Order of July 3, 2018, as to the Plaintiffs would allow the government to continue its unlawful practice with regards to Plaintiffs and other asylum seekers indiscriminately. Defendants' alleged redeterminations of Plaintiffs' eligibility for parole did not resolve Plaintiffs' challenge of their unlawful policy. Thus, the controversy remains live and capable of resolution.

## 2. Plaintiffs' Claims are Not Moot Because of the Voluntary Cessation Exception

Even if Defendants properly complied with the July 3, 2018 Order, and that all of Plaintiffs' claims were thereby resolved, the voluntary cessation exception would apply. As discussed above, both plaintiffs Sadat I. and Mikailu J. are at risk of future violations.

Where, as here, the party asserting mootness rests its argument on the voluntary cessation of its unlawful conduct, that party cannot prevail unless it proves that it is "*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (per curiam) (quotation marks and citations omitted, emphasis in original); *see also DL v. D.C.,* 187 F. Supp. 3d 1, 16 (D.D.C. 2016) (where "there is no longer an ongoing controversy . . . because the defendants voluntarily ceased the conduct that gave rise to the controversy in the first place . . .[defendants] bear a heavy burden to show '(1) there is no reasonable expectation that the alleged violation will recur

and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'") (citing *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)).

The standard for determining whether a case has been mooted by the defendant's voluntary conduct is "stringent," and the burden on the defendant "formidable." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 190 (2000). The Supreme Court has stressed that "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice'" and that, "if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Id.* at 189 (internal citations omitted); *see also United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952) ("[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.").

Defendants fail to meet their burden. Indeed, in asserting that Plaintiffs' claims are moot, Defendants make no attempt to show that they complied with the Morton Directive, let alone "disavow any intent to ever repeat the challenged conduct." *Abdi v. Duke*, 280 F. Supp. 3d 373, 395 (W.D.N.Y. 2017), *order clarified sub nom. Abdi v. Nielsen*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018); *see* Defs.' Mot. To Dismiss, ECF No. 96-1, at 8. Rather, they assert that, because parole re-determinations were made, Plaintiffs can no longer "allege to be suffering from any *live* violation of the law." *Id.* (emphasis in original). This self-serving conclusion does not meet either prong of the "stringent" standard set out by the Supreme Court for evaluating voluntary cessation.

For example, Defendants not only fail to guarantee that they will comply with the Morton Directive in the future, they effectively admit that future violations are possible, if "speculative."

*Id.* ("Any consequences from parole redeterminations in the future . . . are necessarily speculative."). This implicit admission that future violations are possible falls far from their burden of establishing that it is "*absolutely* clear" that the unlawful behavior will not recur. *Adarand*, 528 U.S. at 222 (2000).

Nor does it matter that Plaintiff Sadat I. has been granted parole. As this Court noted in its Order of July 3, 2018, aliens in custody who are granted parole may be re-detained at any time under § 1182(d)(5)(A), at which point they could again be subject to unlawful detention. *See* ECF No. 93, at 3-4, n.4. This very situation was considered by the Western District Court of New York in *Abdi v. Duke*, 280 F. Supp. 3d 373, 395 (W.D.N.Y. 2017), *order clarified sub nom. Abdi v. Nielsen*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018). In that case, as here, the plaintiffs were asylum seekers who passed their credible fear interviews but were nonetheless subjected to prolonged detentions without parole. *Id.* at 378. Noting that the plaintiffs were paroled only after they filed the action, and that they could be re-detained at "any time, for any reason" and subjected to "a second round of prolonged detention," the court found that the voluntary cessation exception applied. *Id.* at 394-96. [6] Likewise Plaintiff Mikailu J. is at risk of renewed violations when his case is remanded.

Here, as in *Abdi*, Defendants have not come close to showing that it is "absolutely clear" that the circumstances giving rise to this case will not recur nor that the interim relief has

---

[6] The sole case upon which Defendants appear to rely, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287-88 (2000) does not support their argument. In that case, the Supreme Court found that the case was *not* moot where the owners of a nude dancing club closed the club after the onset of litigation sparked by a city ordinance banning public nudity. *Id.* Noting that "[s]imply closing Kandyland is not sufficient to render this case moot," the Supreme Court stressed that the owner could re-open the club at any time, and dismissed arguments that the owner's "advanced age" made it unlikely that he would resume operating. *Id.* ("Several Members of this Court can attest, however, that the 'advanced age' of Pap's owner (72) does not make it 'absolutely clear' that a life of quiet retirement is his only reasonable expectation.").

completely eradicated the effects of the alleged violation. *DL v. D.C.,* 187 F. Supp. 3d at 16. To the contrary, as described above, the prospects for recurrence – and the continuing effects - are significant.

### 3.  Plaintiffs' Claims Are Not Moot Due to the Capable-of-Repetition Yet Evading Review Exception

For similar reasons, Plaintiffs' claims are not moot under the capable-of-repetition-yet-evading-review exception. The "capable of repetition, yet evading review" exception to mootness has two requirements: "(1) the challenged action must be too short to be fully litigated prior to cessation or expiration; and (2) there must be a 'reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010).

Plaintiffs meet both prongs. First, with regards to evading review, "[a] challenged action evades review if it is too short in duration to be fully litigated in the United States Supreme Court before it expires." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 321 (D.C. Cir. 2014) (citing *Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. D.C.*, 972 F.2d 365, 369 (D.C. Cir. 1992)). Here, the challenged action – Plaintiff's unlawful detention due to Defendants' policy of unlawfully and heavily weighting immigration deterrence during the parole process – is "'in its duration too short to be fully litigated' through the Supreme Court prior to its 'expiration.'" *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (plaintiff's imprisonment for 12 months was too short) (citing *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 774 (1978) (18–month period too short); *Southern Pacific Terminal Co.,* 219 U.S. at 514–516 (2–year period too short)). This is especially true in Plaintiffs' case because, as described above, Defendants retain discretion to simply grant parole and thus remove Plaintiffs from detention under the 8 U.S.C. § 1225(b)(1) at any time; indeed their Motion to Dismiss is premised on

having done just that with regards to Sadat I. *See* ECF Dkt. 96-1, at 1-2, 7.

Plaintiffs also meet the second prong – capable of repetition. As described above, Defendants are free to re-detain Plaintiffs at any time under § 1182(d)(5)(A), at which point Plaintiffs could again be subject to unlawful detention. *See* ECF Dkt. 93 at 3-4, n. 4; *Abdi v. Duke*, 280 F. Supp. 3d at 394-96 (asylum seekers released on parole could be re-detained at "any time, for any reason" and subjected to "a second round of prolonged detention").

Defendants' cursory claim that any possibility of repetition is "too speculative too [sic] invoke this exception," misstates the law and the facts. The D.C. Circuit has stressed that the question, under the capable of repetition prong, is not "whether the precise historical facts that spawned the plaintiff's claims are likely to recur but whether the legal wrong complained of by the plaintiff is reasonably likely to recur." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.,* 758 F.3d 296, 324 (D.C. Cir. 2014) (citing *Del Monte Fresh Produce Co.,* 570 F.3d at 324) (internal quotation marks omitted). Moreover, "the Supreme Court has instructed that the capable-of-repetition prong is not to be applied with excessive 'stringency.'" *Id.* (citing *Honig,* 484 U.S. 305, 318 n. 6). In other words, the D.C. Circuit has held, "a controversy need only be '*capable* of repetition,' not 'more probable than not.'" *Id.* (citing *Honig,* 484 U.S. at 318 n. 6) (emphasis in original); *accord Doe v. Sullivan,* 938 F.2d 1370, 1378–79 (D.C.Cir.1991) ("It is enough . . . that the litigant faces some likelihood of becoming involved in the same controversy in the future." (quotation marks omitted)).

The two cases Defendants cite in a footnote - *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) and *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005) - are inapposite. Defs.' Mot. To Dismiss, ECF Dkt. 96-1, at 8, n.2. In both cases, the record made clear that the challenged conduct was a one-time event that was unlikely to recur. *See Spencer*, 523 U.S. at 18

(petitioner failed to demonstrate a "reasonable likelihood that he will once again be paroled and

have that parole revoked" after his sentence expired); *Spirit of the Sage*, 411 F.3d at 229-30

(finding defendants' appeal moot because defendants had already complied with the trial court

order, and because the specific delay addressed by the order was "not at all likely to recur.").

Here, by contrast, as described above, Defendants retain unfettered discretion to re-detain and

subject Plaintiffs to a prolonged detention, and have made no effort to assure they will not. *See,*

*e.g.*, *Abdi*, 280 F. Supp. 3d at 396. Defendants have not, therefore, sustained their heavy burden

and are not entitled to dismissal on mootness grounds. This is further confirmed by the claims of

the new proposed Plaintiffs.

### b.   Plaintiffs Have a Legally Cognizable Interest in this Case.

Defendants argue that Plaintiffs must identify and plead a "required agency action" for

their APA claims. ECF Dkt. 96-1, at 10, 24-25. They are wrong on both accounts. Both of the

cases cited by Defendants for this proposition concern APA claims brought pursuant to 5 U.S.C.

§ 706(1) and seeking to compel a specific agency action unlawfully withheld. *See W. Org. of*

*Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) ("Appellants' cause of action in

this case rests solely on § 706(1) of the APA…."); *see Norton v. Southern Utah Wilderness*

*Alliance (SUWA)*, 542 U.S. 55, 57 (2004) (defining issue for appeal as whether § 706(1) extends

to certain agency planning documents).[7] Plaintiffs bring their APA claims under 5 U.S.C. §

---

[7] Defendants misread *SUWA*. That case does not state that the limitation to *required* agency
action applies to § 706(2). Rather, it describes the well-known requirement for all APA claims
articulated in *Lujan v. National Wildlife Federation* – that they challenge a "particular agency
action." *Lujan*, 497 U.S. 871, 891 (1990). The Court then states that the *Lujan* plaintiffs "would
have fared no better" had they sought to compel a certain agency action under § 706(1) because
of that provision's additional limitation to "*required* agency action." *SUWA*, 542 U.S. at 65
(2004). Defendants' reliance on *SUWA* when addressing Plaintiff's claims under § 706(2) is
misplaced.

706(2) and seek to set aside Defendants' deterrence policy as arbitrary and capricious, not in

accordance with law (§ 706(2)(A)), and contrary to their constitutional rights (§ 706(2)(B)).

There is no requirement that plaintiffs identify a distinct legal duty for claims brought pursuant

to § 706(2), particularly for claims seeking to set aside agency action as arbitrary and capricious.

*See Michigan v. E.P.A.*, 135 S.Ct. 2699, 2706 (2015) ("Not only must an agency's decreed result

be within the scope of its lawful authority, but the process by which it reaches that result must be

logical and rational.") (citing *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359

(1998); *see also Seeger v. United States Department of Defense*, 396 F.Supp.3d 265, 276 (D.D.C.

2018) (legal wrongs "include[] an agency's basing its 'decisions on arbitrary or capricious

abuses of discretion,' so that '…a prima facie showing alleging such action on the part of any

agency'" establishes standing for APA claims.) (quoting *Scanwell Labs., Inc. v. Shaffer*, 424

F.2d 859, 865 (D.C. Cir. 1970)).

    The Supreme Court's decision in *Judulang v. Holder*, 565 U.S. 42, 55 (2011) helps

explain the distinction between claims brought under § 706(1) and § 706(2). There the Court

reviewed the Board of Immigration Appeal's (BIA) "comparable grounds" approach for

determining whether an individual could apply for a waiver of certain criminal convictions

during deportation proceedings. *Id*. at 49. The Court set aside the BIA's approach as arbitrary

and capricious in violation of § 706(2)(A) because it "[did] not rest on any factors relevant to

whether an alien…should be deported" and because the BIA's policy "[had] no connection to the

goals of the deportation process or the rational operation of the immigration laws." *Id*. at 58. The

Court did not require the petitioner in *Judulang* to identify a distinct legal duty apart from the

requirement that government agencies refrain from arbitrary and capricious action and simply set

aside the BIA's policy without compelling the agency to affirmatively perform any specific

required agency action. *Id.* at 64. Plaintiffs are similarly able to proceed on their APA claims challenging Defendants' deterrence policy without identifying a distinct source of law compelling a certain agency action. As explained below, Plaintiffs have more than adequately identified and plead their legally protected interests in this case.

### 1. Plaintiffs Have a Legally Cognizable Interest in Parole Determinations that Comply with the Morton Directive

Plaintiffs were all subjected to Defendants' impermissible consideration of immigration deterrence during their parole determinations. *See* ECF Dkt. 73, at 17-24. Ordinarily there is "little question" that a government action causes a plaintiff's injury when they are the object of that action. *Hardaway v. District of Columbia Housing Authority*, 843 F.3d 973, 977 (D.C. Cir. 2016)(citing *Lujan*, 504 U.S. at 561-62). Still Defendants argue that Plaintiffs have no "legally protected interest" in this case. *See* ECF Dkt. 96-1, at 10.

For standing purposes, courts ask "whether the plaintiff has suffered an injury in fact – i.e., an injury to an interest, rather than to a 'right'…." *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority*, 239 F.R.D. 9, 17 (D.D.C. 2006) (quoting *Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970)). The phrase "legally protected interest," which Defendants employ to attempt to narrow the kinds of agency action subject to the APA, *see* ECF Dkt. 96-1, at 10, does not require Plaintiffs to show a violation of a substantive right. *Id.* To hold Plaintiffs to that standard would "effectively be deciding the merits under the guise of determining [their] standing." *Information Handling Services, Inc. v. Defense Automated Printing Services*, 338 F.3d 1024, 1030 (D.C. Cir. 2003).

As their Third Amended Complaint makes clear, Plaintiffs have experienced legally cognizable injuries because the Morton Directive imposes substantive and procedural obligations on Defendants that affect individual rights and Defendants are not complying with those

obligations. *See United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (deportation order was invalid because it was issued without procedures that conformed to relevant agency regulations); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon the agencies to follow their own procedures…even where they are possibly more rigorous than other otherwise would be required."); *see also Steenhold v. F.A.A.*, 314 F.3d 633, 639 (D.C. Cir. 2003)(federal agencies must "follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions."); *see also Damus v. Nielsen*, 18-578 (JEB), --- F.Supp.3d ---, 2018 WL 3232515, at \*12 (D.D.C. July 2, 2018). The Morton Directive sets out important procedural requirements governing an asylum seeker's parole request. *Id.* at ¶ 6.1, 6.2, 6.5-6.7. It also establishes that Defendants should parole individuals who establish their identity and present no flight risk or risk of danger. [Morton Directive] at ¶ 6.2. The Morton Directive establishes a procedure to ensure adherence to its substantive and procedural requirements. *Id.* at ¶ 8.11. The Government recently admitted that the Morton Directive is binding in a similar case before Judge Boasberg. *Damus*, 2018 WL 3232515, at \*14. The Morton Directive was intended to benefit asylum seekers during the parole process.[8]

Defendants compare the Morton Directive to an agency guidance document issued by the National Transportation Safety Board (NTSB) to parties to an investigation of an airplane accident. ECF Dkt. 96-1, at 12-13; *see also Chiron Corp. and PerSeptive Biosystems, Inc. v.*

---

[8] Defendants briefly note that the Morton Directive includes a boilerplate statement regarding the creation of rights enforceable against the United States. *See* ECF Dkt. 96-1, at 11. The Court has already determined, based in part on the Morton Directive's clear procedural and substantive requirements as well as the agency's stated intention to be bound by Directive, that this disclaimer avoids Plaintiffs' claims. *See* ECF Dkt. 93, at 27.

*NTSB*, 198 F.3d 935 (D.C. Cir. 1999). The plaintiffs in that case claimed an "informational injury" and argued that the NTSB failed to share information which they were required to share by the terms of their own guidance document. *Chiron*, 198 F.3d at 942-44. However, the D.C. Court of Appeals noted that the guidance document "[did] not itself determine the rights of the parties" and therefore did not create binding procedures affecting individual rights. *Id*. at 944 (citing 49 C.F.R. § 831.4 (describing NTSB investigations as "fact-finding proceedings…not conducted for the purpose of determining the rights, liabilities, or blame of any person or entity.")). The Court of Appeals also noted that the NTSB "never indicated an intention to be bound" by their guidance document. *Id*. Here, Defendants have repeatedly indicated that they intend the Morton Directive as a binding statement affecting individual rights. *Abdi v. Duke*, 280 F.Supp.3d 373, 381 (W.D.N.Y. 2017) (describing Government's representation to the Supreme Court that the Morton Directive "remains in full force and effect."); *see also Damus*, 2018 WL 3232515, at *14; *see also* ECF Dkt. 54-18, at 9-10 (stating that Morton Directive "shall remain in full force and effect.").

### 2. Plaintiffs Have a Legally Cognizable Interest in Parole Determinations that Comply with the INA and its Implementing Regulations

Plaintiffs also have a legally cognizable interest in this case because Defendants' adoption and use of the deterrence policy is at odds with 8 U.S.C. § 1182(d)(5)(A) and implementing regulations at 8 C.F.R. § 212.5. As an exception to detention under 8 U.S.C. § 1225(b)(1)(B)(ii), Congress mandated a "case-by-case" consideration of parole for asylum seekers. 8 U.S.C. § 1182(d)(5)(A); *see also Jean v. Nelson*, 472 U.S. 846, 857 (1985) (Congress required immigration officials to "make individualized determinations of parole" under predecessor statute); *see also Nat'l Venture Capital Ass'n v. Duke*, 2017 WL 5990122, at *1

(D.D.C. Dec. 1, 2017) ("The [INA]…grants the Secretary of Homeland Security the discretionary authority to parole individuals into the United States on a case-by-case basis."). The INA simply does not permit parole determinations on broad policy considerations that do not account for individualized circumstances. *See Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992)("[A] district director who decides parole applications on the basis of broad, non-individualized policies" violates the APA.).  Regulations adopted to implement 8 U.S.C. § 1182(d)(5)(A) also require "case-by-case" parole determinations and add that asylum seekers who do not present a security risk of risk of absconding are eligible for parole because their detention is not in "the public interest." 8 C.F.R. § 212.5. Plaintiffs allege that Defendants are not making parole determinations in accordance with the INA and implementing regulations and instead denying parole to deter other lawful and unlawful immigration. *See* ECF Dkt. 73, at ¶ 54-55, 59.

In addition, the Court should not defer to an agency's interpretation of 8 U.S.C. § 1182(d)(5)(A) where the interpretation raises constitutional issues. *National Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008) ("[C]anon of constitutional avoidance trumps *Chevron* deference."). Deterrence is an improper justification in the civil detention context. *See Kansas v. Crane*, 534 U.S. 407, 412 (2002) (civil detention may not "become a mechanism for…general deterrence – functions properly those of criminal law, not civil commitment."); *see also R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 189 (D.D.C. 2015)(applying analysis of civil deterrence to immigration context). Plaintiffs have a legally cognizable interest in a constitutional application of the parole framework to their cases.

### 3.  8 U.S.C. § 1252(a)(2)(B)(II) Does not Apply in this Case

Defendants also argue that the Morton Memo cannot serve as a source of law establishing

Plaintiffs' legally cognizable interest because the INA, specifically 8 U.S.C. § 1252(a)(2)(B)(ii), strips courts of jurisdiction over claims challenging agency activity which Congress specified as discretionary. ECF Dkt. 14-15. This argument again misconstrues Plaintiffs' claims as challenging their individual parole determinations. Plaintiffs instead challenge Defendants' use of a deterrence policy during the parole process and their failure to comply with procedures set out in the Morton Directive. *See e.g.* ECF Dkt. 73, at ¶ 54-55, 59, 60, 137.D.. These actions are not discretionary. In fact, the parole statute itself requires a process by which discretionary individual parole determinations must be made and the factors to be considered during that process. *See* 8 U.S.C. § 1182(d)(5)(A) (ICE may grant parole "*only on a case-by-case basis* for urgent humanitarian reasons or significant public benefit….") (emphasis added); *see also Jean v. Nelson*, 472 U.S. 846, 857 (1985) (Congress required immigration officials to "make individualized determinations of parole" under predecessor statute). This Court and other courts faced with the question of whether Section 1252(a)(2)(B)(ii) bars systemic challenges to Defendants' parole policies have repeatedly found jurisdiction over these claims. ECF Dkt. 93, at 26-28; *see also Damus v. Nielsen*, 18-578 (JEB), -- F.Supp.3d --, 2018 WL 3232515, at *5 (D.D.C. July 2, 2018) (Court had jurisdiction over claims challenging "systematic failure to follow [the Morton Memo] and to instead impose detention without its safeguards or individualized determinations."); *see also Abdi v. Duke*, 280 F.Supp.3d 373, 384-85 (W.D.N.Y. 2017) (Court had jurisdiction over claims that ICE "violated and continue to violate the [Morton Memo] that they claim to be following.").

Defendants' argument relies substantially on a 2003 Ninth Circuit opinion that says 8 U.S.C. § 1252(a)(2)(B)(ii) may require certain APA claims challenging "wholly discretionary" agency actions to be based on statutory duties, as opposed to "regulations or agency practice."

*Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 691 (9th Cir. 2003).[9] This case is inapposite

because Plaintiffs do not challenge actions made *wholly* discretionary by statute. *See Fogo De*

*Chao (Holdings) Inc. v. U.S. Dept. of Homeland Sec.*, 769 F.3d 1127, 1138 (D.C. Cir. 2014)

("[T]he language of the statute in question must provide the discretionary authority before

[Section 1252(a)(2)(B)(II)'s] bar can have effect."). Congress mandated that Defendants make

parole determinations on a "case-by-case basis for urgent humanitarian reasons or significant

public benefit." 8 U.S.C. § 1182(d)(5)(A). Agency regulations and the Morton Directive set out

procedures that Defendants must utilize when evaluating individual parole requests and no

statute specifies this process as entirely discretionary such that it is insulated from review by

Section 1252(a)(2)(B)(ii). The Morton Directive therefore may serve as a source of law

establishing Plaintiffs' legally protected interest.

### 4. Plaintiffs have Due Process Rights[10]

Defendants argue that Plaintiffs are only entitled to protections set out in statute and

therefore have articulated no constitutional injury. *See* ECF Dkt. 96-1, at 15-18. As explained

below, Plaintiffs have adequately plead and identified legally cognizable interest for their Fifth

Amendment claims.[11]

---

[9] Defendants quote a portion of the Ninth Circuit's opinion distinguishing between the APA's bar against challenges to actions "committed to agency discretion by law" and Section 1252(a)(ii)(B)(II)'s prohibition against challenges to action specified as discretionary as a matter of statutory interpretation. *Spencer Enterpises, Inc.*, 345 F.3d at 691. Even the Ninth Circuit noted that its interpretation was not controlling of the legal issue in that case. *Id.* (noting that the rule against redundancy is only one rule of construction among many and "does not necessarily have the strength to turn a tide of good cause to come out the other way."). The Ninth Circuit's interpretation is similarly not controlling in this case.

[10] For additional authority regarding Plaintiffs' Due Process rights, Plaintiffs hereby incorporate and refer the Court to their memorandum in support of their application for preliminary injunction. ECF Dkt. 74-1, at 19-28.

[11] Plaintiffs are no longer asserting claims under the First Amendment.

First, insofar as Plaintiffs' Fifth Amendment claims are limited to the "procedure authorized by Congress," *Mezei*, 345 U.S. at 212, Plaintiffs have articulated legally cognizable interests. Plaintiffs complain that Defendants give great weight to the factor of immigration deterrence when performing parole evaluations thereby violating the congressional mandate to determine parole on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992) ("[W]e do not see how an immigration official *could* base his decision on a general rule, given the Supreme Court's requirement that the district director 'make *individualized determinations of parole*.'") (citing *Jean v. Nelson*, 472 U.S. at 857). Moreover, Congress authorized a procedure by which individuals can apply for asylum in the United States and prohibited their return to danger, or *refoulement*. 8 U.S.C. § 1158(a)(1); *see also* 8 U.S.C. § 1231 (note). Defendants' policy of denying parole to deter even lawful immigration unjustly penalizes Plaintiffs for accessing the very process Congress has afforded them.

Plaintiffs also have substantive Due Process claims. Physical liberty lies at the very heart of the Fifth Amendment, requiring heightened scrutiny and a compelling government interest. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Like all other persons present within the United States, the Plaintiffs are protected by the Due Process clause of the Fifth Amendment.[12] The fact that an individual has not been admitted to the United States does not strip them of all

---

[12] U.S. officials routinely begin their arguments to the contrary with the case of *Shaughnessy v. Mezei,* 345 U.S. 206 (1953), as Defendants do here*. That case is of course distinguishable in that it involves a *final* order of exclusion. Plaintiffs have not conclusively lost the right to live in the United States and Congress has created a process that allows them to "remain in the U.S. to receive a full adjudication of [their] asylum claim[s]." H.R. Rep. No. 104-469, pt. 1, at 158 (1996). Moreover, the long-term detention resulted from the rejections by all other countries to which the Plaintiff had applied. *Mezei*, 345 U.S. at 207 (1953). It was not imposed as a pre-condition to or punishment for, seeking legal status or appealing the denial thereof.

Fifth Amendment protections. *See Kwai Fun Wong v. United States*, 373 F.3d 952, 973 (9th Cir.

2004) (holding that "non-admitted aliens" are "not categorically exclude[d] from all

constitutional coverage"); *see also Lynch v. Canatella*, 810 F.2d 1363, 1373-1374 (5th Cir.1987)

('entry fiction' that excludable aliens does not limit the right of excludable aliens to due process

requirements of humane treatment). Even non-citizens who have been ordered removed "cannot

be tortured." *Zadvydas*, 533 U.S. at 704 (2001) (Scalia J., dissenting); *see also Alvarez-Garcia v.*

*Ashcroft*, 378 F.3d 1094, 1098 (9th Cir. 2004) ("[T]he government cannot, consistent with the

constitution, mistreat non-admitted aliens with impunity").

Plaintiffs complain of prolonged arbitrary detention as a result of Defendants' policy of

giving great weight to the factor of deterrence when evaluating parole applications. *See, e.g.,*

ECF Dkt. 73, at ¶ 51, 52, 60, 62.[13] Two Circuit Courts have determined that excludable aliens –

individuals who have had their claims to any legal presence in the United States conclusively

decided – have a due process right to be free from prolonged arbitrary detention. *See Rosales-*

*Garcia v. Holland*, 322 F. 3d 386, 409-10 (6th Cir. 2003) ("Because we do not believe that our

Constitution could permit persons living in the United States—whether they can be admitted for

permanent residence or not—to be subjected to *any* government action without limit, we

conclude that government treatment of excludable aliens *must* implicate the Due Process Clause

of the Fifth Amendment."); *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 396-98 (3d Cir. 1999),

*amended* (Dec. 30, 1999) (excludable noncitizens were "entitled to substantive due process" and

"rigorous review" as to flight risk and dangerousness to ensure that incarceration does not outlast

---

[13] The Supreme Court's recent decision in *Jennings v. Rodriguez* only determined whether 8 U.S.C. § 1225(b) should be interpreted to include an implicit time limitation and does not foreclose the merits of constitutional claims against prolonged detention. *See Jennings v. Rodriguez*, 138 S.Ct. 830, 851(2018) (remanding to the Court of Appeals to consider constitutional arguments on the merits).

"the original justifications for custody"). It follows that Plaintiffs who have no criminal record and for whom Congress has established a procedure that permits them "to remain in the U.S. to receive a full adjudication of [their] asylum claim[s] – the same as any other alien in the U.S." also have the right to be free from prolonged arbitrary detention. H.R. Rep. No. 104-469, pt. 1, at 158 (1996); *Cf. Boumedienne v. Bush,* 553 U.S. 723 (2008) (discussing enemy combatants' rights to be free from prolonged and arbitrary detention).

Given the fundamental importance of the right to liberty, Defendants must present evidence of compelling government interests in subjecting Plaintiffs and other lawful asylum seekers to prolonged detention. Deterrence of lawful or unlawful immigration is an inadequate justification. The Supreme Court has approved only two justifications for civil immigration detention – preventing flight and protecting the community from individuals found to be dangerous. *Zadvydas*, 533 U.S. at 690-92 (2001); *see also Demore v. Kim*, 538 U.S. 510, 519-520 (2003) (upholding mandatory detention of certain criminal aliens under 8 U.S.C. § 1226(c) based on these justifications). These justifications satisfy the requirements of due process because they "relate wholly to characteristics inherent in the alien himself or in the category of aliens *being detained*…." *R.I.L*-R, 80 F.Supp.3d at 188 (D.D.C. 2015) (emphasis in original). Deterrence is an invalid justification for prolonged *civil* detention. *R.I.L-R v.* Johnson, 80 F.Supp.3d at 181-82 (D.D.C. 2015); *see also Kansas v. Crane*, 534 U.S. 407, 412 (2002) (noting that deterrence is a part of punishment, and hence may never be imposed on civil detainees); *see also Kansas v. Hendricks*, 521 U.S. 346, 373 (1997) ("…[G]eneral deterrence is limited to the criminal justice system alone."). Plaintiffs have adequately identified their legally cognizable interests and plead their substantive Due Process claims.

### c.  Plaintiffs' Claims are Redressable

Defendants argue that Plaintiffs have no redressable injuries because their complaint "attributes every alleged harm to denial of parole." ECF Dkt. 96-1, at 19. This again mischaracterizes Plaintiffs' claims. Plaintiffs allege non-discretionary procedural violations – that Defendants use immigration deterrence as a factor when considering parole requests and that they have failed to comply with the Morton Directive. *See, e.g.,* ECF Dkt. 73, at ¶ 52 ("Deterrence is a punitive and hence unlawful basis for subjecting bona fide asylum seekers to prolonged detention."), ¶ 68 ("Consideration of deterrence also brings a new, un-related, and heavily weighted element into the long standing factor of eligibility for parole. This clearly affects the substantive rights of [Plaintiffs]."). Plaintiffs seek declaratory and injunctive relief against these violations. ECF Dkt. 73, at 37-38. Because Plaintiffs challenge a procedural violation, they "never [have] to prove that if [they] had received the procedure the substantive result would have been altered." *Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002).

The fact that individual parole determinations are discretionary and therefore barred by 8 U.S.C. § 1252(a)(2)(B)(II) from review by district courts in no way affects the redressability of the harm in this case.

### III.    Plaintiffs Adequately Plead APA and Constitutional Claims

### a.  Defendants' Policy of Deterrence is not Committed to Agency Discretion

Defendants argue that the APA's exception for action committed to agency discretion applies here because Congress has made parole determinations discretionary. ECF Dkt. 96-1, at 19-20. No statute precludes judicial review of Defendants' use of deterrence as a factor during

29

the parole determination process. *See* Section II.b.3., *supra*. Section 701(a)(1)'s prohibition on challenges to agency action where statutes preclude judicial review does not apply.

Moreover, 5 U.S.C. § 701(a)(2) applies only in "rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). Even in the absence of clear statutory guidelines "courts often are still able to discern…a congressional intention to pursue a general goal." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985). Judicially manageable standards may be found in "formal and informal policy statements and regulations." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987). The parole statute clearly contemplates a case-by-case review process for parole determinations and the agency has provided ample standards for judicial review in formal regulations, *see* 8 C.F.R. § 212.5, and in the Morton Directive. Defendants' use of a deterrence policy is not committed to agency discretion such that it is unreviewable. *See Natural Resources Defense Council, Inc. v. Securities and Exchange Commission*, 606 F.2d 1031, 1043 (D.C. Cir. 1979) (Section 701(a) "creates a strong presumption of reviewability that can be rebutted only by a clear showing that judicial review would be inappropriate.").

**b.  Plaintiffs' Allegations are Fully Supported**

When evaluating a motion under Rule 12(b)(6), courts must accept a plaintiff's "factual allegations…as true." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015). Courts "construe the complaint in favor of the plaintiff" and "grant[] [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). Plaintiff's burden is simply to provide "sufficient factual matter" to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere conclusory statements" are insufficient, but the factual allegations do not need to be

"detailed." *Id.* The complaint "must give defendants notice of the claims and the grounds upon which they rest, but 'specific facts are not necessary.'" *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Under this authority Plaintiff s' Third Amended Complaint easily states a claim to relief.

Plaintiffs claim that Defendants are using an unwritten deterrence policy to deny parole to lawful asylum seekers in violation of their rights under First and Fifth Amendments and in violation of the APA. Their Third Amended Complaint describes the context in which Defendants developed several policies intended to deter immigration, including instances in which the government openly acknowledged a deterrence policy and policies which are the subject of ongoing litigation. ECF Dkt. 73, at ¶¶ 38-50.  It then describes the development of the deterrence policy at issue in this case, highlighting published and leaked documents explicitly describing Defendants' deterrence policy. *Id.* at ¶¶ 51-55. Plaintiffs also provide statistical evidence of substantially decreased parole rates nationwide and at the facilities where they were detained, *Id.* at ¶¶ 55-58, and statements from human rights researchers regarding Defendants' deterrence policy. *Id.* at ¶¶ 58, 59.  Plaintiffs' Third Amended Complaint makes specific factual allegations about Defendants' denial of parole in their individual cases, including Defendants' failure to comply with procedural requirements included in the Morton Directive and shifting justifications for parole denial. *See, e.g.,* ECF Dkt. 73, at ¶¶ 76.J, 77.H, 79.F, 80.D, 80.F. Plaintiffs provide ample factual allegations to support their claim that Defendants' deterrence policy violates their constitutional rights and the APA.

Defendants briefly raise three issues with Plaintiffs' Third Amended Complaint. First, they say that statistical evidence is consistent with Defendants' "bottom-up" approach to parole determinations, ECF Dkt. 96-1, at 22-23, but this argument simply refuses to accept as true

Plaintiffs' well-supported factual allegations of a deterrence policy promulgated by high-level officials. *See* ECF Dkt. 73, at ¶ 69; *see also Harris*, 791 F.3d at 68 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Defendants' argument flouts the Rule 12(b)(6) standard.

Second, Defendants attack the causal connection between immigration surges in 2014 and 2016 and Defendants' deterrence policy. *See* ECF Dkt. 96-1, at 23 ("A causal event does not occur midway through the effect."). Plaintiffs clearly describe a variety of deterrence tactics developed by Defendants in response to immigration surges and identify the policy in this case as having a drastic effect on the rate of parole grants in 2017. *See* ECF Dkt. 73, at ¶¶ 43-54, 58. Plaintiffs also highlight a draft memo, dated January 25, 2017, from then DHS Secretary John Kelly which itself identifies "the recent surge of illegal immigration" as an impetus for new policies designed to deter immigration. *Id.* at ¶ 53. Moreover, Defendants' argument only takes issue with the alleged motivations for adopting the deterrence policy, not the existence of such a policy. Plaintiffs have alleged sufficient facts to give notice to Defendants of their "claims and the grounds upon which they rest." *See Atherton*, 567 F.3d 672, 681 (D.C. Cir. 2009).

Third, Defendants argue that the Court should not draw an inference from the official deterrence policy at issue in *R.I.L-R. v. Johnson*, 80 F.Supp.3d 164 (D.D.C. 2015) that an unofficial deterrence policy exists in this case. ECF Dkt. 96-1, at 23. But it is of course logical that an agency set on implementing a policy of deterrence would take care not to make that policy official after being ordered to end prior practice. Plaintiffs provide ample factual allegations to support this inference. *See Hettinga*, 677 F.3d 471, 476 (D.C. Cir. 2012) (Plaintiffs should receive "the benefit of all inferences that can be derived from the facts alleged.").

### IV.     Venue is Proper in the District of Columbia

Defendants move to dismiss Plaintiffs claims under FED. R. CIV. P. 12(b)(3) because, they argue, the claims "sound in habeas" and therefore are filed in an improper venue. *See* ECF Dkt. 96-1 at 25. Plaintiffs are not required to bring their claims in habeas because their claims do not "necessarily imply the invalidity of confinement or shorten its duration." *Levine v. Federal Bureau of Prisons*, 245 F.Supp.3d 149, 152 (D.D.C. 2017) (citing *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013)) (federal prisoner was not required to bring APA claim as a habeas corpus claim because success on the APA claim would only get the prisoner a hearing in a district court).

In *Singh v. Holder*, the plaintiff brought habeas claims alleging procedural and substantive due process violations at his bond hearing. *Singh*, 638 F.3d at 1201. The Ninth Circuit Court of Appeals held that federal district courts have jurisdiction, despite jurisdiction-stripping provisions at 8 U.S.C. §§ 1252(a)(2)(B)(II) and 1226(e), over certain habeas claims. *Id*. at 1202. The holding in no way suggests that habeas corpus is the exclusive means of addressing non-discretionary agency actions during the parole process. In fact, the habeas claims and APA claims can coexist. *See R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 187 (D.D.C. 2015). Plaintiffs are not required to bring their claims in habeas and are not subject to the venue requirements of 28 U.S.C. § 2241.

Respectfully submitted,

/S/ Jennifer K. Harbury
Jennifer K. Harbury
Attorney in Charge
D.D.C. Bar No. TX0022
TEXAS BAR No. 08946500
TEXAS RIO GRANDE LEGAL AID, INC.
301 S. Texas Ave.
Mercedes, Texas 78750
Telephone: (956) 447-4800
Email: JHarbury@trla.org

Peter McGraw
Texas Bar No. 24081036
TEXAS RIOGRANDE LEGAL AID, INC.
1206 East Van Buren St.
Brownsville, Texas 78520
Phone: (956) 982-5543
Fax: (956) 541-1410
Email: pmcgraw@trla.org
*Admitted pro hac vice*

Certificate of Service:

I Jennifer Harbury, attorney at law, certify that I have served a true and correct copy of this Motion to Join and to Amend upon counsel for the Defendants by filing it through this court's electronic filing system on August 30, 2018.

/S/Jennifer Harbury
Attorney at Law