# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SADAT I., *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 17-1976 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 96, 99 |
| | : | | |
| KIRSTJEN NIELSEN, United States Secretary of Homeland Security, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE; GRANTING IN PART PLAINTIFFS' MOTION TO JOIN PARTIES AND AMEND COMPLAINT

## I. INTRODUCTION

This action challenges the United States Immigration and Customs Enforcement's ("ICE's") treatment of certain arriving aliens, one of several challenges to ICE conduct percolating through the federal court system. Plaintiffs traveled to the United States, sought asylum at official ports of entry ("POEs"), and were detained by ICE. They claim that an ICE policy directive dictates that they should be paroled pending consideration of their asylum petitions. However, according to Plaintiffs, ICE officials are no longer following the binding policy directive and are instead systematically denying parole to punish Plaintiffs for seeking asylum, and to deter other potential asylum seekers. Defendants have moved to dismiss Plaintiffs' action,[1] and Plaintiffs have moved to amend their complaint and join as plaintiffs three similarly-situated individuals. In the interest of judicial economy, the Court will allow

---

[1] Defendants are government officials who implemented or enforced the alleged immigration deterrence policy.

Plaintiffs to amend their complaint and join additional plaintiffs, and it will deny Defendants' motion without prejudice.

## II. BACKGROUND

This Court's prior opinion contains detailed background on the relevant statutory framework, agency guidance, and Plaintiffs' individual circumstances and conditions of detention. *See Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 120–25 (D.D.C. 2018).[2] Briefly, Plaintiffs are "arriving aliens" from outside of the United States who surrendered to ICE officials at POEs, sought asylum, and were detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) pending consideration of their asylum petitions.[3] As § 1225(b) detainees, Plaintiffs may be paroled "into the United States temporarily" by the Attorney General "in his discretion." *Id*. § 1182(d)(5)(A). United States Department of Homeland Security ("DHS") regulations provide that the Secretary of Homeland Security "may invoke" this parole authority for an individual who is "neither a security risk nor a risk of absconding" and who meets one or more of a series of conditions, one of which is that "continued detention is not in the public interest." 8 C.F.R. § 212.5(a) & (b)(5).

A 2009 ICE directive sets forth certain procedures that must be utilized and factors that, according to Plaintiffs, must be considered when evaluating parole requests under 8 C.F.R. § 212.5. ICE Directive No. 11002.1: Parole of Arriving Aliens Found to Have a Credible Fear of

---

[2] As discussed in greater detail below, that opinion granted in part Plaintiffs' motion for a preliminary injunction and denied Defendants' motion to transfer the action to the Southern District of Texas. *Id*. at 131, 157.

[3] "Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the [Immigration and Nationality Act], and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2.

Persecution or Torture ("Morton Directive" or the "Directive) (Dec. 8, 2009), ECF No. 74-16. According to the Directive, when an arriving alien found to have a credible fear of persecution establishes, to ICE's satisfaction, his or her identity and that he or she presents neither a flight risk nor a danger to the community, "[ICE] should, absent additional factors . . . parole the alien on the basis that his or her continued detention is not in the public interest." *Id.* ¶ 6.2; *see also id.* ¶ 8.3. Plaintiffs claim that they have met these criteria and should be paroled under the Directive. Third Am. Compl. ("TAC") ¶ 41, ECF No. 73.

Plaintiffs also claim, however, that despite Plaintiffs' apparent eligibility for parole, ICE officials, at the direction of high-level policy makers, are no longer following the Morton Directive. *See id.* ¶¶ 38–75. Instead, according to Plaintiffs, ICE is systematically denying parole to adult POE asylum seekers who are unaccompanied by children, to punish those individuals and deter immigration. *Id.* Plaintiffs claim that they were denied parole because of this deterrence policy, and that their prolonged detention is unconstitutional, contrary to law, and contrary to the Morton Directive. *Id.* ¶¶ 109–141.

Plaintiffs now seek to join three additional plaintiffs and amend their complaint for a fourth time.[4] *See generally* Pls.' Opposed Mot. Join Parties & Amend Compl. ("Amend Mot."), ECF No. 99. The proposed plaintiffs are POE asylum seekers who are currently detained under 8 U.S.C. § 1225(b) and have been denied parole under § 1182(d)(5)(A). *Id.* at 1–2; Fourth Am. Compl. ("FAC") ¶¶ 82, 84–85, ECF No. 99-1. The proposed complaint amendments are relatively minor. First, Plaintiffs have added background details on the proposed plaintiffs. *See id.* ¶¶ 9–11, 82, 84–85. Second, Plaintiffs have added certain details regarding Defendants'

---

[4] Plaintiffs also request "a deadline of January 1, 2019 during which they may evaluate . . . additional parties and their claims and seek leave to join them." Amend Mot. at 3. That request is discussed below.

3

alleged deterrence policy. *See id*. ¶¶ 54, 62–66. Third, Plaintiffs have asserted that the alleged deterrence policy has been applied to aliens eligible for conditional release under a different statutory provision, 8 U.S.C. § 1231, discussed in greater detail below. *See id*. ¶¶ 53, 86(J). Fourth, Plaintiffs have withdrawn their claims on behalf of Plaintiffs Aracely R., Hatim B., and Junior M.[5] Fifth, and finally, Plaintiffs have withdrawn certain claims regarding their First Amendment rights and their rights to bond hearings before immigration judges. In summary, Plaintiffs seek to assert substantially the same claims on behalf of substantially similar plaintiffs.

Defendants oppose Plaintiffs' motion, and they have filed a motion to dismiss this action in full. *See generally* Defs.' Opp'n Amend Mot. ("Opp'n"), ECF No. 101; Defs.' Mot. Dismiss, ECF No. 96. Both motions are ripe for the Court's consideration.

## III. ANALYSIS

The Court must first determine whether to grant Plaintiffs' motion to join additional plaintiffs and amend the complaint, because if amendment is warranted Defendants' motion to dismiss is moot. *See Adams v. Quattlebaum*, 219 F.R.D. 195, 197 (D.D.C. 2004) ("Because [the defendant's] motion [to dismiss] pertains to the original and now-superseded complaint, the court denies it without prejudice."). The Court will consider, in order of complexity, whether Plaintiffs may join additional plaintiffs under Federal Rule of Civil Procedure 20, and then whether Plaintiffs may amend their complaint under Federal Rule 15. In line with the Federal Rules' bent towards entertaining the broadest possible scope of action consistent with fairness to the parties, the Court concludes that Plaintiffs may join additional plaintiffs and amend their complaint in certain respects. The Court also provides, in the interest of judicial efficiency, time

---

[5] Two Plaintiffs remain—Sadat I. and Mikailu J.—pending Plaintiffs' motion to join additional plaintiffs.

4

for Plaintiffs to join additional, similarly-situated plaintiffs. Accordingly, the Court grants Plaintiffs' motion in part and denies Defendants' motion without prejudice.

### A. Plaintiffs May Join Additional Plaintiffs

Federal Rule 20(a)(1) provides that plaintiffs may join in one action if they seek relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and if "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "The purpose of Rule 20 is to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." *Boomer Dev., LLC v. Nat. Ass'n of Home Builders of U.S.*, 325 F.R.D. 6, 18 (D.D.C. 2018) (quoting *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002)). Accordingly, Rule 20(a)'s requirements "are to be liberally construed in the interest of convenience and judicial economy . . . in a manner that will secure the just, speedy, and inexpensive determination of th[e] action." *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (omission and alteration in original) (quoting *Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010)). Despite ample case law suggesting that joinder of plaintiffs should be liberally granted, Defendants raise two primary arguments for why joinder is inappropriate here. Both arguments fail.

Defendants first argue that Plaintiffs' current claims are moot, and therefore that "there is simply no overlap" between the current Plaintiffs and the proposed plaintiffs "that would provide this Court the opportunity to resolve a common question." Opp'n at 4. Defendants have the "'heavy' burden" of establishing mootness. *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) (quoting *L.A. Cty. v. Davis*, 440 U.S. 625, 631 (1979)). In attempting

5

to satisfy this burden, Defendants correctly note that "[n]o current [P]laintiff is detained under 8 U.S.C. § 1225(b) with a credible fear of persecution," and they argue that Plaintiffs can thus no longer challenge their detention in the same way that the proposed plaintiffs can. Opp'n at 2; *see also* Joint Status Report, ECF No. 94. However, the mere fact that Defendants have temporarily released Plaintiff Sadat I. from § 1225(b) detention—and that Plaintiff Mikailu J. has become detained under a different statutory provision—does not necessarily moot Plaintiffs' claims. A defendant's cessation of challenged conduct moots an action only if the defendant demonstrates that "(1) there is no reasonable expectation that the conduct will recur and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Motor & Equip. Mfrs. Ass'n*, 142 F.3d at 459 (quoting *Davis*, 440 U.S. at 631). Otherwise, voluntary cessation of challenged conduct would leave a defendant "free to return to [its] old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982)).

In determining whether the voluntary cessation doctrine applies here, the Court must precisely define Defendants' allegedly illegal conduct and determine whether a return to that conduct is possible. *See Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) ("What is the injury that is capable of repetition, and what are the 'old ways' to which the voluntarily ceasing defendant might return?"). Again, Plaintiffs challenge the legality of their detention under 8 U.S.C. § 1225(b)(1)(B)(ii) and the policy underlying that detention. Defendants have submitted no evidence that they have permanently halted or altered the alleged policy, and they have repeatedly admitted that ICE may revoke Plaintiff Sadat I.'s parole at any time and re-detain him under § 1225(b) if ICE determines that "the purposes of such parole . . . have been served." 8 U.S.C. § 1182(d)(5)(A); *see* 8 C.F.R. § 212.5(e)(2)(i); Opp'n at 3; Defs.' Reply Supp.

6

Mot. to Dismiss ("Defs.' Reply") at 5, ECF No. 100. While 8 C.F.R. § 212.5(e)(2)(i) requires that a paroled alien be given written notice of parole revocation, "it provides no other procedural and no meaningful substantive limit on [ICE's] exercise of discretion" in revoking parole. *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (discussing an analogous parole provision). Defendants have identified no constraints on this discretion, and nothing in the record suggests that Sadat I.'s re-detention is subject to anything other than ICE's whims. *Cf. Picrin–Peron v. Rison,* 930 F.2d 773, 776 (9th Cir. 1991) (holding that the voluntary cessation doctrine was inapplicable where "the government filed a declaration of the director of the Los Angeles District Office of the INS who reiterated under oath" that the plaintiff "w[ould] be paroled for another year" absent the occurrence of certain circumstances outside the government's control). And Defendants' conclusory assertions that a parole revocation is "hypothetical," Defs.' Reply at 5, or speculative, Opp'n at 3, are not sufficient to show that "there is no reasonable expectation" that Sadat I. may be re-detained. *Davis*, 440 U.S. at 631 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Tracking this reasoning, other courts have held that temporary relief does not moot a challenge to an immigration-related policy where the plaintiffs may be re-exposed to that policy. For instance, another district court recently concluded that certain individuals' release from § 1225(b) detention did not moot claims substantially similar to those raised here, because those individuals' "re-detention . . . f[ell] within [the government's] broad discretionary control" and "[a] contrary holding would permit [the government] to 'return to [its] old ways' by subjecting [the plaintiffs] to a second round of prolonged detention." *Abdi v. Duke*, 280 F. Supp. 3d 373, 396 (W.D.N.Y. 2017) (quoting *Laidlaw*, 528 U.S. at 189). Similarly, in reviewing an alleged government policy of refusing to process asylum seekers at POEs, a different district

7

court recently held that the government's agreement to process the plaintiffs did not moot their complaint. *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1303 (S.D. Cal. 2018). The court reasoned that "there is nothing in the [c]omplaint that suggests that [the plaintiffs] will not attempt to seek asylum again and, if so, that CBP officers will not turn them away from a POE" pursuant to the challenged policy. *Id.*; *see also Rodriguez*, 591 F.3d at 1117–18 (holding that the plaintiff's challenge to the conditions of his immigration-related detention was not mooted by his discretionary parole). This Court follows these decisions in holding that Plaintiffs' claims here are not moot with respect to Sadat I.[6]

Defendants next argue that they would be prejudiced by the proposed joinder of new plaintiffs. Opp'n at 4–5.[7] In claiming prejudice, Defendants place significant weight on the Court's prior order granting in part Plaintiffs' motion for a preliminary injunction and denying Defendants' motion to transfer the action. *See Aracely*, 319 F. Supp. 3d at 131, 157. Defendants

---

[6] Because the Court holds that Sadat I.'s claims are not moot, for purposes of this opinion it need not consider whether Mikailu J.'s claims are moot. Defendants may raise that argument again when they move to dismiss Plaintiffs' amended complaint.

[7] While Defendants' prejudice assertion does not directly address Federal Rule 20's joinder requirements, it raises an argument under Federal Rule 21. Rule 21 permits a court to sever specific parties or claims from an action "upon a sufficient showing of prejudice to the defendant, delay, or potential for jury confusion." *Martinez v. DOJ*, 324 F.R.D. 33, 38 (D.D.C. 2018) (quoting *Alexander v. Edgewood Mgmt. Corp.*, 321 F.R.D. 460, 464 (D.D.C. 2017)); *see also* Fed. R. Civ. P. 21. It is well established that courts have broad discretion to refuse Rule 20 joinder when they confront circumstances supporting Rule 21 severance. *See, e.g.*, *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) ("[E]ven if [the Rule 20] test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay."); *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." (alteration in original) (quoting 7 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1652 (3d ed. 2001))); *see also Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 323 (D.D.C. 2011) ("Attempts to join a party who satisfies the test for permissive joinder should generally not be denied in the absence of undue prejudice, expense, or delay." (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001))).

claim that joinder would allow the proposed plaintiffs to "implement de facto offensive non-mutual issue preclusion" regarding the "significant issues" decided by the Court in that order. Opp'n at 5. Defendants oversell the significance of the preliminary issues decided by the Court, and they oversell the consequences of those decisions.

Defendants' suggestion that the Court's preliminary injunction order may have preclusive effect is unsupported by precedent. *See Sole v. Wyner*, 551 U.S. 74, 84 (2007) (noting the "tentative character" of a preliminary injunction, which "ha[s] no preclusive effect in the continuing litigation"); *Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1023 (D.C. Cir. 1998) (noting "the provisional nature of preliminary injunctive relief"); *Mahoney v. Babbitt,* 113 F.3d 219, 224 (D.C. Cir. 1997) (noting the limited preclusive value of preliminary injunction findings). In its order, the Court merely held that Plaintiffs are *likely* to succeed on the merits of *some* of their claims. *See Aracely*, 319 F. Supp. 3d at 149. Should Plaintiffs seek preliminary injunctive relief with respect to the proposed plaintiffs, they must again meet the standard for such relief and Defendants may again vigorously oppose Plaintiffs' motion. And despite Plaintiffs' limited success at the preliminary injunction stage, they must still prove their claims on the merits.

Moreover, Defendants fail to cite authority in support of the proposition that a court's earlier rulings on certain preliminary issues, such as venue, render the subsequent joinder of plaintiffs inappropriate. The Court held that venue is properly laid in this jurisdiction. *Aracely*, 319 F. Supp. 3d at 131. Defendants may be unhappy with this decision, but that unhappiness is not sufficiently prejudicial to defeat the joinder of plaintiffs raising identical factual and legal questions.

Having concluded that Sadat I.'s claims are not moot and that joinder would not unfairly prejudice Defendants, the Court must determine whether the proposed plaintiffs seek relief "arising out of the same transaction, occurrence, or series of transactions or occurrences" as those impacting Sadat I., and whether "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Both requirements are met. Like Sadat I., the proposed plaintiffs are POE asylum seekers who have been detained under 8 U.S.C. § 1225(b)(1)(B)(ii) and denied parole under 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5. *See* FAC ¶¶ 2, 82–86. The proposed plaintiffs ask this Court to determine (1) whether Defendants have prolonged their detention in order to punish the plaintiffs and deter other individuals from seeking asylum in the United States; and (2) whether that justification and its consequences violate the Constitution, certain statutes, and ICE's own internal policies and procedures. *See generally* FAC. These are the same factual and legal questions raised by Plaintiffs' current complaint. *See generally* TAC. Accordingly, "convenience and judicial economy" warrant joinder of the proposed plaintiffs to "secure the just, speedy, and inexpensive determination of th[e] action." *Spaeth*, 845 F. Supp. 2d at 53 (alteration in original) (quoting *Davidson*, 736 F. Supp. 2d at 119).

**B. Plaintiffs May Amend the Complaint, Though Not to the Full Extent Requested**

Because Plaintiffs have already amended their complaint three times, they may no longer amend it as of right. Fed. R. Civ. P. 15(a)(1). Accordingly, under Federal Rule of Civil Procedure 15(a)(2), Plaintiffs "may amend [their complaint] only with the opposing party's written consent," which they have not secured, "or the [C]ourt's leave." *Id*. 15(a)(2). The "grant or denial of an opportunity to amend is within the [Court's] discretion," *Foman v. Davis*, 371

10

U.S. 178, 182 (1962), and "[t]he [C]ourt should freely give leave [to amend the complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2).

"When evaluating whether to grant leave to amend [under Rule 15(a)(2)], the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418, 425–26 (D.C. Cir. 1996)). As noted, the amended complaint differs from the current complaint in that it includes background on the proposed new plaintiffs, *see* FAC ¶¶ 9–11, 82, 84–85, and additional detail on Defendants' alleged deterrence policy, *see id.* ¶¶ 54, 62–66, it more explicitly challenges Plaintiff Mikailu J.'s detention under 8 U.S.C. § 1231, *see id.* ¶¶ 53, 86(J), and it drops certain claims included in the current complaint. Defendants' only argument against these amendments, aside from Defendants' general opposition to the joinder of additional plaintiffs, is that Plaintiffs' challenge to Mikailu J.'s detention cannot survive a motion to dismiss. Opp'n at 6–7. In other words, Defendants argue that amendment is futile with respect to that claim. *See Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996))). Defendants' argument is well taken.

Plaintiffs' motion to amend the complaint regarding Mikailu J.'s current detention must be evaluated in the proper factual and statutory context. In late 2017, an immigration judge denied Mikailu J.'s asylum petition and ordered him removed from the United States. *See* Decision of the Board of Immigration Appeals at 1, ECF No. 100-1. That decision was upheld by DHS's Board of Immigration Appeals ("BIA") on August 17, 2018, a final administrative

11

order of removal. *See* Pls.' Opp'n Defs. Mot. Dismiss at 8, ECF No. 98; Decision of the Board of Immigration Appeals at 2–3. As an alien subject to a final administrative order of removal, Mikailu J.'s detention is governed by a different statutory scheme than POE asylum seekers such as Sadat I. and the proposed plaintiffs. Under this scheme, an alien who has been ordered removed must be removed within ninety days. 8 U.S.C. § 1231(a)(1). During this ninety-day period, "the Attorney General shall detain the alien." *Id.* § 1231(a)(2). After the ninety-day period, the Attorney General may continue to detain the alien pending his or her removal, *id.* § 1231(a)(6), or may instead conditionally parole the alien, *id.* § 1231(a)(3); 8 C.F.R. § 241.4(a). According to Plaintiffs, Mikailu J. is detained under this scheme while the Fifth Circuit considers his appeal of the BIA's decision. *See* Pls.' Opp'n Defs. Mot. Dismiss at 8; Pls.' Reply Supp. Amend Mot. ("Reply") at 1, ECF No. 102.

Plaintiffs' proposed claims regarding Mikailu J.'s detention are tenuous at best. Plaintiffs make the conclusory assertion that ICE's alleged deterrence policy regarding POE asylum seekers—the complaint's focus—"has also been applied to persons in post removal proceedings under 8 U.S.C. § 1231." FAC ¶ 53. More specifically, Plaintiffs claim that Mikailu J. "will suffer" from this policy during his § 1231 detention. *Id.* ¶ 86(J). However, Plaintiffs do not indicate that the policy has already been applied to Mikailu J. or any other Plaintiff, or that it will be applied imminently. Nor could they so indicate, when they filed their motion to amend the complaint, because at that time Mikailu J.'s ninety-day removal period had not yet expired and his detention was mandatory.[8] *See* 8 U.S.C. § 1231(a)(2). This is exactly the type of

---

[8] Plaintiffs also assert that Mikailu J.'s case should "soon be remanded" for a new consideration of his asylum petition. Reply at 1. When this hypothetical remand occurs, Mikailu J. will no longer be detained under § 1231. *Id.* Thus, it seems that to the extent Mikailu J. "will suffer" from Defendants' alleged policy during his § 1231 detention, Plaintiffs allege that his suffering will be short lived.

"'conjectural' or 'hypothetical'" injury that the Supreme Court has held is insufficient to convey standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)); *see also DEK Energy Co. v. FERC*, 248 F.3d 1192, 1195 (D.C. Cir. 2001) ("There is quite a gulf between the antipodes of standing doctrine—the 'imminent' injury that suffices and the merely 'conjectural' one that does not."). Thus, because Plaintiffs' allegations regarding Mikailu J.'s § 1231 detention would likely fail to survive a motion to dismiss, the Court denies as futile Plaintiffs' motion to add those allegations. The Court allows Plaintiffs' other proposed amendments.

## IV. CONCLUSION

As the Supreme Court has dictated, under the Federal Rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Following that guidance, and for the foregoing reasons, the Court grants Plaintiffs' motion to amend their complaint in certain respects and join additional plaintiffs. The Court also concludes that in the interest of judicial efficiency, and to avoid duplicative, piecemeal briefing, Plaintiffs shall have until January 18, 2019 to join additional plaintiffs and further amend the complaint. Given that Plaintiffs have now amended their complaint four times, the Court does not expect to grant additional requests to amend the complaint or join plaintiffs after that date.

The Court hereby **ORDERS**:

1. Defendants' Motion to Dismiss (ECF No. 96) is **DENIED WITHOUT PREJUDICE**.

2. Plaintiffs' Motion to Join Parties and Amend Complaint (ECF No. 99) is

    **GRANTED IN PART** as follows:

    a. Plaintiffs may join the proposed plaintiffs.

    b. Plaintiffs may amend the complaint as proposed, except that plaintiffs may not add the proposed references to 8 U.S.C. § 1231 detention.

3. Plaintiffs may not amend the complaint or join additional plaintiffs after **January 18, 2019**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 4, 2019                                          RUDOLPH CONTRERAS
                                                                United States District Judge